UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| COMMERZBANK AG, | : | Case No. 1:15-cv-818 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER (Doc. 23)**

This civil action is before the Court on Defendants'[1] motion to transfer (Doc. 23) and the parties' responsive memoranda (Docs. 27, 31).

## I.   BACKGROUND FACTS

Plaintiff alleges that Defendants breached their contractual, fiduciary, and statutory duties as trustees for residential mortgage-backed securities ("RMBS") trusts that issued certificates purchased by Commerzbank ("Covered Trusts").[2] Shortly after Plaintiff commenced this action, this Court granted a motion to transfer by Defendants in a similar action before the Court, *Pacific Life Insurance Company v. U.S. Bank National Association*, No. 1:15cv416, 2016 U.S. Dist. LEXIS 5961 (S.D. Ohio Jan. 19, 2016) ("*Pacific Life*"). One of the reasons this Court transferred the case was because the Honorable Katherine B. Forrest in the Southern District of New York was presiding over

---

[1] Defendants include U.S. Bank National Association and Bank of America, NA (together, "Defendants").

[2] This Court incorporates, as if fully stated here, the factual background outlined in *Pacific Life Insurance Co. v. U.S. Bank National Association*, 1:15cv416, 2016 U.S. Dist. LEXIS 5961, at *2-6 (S.D. Ohio Jan. 19, 2016).

three other RMBS trustee cases against Defendants.  *Id.* at 4, 6.  However, when the case was transferred, and for unknown reasons, Judge Forrest declined to accept the case as related to the other RMBS trustee cases, and the case was assigned to the Honorable Paul G. Gardephe.

Plaintiff argues that while this Court recently exercised its discretion to transfer a substantially similar case against the same Defendants, the fact that Judge Forrest is unlikely to accept this action as related warrants the Court's re-weighing of the factors under the Section 1404(a) test.  Additionally, Plaintiff maintains that since it filed this action, another RMBS trustee action was filed against U.S. Bank in Ohio by Western & Southern Life Insurance Company.  *See W&S-U.S. Bank Action*, No. A1506581 (Ct. Com. Pl. Hamilton Cnty., Ohio Jan. 12, 2016) (the "*W&S-U.S. Bank Action*").  Plaintiff's action and the *W&S-U.S. Bank Action* involve one overlapping trust and 27 overlapping sponsors, originators, and servicers.  Therefore, Plaintiff argues that U.S. Bank will be litigating claims concerning breaches of duties as RMBS trustee in Ohio, regardless of the outcome of this motion.

## II.   STANDARD OF REVIEW

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In the typical case, a court must weigh a number of private and public-

interest factors in deciding whether to transfer. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. District of Texas*, __ U.S. __, 134 S. Ct. 568, 581 (2013).

In resolving motions to transfer under 1404(a), courts in this Circuit consider six factors: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Unless the balance of these factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

The moving party bears "the burden of establishing the need for a transfer of venue." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). "This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer." *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004). Ultimately, the decision whether to transfer venue is left to the discretion of the trial court. *Id.*

### III.   ANALYSIS

#### A.   Whether this action could have been brought in the Southern District of New York

The threshold issue under Section 1404(a) is whether the action could have been brought in the transferee court. *Sky Tech. Partners LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000). An action might have been brought in the

3

transferee court if: (1) the transferee court has jurisdiction over the subject matter of the action; (2) venue is proper in the transferee court; and (3) the defendants are amenable to process issuing out of the transferee court. *Id.*

Here, each of these elements is satisfied. First, the Southern District of New York would have diversity jurisdiction over this action since the parties are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a). Furthermore, the federal court in New York would have original jurisdiction under 28 U.S.C. Section 1331 over the Trust Indenture Act ("TIA") claim, to the extent that claim is applicable, and supplemental jurisdiction over the other claims relating to the trusts to which the TIA applies. (Doc. 1 at ¶ 23). Second, neither Defendant dispute personal jurisdiction in New York. Third, since personal jurisdiction is not disputed, venue is therefore also proper in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1), (c)(2).

### B. Plaintiff's Chosen Forum

"Plaintiff's choice of forum should be given 'great' or 'substantial' weight when considering whether to transfer a case under § 1404(a)." *Trustar Funding v. Mruczynski*, No. 1:09cv1747, 2010 U.S. Dist. LEXIS 37677, at *10 (N.D. Ohio Mar. 30, 2010).[3] "This is especially true where the plaintiff also resides in the chosen forum." *Smith v.*

---

[3] *See also Capitol Specialty Ins. Corp. v. Splash Dogs*, 801 F. Supp. 2d 657, 672-73 (S.D. Ohio 2011) ("There is thus a strong presumption in favor of a plaintiff's choice of forum that 'may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.'").

*Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008).  However, plaintiff's choice of forum is not dispositive.  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998).

Plaintiff's choice of forum "is entitled to significantly less weight where the forum has no connection with the matter in controversy."  *St. Joseph Solutions, LLC v. Microtek Med., Inc.*, No. 1:11cv388, 2011 U.S. Dist. LEXIS 136192, at *20 (S.D. Ohio Nov. 28, 2011).  This case was brought by New York counsel, on behalf of a German company that conducted relevant business in London, involving contracts governed by New York or Delaware law.  (Doc. 23, at Ex. E) (53 of the 57 pooling and servicing agreements ("PSAs") are governed by New York law; the other four are governed by Delaware law).  *Tech-Sonic, Inc. v. Sonics & Materials, Inc.,* 2:12cv263, 2012 U.S. Dist. LEXIS 135211, at *7-8 (S.D. Ohio Sept. 21, 2012) (finding that a choice-of-law provision supplied evidence of the parties' preferred forum and thus undermined deference to the plaintiff's chosen forum).  For these same reasons, this Court previously found that *Pacific Life* had "little connection to Ohio."  *Id.*, 2016 U.S. Dist. LEXIS 5961 at 16.

Plaintiff argues that U.S. Bank is an Ohio resident with its main office located in Ohio and is the current trustee for the 57 Covered Trusts.  However, as this Court already determined, "Bank of America…lacks a meaningful connection to Ohio."  *Pacific Life*, 2016 U.S. Dist. LEXIS 5961 at 17.  U.S. Bank is a national bank charted under federal law with its "main office" located in Ohio—a designation required by federal banking

5

law upon formation.  *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 n.1 (2006).[4]  As this Court has previously observed, "there is no convenience gained from the fact that U.S. Bank's main office is in Ohio because none of U.S. Bank's relevant witnesses are located there."  *Pac. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 5961 at 17.

Plaintiff's argument that the trusts are backed, in part, by some Ohio mortgage loans, and that third-party loan servicers performed some acts in Ohio, is similarly irrelevant.  "The existence of mortgages and the action of servicers in Ohio are not essential to Plaintiffs' claims[.]"  *Pac. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 5961 at 18.  Rather, the dispute arises from Defendants' alleged breaches of contractual, statutory, and fiduciary duties under trust agreements that select New York law for 53 of the trusts and Delaware law for the remaining four trusts.  In fact, even if the location of the underlying mortgages were relevant, it would favor transfer because a greater number of properties are located in New York.  Specifically, the trusts contain 10,491 New York mortgages, and only 5,632 Ohio mortgages.  (Doc. 31, Ex. G).

Accordingly, Plaintiff's chosen forum is not entitled to substantial weight.

### C.     Private Interest Factors

In assessing the private interests of the parties, a court balances "all relevant factors" to determine whether "the litigation would more conveniently proceed…by transfer to a different forum."  *Slate Rock Constr., Co. v. Admiral Ins. Co.*, No.

---

[4] *See also First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 778 n. 14 (1978) ("National banks are creatures of federal law and instrumentalities of the Federal Government, and their existence is in no way dependent on state law.").

2:10cv1031, 2011 U.S. Dist. LEXIS 97122, at *6 (S.D. Ohio Aug. 30, 2011).  Relevant factors include "the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, and other practical problems that make trial of the case easy, expeditious, and inexpensive." *Pacific Life*, 2016 U.S. Dist. LEXIS 5961 at 14.

Many non-party witnesses in this case are in New York: 19 of the 94 originators, sellers, and servicers to the trusts are located there.  (Doc. 23, Ex. C).[5]  By contrast, only four of the 94 entities are located in Ohio.  (*Id.*)  Non-party witnesses located outside of New York likely will need to appear there in connection with the pending RMBS cases: 52 of the 75 non-New York entities are also associated with the trusts at issue in Judge Forrest's and Judge Gardephe's RMBS cases against Defendants.  (*Id.*, Exs. C, D).[6]  Additionally, a dozen other New York judges are presiding over similar lawsuits involving 71 of the 94 anticipated non-party witnesses here.  (*Id.*, Ex. D).

As this Court recognized in *Pacific Life*, these non-party witnesses stand to realize substantial efficiencies if the Court transfers the action to the Southern District of New York.  *Pacific Life*, 2016 U.S. Dist. LEXIS 5961 at 15 ("Transfer of this action to New York will enable the parties to coordinate depositions and document discovery form these

---

[5] Specifically, nine of the 94 entities are incorporated in New York and 16 have either their principal place of business or their headquarters there, with some entities being both incorporated and having their principal place of business or headquarters in New York.  (Doc. 23, Ex. C).

[6] Of the 52 entities, 49 are associated with Judge Forrest's cases, and 17 are associated with Judge Gardephe's case, with some entities being associated with both Judge Forrest's and Judge Gardephe's cases.  (Doc. 23, Ex. D).

7

[non-party] witnesses"). Also, the New York-based non-party witnesses can be required to testify at trial in New York, but not in Ohio. *See Sabol v. Ford Motor Co.,* No. 2:14cv543, 2014 U.S. Dist. LEXIS 162282 at *16 (S.D. Ohio Nov. 19, 2014) (noting relevance of "several nonparty witnesses outside this forum who could not be compelled to testify in this Court because they likely reside more than 100 miles away from this courthouse").

Plaintiff suggests that Ohio would not be inconvenient for 27 of the 94 anticipated non-party witnesses who could also be witnesses in the *W&S-U.S. Bank Action.*[7] However, New York is obviously more convenient for the 83 likely non-party witnesses that this case shares with 32 Southern District of New York cases. Additionally, it is also substantially more convenient for the 19 non-party witnesses located in New York, who, moreover, may also be beyond this Court's subpoena power.

Accordingly, the private interest factors favor transfer.

### D. Public Interest Factors

The public interest concerns include systemic integrity and fairness, which come under the rubric of interests of justice. *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Public interest factors may include the following: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a

---

[7] Defendant BANA is not a party in the *W&S-U.S. Bank Action.* Furthermore, although one trust overlaps between the two cases, 30 of the trusts in this case overlap with trusts in the cases pending in New York courts.

8

diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

The public interest analysis leads to the same conclusion the Court reached in *Pacific Life*: "the Southern District of New York has a strong interest in interpreting the laws of the state in which it sits." *Id.*, 2016 U.S. Dist. LEXIS 5961 at 13.  As in *Pacific Life*, "Plaintiff[] allege[s] claims under New York's Streit Act." *Id.*  There is no reason for an Ohio federal court to interpret that statute when New York federal courts will continue to do so in the cases pending before them.  Plaintiff argues that this Court should weigh in because New York courts have not all consistently ruled on the Streit Act.  However, to the extent there is any ambiguity in the construction of a New York statute, it should be resolved by a New York court.  *AMF, Inc. v. Comput. Automation, Inc.*, 532 F. Supp. 1335, 1348 (S.D. Ohio 1982) (public interest favors transfer where transferee court's controlling "law is unclear, unsettled, or difficult").

Further, in *Pacific Life*, the Court found the fact that 22 of 32 PSAs contained New York choice of law provisions supported transfer—and here, New York law governs 53 of the 57 trusts at issue.  (Doc. 23, Ex. E).  Moreover, as in *Pacific Life*, Plaintiff asserts claims under the TIA, and it is settled law in the Second Circuit that certificates issued by the PSA-governed New York trusts "are exempt from the TIA." *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 169 (2d Cir. 2014).

9

Finally, even if this case is not consolidated before Judge Forrest, 32 similar cases are pending before 16 judges in the Southern District of New York. (Doc. 23, Ex. A). Defendants have filed motions to dismiss in 26 of these cases. (*Id.*) Therefore, these judges have, or will have, invested substantial time and resources becoming familiar with the PSAs that govern the trusts, any applicable statutory and common law duties of RMBS trustees, and the relevant scope of discovery. Regardless of to which judge the case is assigned, this case's pendency in the Southern District of New York will facilitate coordinated schedules. "'[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money,'…even though these other cases are not currently consolidated on the docket of a single trial judge." *Blake v. Family Dollar Stores, Inc.*, No. 2:07cv361, 2007 U.S. Dist. LEXIS 47051, at *3 (S.D. Ohio June 19, 2007) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). No public interest is served by having this Court duplicate the efforts of the judges in the Southern District of New York. Therefore, the public interest factors favor transfer.

In sum, this Court finds that transferring this action to the Southern District of New York will promote efficiencies through the potential for coordinated schedules and discovery among the parties, witnesses, and the judges in that District.

## IV.  CONCLUSION

Accordingly, for these reasons, Defendants' motion to transfer (Doc. 23) is **GRANTED**.  This case is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York, and the Clerk shall act accordingly.

**IT IS SO ORDERED**.

Date:  6/14/16                                                                        *s/ Timothy S. Black*
                                                                                     Timothy S. Black
                                                                                     United States District Judge