**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

COMMERZBANK AG,                           )
                                          )
                    Plaintiff,            )
                                          )
             -against-                    )
                                          )
U.S. BANK NATIONAL ASSOCIATION            )         Case No. 16-cv-04569 (WHP)
and BANK OF AMERICA, N.A.,                )
                                          )
                    Defendants.           )
                                          )
                                          )
                                          )
                                          )
------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

JONES DAY
David F. Adler
Louis A. Chaiten
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939; (216) 579-0212 (fax)
dfadler@jonesday.com
lachaiten@jonesday.com

Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts  02110-1781
(617) 960-3939; (617) 449-6999 (fax)
mmarcucci@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas  75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

Andrew S. Kleinfeld
250 Vesey Street
New York, New York  10281-1047
(212) 326-3939; (212) 755-7306 (fax)
askleinfeld@jonesday.com

*Attorneys for Defendant U.S. Bank National*
*Association*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.      PLAINTIFF'S TORT CLAIMS FOR 17 TRUSTS FAIL UNDER
THE NO-ACTION CLAUSES ............................................................................ 4

II.     PLAINTIFF LACKS STANDING ON ALL CLAIMS AS TO 32 CERTIFICATES ....... 5

     A.     Claims On 30 Certificates Were Automatically Assigned To
Third Parties .............................................................................................. 5

     B.     Plaintiff Cannot Establish It Owns Claims On Seven Certificates ........... 6

III.    MOST OF PLAINTIFF'S CLAIMS ARE UNTIMELY ..................................... 7

     A.     Ohio's Borrowing Statute Requires Plaintiff's Claims To Be
Timely Under The Law Of The Place Of Injury—Here, Germany
And The Cayman Islands ........................................................................... 7

     B.     All Of Plaintiff's German-Bank Certificate Claims Are Untimely
Under Germany's Three-Year Statute Of Limitations ............................. 9

          1.     Claims on the German-Bank Certificates "arose" by 2011 ......... 9

          2.     By 2011, Plaintiff knew or was grossly negligent in not
knowing of the circumstances underlying its claims on
the German-Bank Certificates ................................................... 11

     C.     Many Of The Non-German-Bank-Certificate Claims Are Untimely
Under Cayman Islands Law ..................................................................... 15

IV.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON NEARLY
ALL OF PLAINTIFF'S POST-EOD CLAIMS ................................................ 15

     A.     U.S. Bank Is Entitled To Summary Judgment On All Servicer-Breach
EODs ........................................................................................................ 15

          1.     There is no evidence that a servicer-breach EOD occurred for
the trusts requiring written notice to the servicer or master
servicer .................................................................................... 16

i

(a)    Plaintiff cannot rely on the prevention doctrine ...........................16

(b)    Plaintiff has no evidence that servicers and/or master servicers received the required written notice and demand to cure ...........................................................18

2.    There is no evidence that U.S. Bank had actual knowledge or received written notice of any servicer-breach EOD..........................19

(a)    Plaintiff has no evidence that U.S. Bank received written notice of a servicer-breach EOD ......................19

(b)    For 45 trusts, Plaintiff has no evidence that U.S. Bank obtained actual knowledge of a servicer-breach EOD.................................................20

B.    Plaintiff's Alternative EOD Theories Are Meritless .............................................21

V.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON VIRTUALLY ALL OF PLAINTIFF'S PRE-EOD R&W CONTRACT CLAIMS ...............................22

A.    U.S. Bank Did Not Have Notice And Enforcement Duties For Many Trusts ......................................................................................23

B.    For Most Loans, Plaintiff Lacks Evidence That U.S. Bank Discovered Or Had Written Notice Of Loan-Specific Breaches Needed To Trigger Any Duties ..................................................................23

C.    R&W Claims On Many Of The Remaining Loans Fail For Other Reasons ...........................................................................26

VI.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON MANY OF THE PRE-EOD CONTRACT CLAIMS RELATING TO DOCUMENT DEFECTS ...........................................................................26

VII.    PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED ................................28

A.    Plaintiff's Tort Claims Are Duplicative Of Its Contract Claims ...........................28

B.    Plaintiff's Conflict-Of-Interest Tort Claims Fail For Lack Of Evidence Of A Quid-Pro-Quo Arrangement .......................................30

C.    Plaintiff's Tort Claims Based On Ministerial Duties Fail Too .............................30

CONCLUSION...........................................................................30

# TABLE OF AUTHORITIES

**Page**

CASES

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
103 N.E.3d 774 (N.Y. 2018)................................................................8

*All Am. Tel. Co., Inc. v. AT&T Corp.*,
328 F. Supp. 3d 342 (S.D.N.Y. 2018)...............................................5

*Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*,
2018 WL 6582381 (W.D. Okla. Oct. 31, 2018) ............................1, 2

*BlackRock Allocation Target Shares: Series S Portfolio v.
Wells Fargo Bank, N.A.*,
2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017).................................25

*BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*,
165 A.D.3d 526 (1st Dept. 2018)..................................................16, 17

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
165 F. Supp. 3d 80 (S.D.N.Y. 2016)..............................................1, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................4

*Commerce Bank v. Bank of N.Y. Mellon*,
141 A.D.3d 413 (1st Dep't 2016) ................................................19, 30

*Commerzbank AG London Branch v. UBS AG*,
2015 WL 3857321 (N.Y. Sup. Ct. June 17, 2015)..........................13

*Concord Real Estate CDO 2006-1, Ltd. v. Bank of Am., N.A.*,
996 A.2d 324 (Del. Ch. 2010).......................................................15

*Cornejo v. Bell*,
592 F.3d 121 (2d Cir. 2010)............................................................16

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013) ...............................12

*Dormitory Auth. of N.Y. v. Samson Constr. Co.*,
2013 WL 786714 (N.Y. Sup. Ct. Feb. 27, 2013),
*aff'd as modified,* 137 A.D.3d 433 (1st Dep't 2016) .....................29

*Dormitory Auth. of N.Y. v. Samson Constr. Co.*,
94 N.E.3d 456 (N.Y. 2018)......................................................28, 29, 30

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) .................................................................30

*FDIC v. Citibank N.A.*,
    2016 WL 8737356 (S.D.N.Y. Sept. 30, 2016) ...........................................................5

*Fixed Income Shares: Series M v. Citibank, N.A.*,
    157 A.D.3d 541 (1st Dep't 2018) .............................................................16, 17, 25

*Fixed Income Shares: Series M v. Citibank N.A.*,
    314 F. Supp. 3d 552 (S.D.N.Y. 2018)................................................................1, 26

*Gabelli v. SEC*,
    568 U.S. 442 (2013)..................................................................................................9

*Glob. Fin. Corp. v. Triarc Corp.*,
    715 N.E.2d 482 (N.Y. 1999)..................................................................................7, 8

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
    2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ..........................................................8

*IKB Deutsche Industriebank AG v. McGraw-Hill Financial, Inc.*,
    634 F. App'x 19 (2d Cir. 2015) .........................................................................9, 12

*Jarvis v. First Resolution Mgmt. Corp.*,
    983 N.E.2d 380 (Ohio Ct. App. 2012).....................................................................8

*Morgan v. Biro Mfg. Co.*,
    474 N.E.2d 286 (Ohio 1984) ...................................................................................6

*Nat'l Union Fire Ins. Co. v. Watts*,
    963 F.2d 148 (6th Cir. 1992) ...................................................................................6

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ....................................................................................28

*Official Comm. of Unsecured Creditors of Color Tile v. Coopers &*
    *Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)......................................................................................9

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
    986 F. Supp. 2d 412 (S.D.N.Y. 2013)......................................................................1

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
    2018 WL 1382105 (S.D.N.Y. Mar. 16, 2018) ........................................................17

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
    2018 WL 1871174 (S.D.N.Y. Apr. 17, 2018)..........................................................18

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017)..................................................1, 19, 22, 23, 24, 25

*Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*,
    906 F.3d 403 (6th Cir. 2018) .....................................................................................6

*Quadrant Structured Prods. Co. v. Vertin*,
    16 N.E.3d 1165 (N.Y. 2014).......................................................................................5

*Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*,
    928 N.E.2d 396 (N.Y. 2010).....................................................................................30

*Roth v. Solus Alternative Asset Mgmt. LP*,
    258 F. Supp. 3d 364 (S.D.N.Y. 2017)........................................................................4

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)................................................................1

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2018 WL 4682220 (S.D.N.Y. Sept. 28, 2018).........................................................25

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    2017 WL 945099 (S.D.N.Y. Mar. 10, 2017).....................................................23, 25

*Taylor v. First Resolution Inv. Corp.*,
    72 N.E.3d 573 (Ohio 2016) ...................................................................................7, 8

*Toshiba Corp. v. CDI Media, Inc.*,
    2014 WL 643702 (S.D.N.Y. Feb. 19, 2014).............................................................20

*U.S. Bank, N.A. v. UBS Real Estate Sec., Inc.*,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016)......................................................................24

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
    2017 WL 3392855 (Ohio Ct. Com. Pl. Aug. 4, 2017)..........................................1, 25

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
    2019 WL 495581 (Ohio Ct. App. Feb. 8, 2019)..........................................1, 17, 23

*W. & S. Life Ins. Co. v. Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 3625555 (Ohio Ct. Com. Pl. June 24, 2016) ............................................8

*W. & S. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*,
    2016 WL 11504262 (Ohio Ct. Com. Pl. Sept. 27, 2016)..........................................8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)......................................................................................5

*Ward v. Nat'l Geographic Soc.*,
    208 F. Supp. 2d 429 (S.D.N.Y. 2002)......................................................................20

**RULES**

Fed. R. Civ. P. 56(a) ....................................................................................................4

**STATUTES**

28 U.S.C. § 1782.........................................................................................................14

N.Y. Gen. Oblig. Law § 13-107...................................................................................5

Ohio Rev. Code Ann. § 2305.03(B) ..............................................................................7

**INTRODUCTION**

Litigation against residential mortgage backed securities ("RMBS") trustees has followed a predictable trajectory.  Investors generically claim that the trustee breached allegedly wide-ranging duties to investigate and address problems.  For pleading purposes, courts accept these generalized allegations.[1]  But the same courts uniformly warn that plaintiffs will have to prove their claims "loan-by-loan and trust-by-trust."  *E.g.*, ECF No. 135, at 13 ("MTD Order").

Put to their proof, plaintiffs have not fared well.  In the first trial (a bench trial of a case tried by Plaintiff's counsel), the court found "no merit in any of the claims of the plaintiffs," *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, 2017 WL 3392856, at *1-2 (Ohio Ct. Com. Pl. Aug. 4, 2017), and the court of appeals unanimously affirmed, 2019 WL 495581 (Ohio Ct. App. Feb. 8, 2019) ("*W&S II*").  The reported summary-judgment decisions have also gone defendants' way.  Judge Caproni disposed of nearly all claims because plaintiffs could not "prove that they have evidence to support their claims 'loan-by-loan and trust-by-trust.'"  *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017) ("*Phoenix Light*").  Judge Furman granted summary judgment against a plaintiff on timeliness and causation grounds.  *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 557 (S.D.N.Y. 2018).  Judge Koeltl granted partial summary judgment on standing grounds because the plaintiff automatically transferred its claims when it sold its securities.  *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 986 F. Supp. 2d 412, 418 (S.D.N.Y. 2013).  And another court granted summary judgment for lack of notice to the trustee of an Event of Default.  *Am. Fid. Assurance*

---

[1] *See, e.g.*, *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 102 n.14 (S.D.N.Y. 2016) (deferring until "a later stage" a "close examination" of whether agreements "expressly" impose the alleged duties); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) (explaining that, while plaintiff must prove its case "on a 'loan-by-loan and trust-by-trust' basis," this "is not a pleading standard").

1

*Co. v. Bank of N.Y. Mellon*, 2018 WL 6582381 (W.D. Okla. Oct. 31, 2018).

Plaintiff's case has all of these problems and more.[2]

*No-action clause trusts*.  As an initial matter, 17 of the 56 trusts—the 17 no-action clause trusts—should be completely dismissed from the case.  This Court previously dismissed contract claims based on no-action clauses in these trusts.  The tort claims fail for the same reasons.

*Standing*.  Separately, Plaintiff lacks standing as to 32 of the 74 certificates here.  Thirty of them were sold before Plaintiff filed suit, thus automatically assigning all claims to the buyer.  For the other two (and five of the 30), Plaintiff has no proof it has (or ever had) legal title.

*Untimeliness*.  Many of Plaintiff's claims are also untimely.  Under Ohio's borrowing statute, Plaintiff's claims on 51 of the 74 at-issue certificates must be timely under German law, but are not.  And claims on the other 23 certificates must be timely under Cayman Islands law, but many of the pre-EOD claims are not, including all document-defect claims.

*Post-Event of Default ("EOD") claims*.  Moving to the merits, Plaintiff's primary theory is that servicers' breaches led to EODs, which gave rise to a post-EOD standard of care that U.S. Bank failed to meet.  But these claims require Plaintiff first to prove that an EOD occurred.  Plaintiff cannot possibly do so for half the trusts because it has no evidence that the servicer or master servicer received the written notice needed to potentially trigger an EOD.  Independently defeating these claims for all trusts, Plaintiff lacks evidence that U.S. Bank received written notice (or a specified Responsible Officer had actual knowledge) of an EOD.

*Pre-EOD representation & warranty ("R&W") claims*.  Plaintiff also claims that U.S. Bank breached its limited pre-EOD duties.  One theory is that U.S. Bank discovered breaches by sponsors and originators ("warrantors") of their R&Ws concerning the underlying loans and

---

[2] Appendix A to this brief summarizes the bases for summary judgment as to each of the trusts and certificates.

should have given notice of the breaches and enforced warrantors' repurchase obligations. *E.g.*, Compl. ¶¶ 69-100. Without an EOD, however, the trustee's duties are quite limited: U.S. Bank has only those duties "express[ly]" and "specifically set forth in th[e] Agreement," Stmt. ¶ 35;[3] its rights and powers "shall not be construed" as duties, *id.* ¶ 39; "no implied covenants or obligations shall be read" into the contracts against it, *id.* ¶ 40; it "shall not be bound to make any investigation" unless directed to do so and indemnified by holders, *id.* ¶ 37; and so on, *id.* ¶¶ 35-42. This means that, for many trusts, U.S. Bank cannot have the pre-EOD duties Plaintiff says are implied in the contracts. And even where U.S. Bank was assigned these duties, for the overwhelming majority of loans, Plaintiff lacks any evidence that these duties were ever triggered or breached: That would require loan-specific evidence that U.S. Bank learned of loan-specific breaches and failed to act. For 93% of the loans at issue, no such evidence exists.

*Pre-EOD document-defect claims*. Plaintiff's other pre-EOD contract theory is that U.S. Bank knew about document defects relating to the mortgage, note, assignment, or title policy, and should have forced warrantors to repurchase those loans. *See, e.g.*, Compl. ¶¶ 39-48. But many of the agreements do not impose the duties Plaintiff alleges, and, for the bulk of those that do, the duties were never triggered. Moreover, for many of these claims, U.S. Bank either fulfilled the alleged duties or was not the trustee when any relevant duties arose.

*Tort claims*. Relying on these same theories, Plaintiff also asserts various tort claims—for breach of fiduciary duties following EODs, negligence in performing ministerial acts, and conflicts of interest. *Id.* ¶¶ 165-71. Many of these claims fail for reasons already stated. But beyond these failures, the tort claims fail because they duplicate Plaintiff's contract claims.

---

[3] "Stmt." in this brief refers to U.S. Bank's Separate Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York, submitted with this Motion. "Exhibit" or "Ex." refers to Exhibits to the Declaration of Michael T. Marcucci in Support of U.S. Bank's Motion, submitted with the Motion.

Though this Court earlier declined to dismiss them, a subsequent New York Court of Appeals' decision clarified New York law in a way that disposes of them. Separately, Plaintiff's pre-EOD tort claims based on alleged failure to perform ministerial duties with due care fall short because they are premised on duties that are not "ministerial" under New York law. And the conflict-of-interest claim fails for lack of the requisite quid-pro-quo arrangement.

For all these reasons, the Court should grant U.S. Bank's motion.

## ARGUMENT

U.S. Bank is entitled to summary judgment "if the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Roth v. Solus Alternative Asset Mgmt. LP*, 258 F. Supp. 3d 364, 368 (S.D.N.Y. 2017) (Pauley, J.) (quoting Fed. R. Civ. P. 56(a)). Once U.S. Bank meets its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), Plaintiff "must set forth 'specific facts showing that there is a genuine issue for trial.'" *Roth*, 258 F. Supp. 3d at 368 (quotation omitted). Applying these familiar standards, U.S. Bank is entitled to summary judgment on the vast majority of Plaintiff's claims.

## I.    PLAINTIFF'S TORT CLAIMS FOR 17 TRUSTS FAIL UNDER THE NO-ACTION CLAUSES.

As an initial matter, the 17 no-action clause trusts should be completely dismissed from the case. This Court has already dismissed the *contract* claims regarding those trusts. MTD Order at 23. The tort claims should meet the same fate. As explained in our July 12th and 19th letters (ECF Nos. 278 & 287), the no-action clauses are not limited to breach-of-contract claims. The clauses apply with equal force to claims brought "upon or under or with respect to" the contracts—to claims asserting "any right by virtue or by availing itself of any provisions of this Agreement." Ex. 255. That is why, applying an identical no-action clause, the New York Court

4

of Appeals dismissed *tort claims*.  *Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1171 n.10, 1178 (N.Y. 2014).  And as our July 12th letter explains, Plaintiff's tort claims are all brought "with respect to" and "avail[]" themselves of the contracts.  ECF No. 278, at 2-3.  The post-EOD claims arise only upon a *contractually defined* EOD, and the pre-EOD claims relate to U.S. Bank's performance of *contractual* duties.  *Id.* at 3.  If the Court agrees, it can disregard arguments below directed at those 17 trusts, as well as the entire second part of U.S. Bank's Rule 56.1 statement (paragraphs 402-670).

## II.   PLAINTIFF LACKS STANDING ON ALL CLAIMS AS TO 32 CERTIFICATES.

Plaintiff has failed to meet its burden of proving it has standing to assert claims regarding 32 of the at-issue certificates.  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (lack of "legal title to, or a proprietary interest in, the claim[s]" means no standing); *All Am. Tel. Co., Inc. v. AT&T Corp.*, 328 F. Supp. 3d 342, 354-55 (S.D.N.Y. 2018) (Pauley, J.) ("lack of evidence" of standing warrants summary judgment).

### A.   Claims On 30 Certificates Were Automatically Assigned To Third Parties.

Before Plaintiff even filed suit, 30 certificates had been sold (the "Sold Certificates"). Stmt. ¶¶ 56, 440.  Under New York law, the buyer automatically acquired all claims on those certificates unless the seller expressly reserved them.  N.Y. Gen. Oblig. Law § 13-107. ██████████, Stmt. ¶¶ 66, 450, so it "los[t] standing to bring claim arising out of" them, *FDIC v. Citibank N.A.*, 2016 WL 8737356, at *5 (S.D.N.Y. Sept. 30, 2016).

In its opposition to U.S. Bank's pre-motion letter, Plaintiff asserted that English rather than New York law governs the transfer of its certificates, and that English law has the opposite rule:  a seller retains claims unless it expressly assigns them.  ECF No. 273 at 1-2.  But Plaintiff applies the wrong state's choice-of-law rules:  New York's rather than Ohio's.  *Id.*  Ohio's choice-of-law rules apply here because the case was transferred from Ohio.  MTD Order at 5.

And Ohio rules point to New York law, not English law, as governing the transfer of claims.

Ohio's choice-of-law rules follow a two-step approach. *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 406 (6th Cir. 2018). Step one considers whether "there is an actual conflict between the substantive laws of the states involved," *id.* at 406-07, and if there is, step two asks which jurisdiction has "the most significant relationship" to the underlying claims, *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984).

Applying these steps leads to New York law. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Stmt. ¶¶ 57-67, 441-51; Compl. ¶ 143.

According to Plaintiff, New York and English law conflict: the former provides for automatic assignment; the latter does not. ECF No. 273 at 1-2. Thus, we move on. And at step two, New York has the most significant relationship with these claims. In disputes like this, "the law of the state where the contract will be performed should govern." *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 151-52 (6th Cir. 1992). ████████████████████████████

████████████████████ Stmt. ¶¶ 58, 442. The PSAs say that DTC holds the certificates and that all transfers occur on DTC's books in accordance with DTC's procedures, which are themselves governed by New York law—and the sales in fact settled there. *Id.* ¶¶ 61-66, 445-50.

Accordingly, New York's automatic-transfer rule applies, Plaintiff's claims were assigned to the buyer at the time of the Sold Certificates' sale, and Plaintiff thus lacks standing.

### B.   Plaintiff Cannot Establish It Owns Claims On Seven Certificates.

For the seven "Duke Repo Certificates" (five of which are Sold Certificates), Plaintiff lacks standing because it cannot show who owned the certificates or what they did with them, and so has no proof it has (or ever had) legal title. *Id.* ¶¶ 30, 46-55. Dresdner acquired the Duke Repo Certificates in 2006 and 2007 ████████████████████████. *Id.* ¶¶ 46-48. ████████

6

██████████████████████████████████████████████████████████████

██████████████████████ *Id.* ¶¶ 49-52. ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* ¶¶ 53-55.  Without this

evidence, Plaintiff cannot establish what claims it owns, if any.  It therefore lacks standing.

## III.     MOST OF PLAINTIFF'S CLAIMS ARE UNTIMELY.

For 51 of the 74 certificates at issue, all of Plaintiff's claims are untimely.  For the other

23 certificates, many pre-EOD claims, including all document-defect claims, are untimely.

### A.     Ohio's Borrowing Statute Requires Plaintiff's Claims To Be Timely Under The Law Of The Place Of Injury—Here, Germany And The Cayman Islands.

Ohio law governs in determining the timeliness of Plaintiff's claims in this transferred

case.  MTD Order at 5.  Because Ohio's statutes of limitations include a borrowing statute,

Plaintiff's claims must be timely under the limitations periods of *both* Ohio *and* the place where

the claims accrued.  Ohio Rev. Code Ann. § 2305.03(B).  Like New York, *see* MTD Order at 7,

Ohio applies a place-of-injury test to determine where a claim accrues for borrowing-statute

purposes.[4]  Under the place-of-injury test, a claim accrues "'where the plaintiff resides and

sustains the economic impact of the loss.'"  *Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573,

586-89 (Ohio 2016) (citations omitted); *see* MTD Order at 7 (same for New York).

Under the place-of-injury test, Plaintiff's claims fall into essentially two buckets.  For 51

---

[4] At first blush, it might seem odd to apply different tests for the borrowing statute (the place-of-injury test) and for a general choice-of-law analysis (the most-significant-relationship test discussed in the standing section above).  But both Ohio and New York have different tests for these two distinct purposes:  The test for the borrowing statute is derived from statutory construction—the Legislature's intent to discourage forum shopping—whereas the test for choice of law is a common-law test that is not driven by forum-shopping concerns.  *See Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484-86 (N.Y. 1999).

of the 74 certificates at issue, the "German-Bank Certificates," the place of injury was Germany. Stmt. ¶¶ 121, 499.  These certificates were held by German banks (Eurohypo, Dresdner Bank, and Plaintiff) at the relevant times.  Claims relating to them therefore must be timely under Germany's statutes of limitations.  *Id.*; MTD Order at 7.  The remaining certificates—the 21 "Non-German-Bank Certificates"—were held by Barrington II, a Cayman special-purpose vehicle.  Stmt. ¶ 178.  The place of injury was therefore the Cayman Islands, and the claims relating to them must be timely under the Cayman statutes of limitations.  *See House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *15 (S.D.N.Y. Mar. 31, 2014).

Bank of America has a different view.  It argues that Ohio would apply the "most significant relationship" test for borrowing-statute purposes—a test that would point to New York.  BANA Br. § II.C.  In support, BANA relies on two decisions from the same trial-court judge, *W. & S. Life Ins. Co. v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3625555 (Ohio Ct. Com. Pl. June 24, 2016), and *W. & S. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2016 WL 11504262 (Ohio Ct. Com. Pl. Sept. 27, 2016).  But neither even mentions the Ohio Supreme Court decision adopting the place-of-injury test for borrowing-statute purposes (*Taylor*), likely because the first came out less than two weeks after *Taylor* and the second cites the first.  Each instead relies on *Jarvis v. First Resolution Mgmt. Corp.*, 983 N.E.2d 380 (Ohio Ct. App. 2012), which is the very decision appealed in and displaced by *Taylor*.  In Ohio (as in New York), Plaintiff's claims thus must be timely under the statute of limitations of the place of injury.  *Accord Glob. Fin.*, 715 N.E.2d at 484-86 (same rule for New York's borrowing statute).[5]

---

[5] Even if the most-significant-relationship test controls, many of Plaintiff's claims would still be time-barred.  *See* Ex. 130.  That is also the case if the Court accepts BANA's argument that governing-law provisions dictate the applicable limitations period.  For 23 certificates, *see* Stmt. ¶¶ 33.4, 428.4, Ex. 131, New York's limitations period (including its borrowing statute, *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 103 N.E.3d 774, 778 (N.Y. 2018)) would apply, *see*

**B.      All Of Plaintiff's German-Bank Certificate Claims Are Untimely Under Germany's Three-Year Statute Of Limitations.**

The German statute of limitations for contract and tort claims is three years, and it begins to run at the end of the calendar year in which: (1) "the claim arose" and (2) "the plaintiff either ha[d] knowledge of the circumstances giving rise to the claim and the identity of the defendant, or would have had such knowledge but for gross negligence." *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 22 (2d Cir. 2015); Rohe Aff. ¶ 16.  That is not an unfamiliar rule.  In the United States, too, statutes of limitations often begin to run on the date when the plaintiff (1) "has a complete and present cause of action" and (2) "has discovered [that] cause of action" or could have discovered it with "reasonable diligence." *Cf. Gabelli v. SEC*, 568 U.S. 442, 448-49 (2013).  That date here—when the claim arose and when the plaintiff knew of it or was grossly negligent in not knowing of it—is no later than December 2011.  By then waiting over four years to file this lawsuit, Plaintiff filed too late.

**1.      Claims on the German-Bank Certificates "arose" by 2011.**

Under German law, much like American law, contract and tort claims "arise" when the plaintiff could have asserted the claims "at least in the form of an admissible declaratory action," regardless of whether the plaintiff *knew* about its claims.  Rohe Aff. ¶ 17.  "In this context," a plaintiff could have asserted these claims if there was both a breach and "the existence of a financial loss." *Id.*  And if both that breach and financial loss occurred before the end of 2011, then Plaintiff's claims "arose" outside of the statute of limitations. *Id.*

On Plaintiff's own allegations—"judicial admissions by which [Plaintiff] [is] 'bound'" on summary judgment, *Official Comm. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.

---

BANA Br. § II.B, meaning Plaintiff's claims must still be timely under the limitations law of the place of injury, MTD Order at 7.  Many of the remaining claims also are untimely. *See* Ex. 130.

2003)—both breach and financial loss indeed occurred before December 2011, meaning Plaintiff's claims "arose" outside of Germany's three-year limitations period.

*Breach.*   For all of Plaintiff's claims, the alleged breaches occurred well before the end of 2011.   Plaintiff bases its *pre-EOD claims* on breaches that supposedly occurred while U.S. Bank administered RMBS trusts "from 2004 to 2007," which is when it purportedly "learned that the Sponsors and Originators had departed from their underwriting guidelines, engaged in predatory lending, and failed to ensure that mortgage loans complied with state and federal laws."  Compl. ¶ 73.  U.S. Bank allegedly "knew" about faulty origination practices as shown through its "foreclosure actions from 2005 to 2008."  *Id.* ¶¶ 75-78.  Facts purportedly emerged *publicly* as to these sponsor and originator breaches by "2009 or 2010."  *Id.* ¶ 79.  And U.S. Bank discovered alleged breaches through final exception reports, *id.* ¶¶ 104-05, delivered to the trustee by May 2008 at the latest, Stmt. ¶¶ 169, 458.  All of these dates come before 2011, and all of this information (according to Plaintiff) triggered U.S. Bank's duties to investigate, provide notice, and take enforcement action regarding R&W breaches and document defects—duties U.S. Bank allegedly breached, on Plaintiff's own allegations, well before 2011.  Compl. ¶¶ 69-100.

Plaintiff bases its *post-EOD* claims, too, on alleged pre-2011 breaches.  U.S. Bank's duties arose in "each of the Covered Trusts," Plaintiff says, "shortly after the final exception reports were delivered" in 2008.  Compl. ¶ 107; Stmt. ¶¶ 169, 458.  According to Plaintiff, U.S. Bank breached its duties when it failed to "conduct[] an inquiry to determine if defaulted loans were subject to repurchase claims," Ex. 137 at 7, something that Plaintiff admits happened well before 2011.[6]  By Plaintiff's own lights, then, all the breaches happened before the end of 2011.

---

[6] Once an EOD has triggered the post-EOD prudent-person standard in a trust, a subsequent EOD triggering the same duty in that trust is irrelevant for statute-of-limitation purposes under German law.  Rohe Aff. ¶ 26.  At any rate, even if the rule were otherwise, all claims based on EODs occurring in 2011 or before are untimely.

*Financial loss*.  Plaintiff also suffered a "financial loss" before the end of 2011.  Under German law, it matters not that the "permanence of the loss is uncertain"; it matters only that the "the financial position of the injured party is worsened."  Rohe Aff. ¶ 17.  And here, Plaintiff asserts that U.S. Bank's breaches caused losses in these trusts well before the end of 2011, including market losses, losses to trust collateral, and reduced cash flow to investors.  *See, e.g.*, Compl. ¶¶ 139, 162, 168; Stmt. ¶¶ 124, 502.  Plaintiff's German-Bank Certificate claims thus "arose" outside of the limitations period.  Rohe Aff. ¶¶ 9, 17.  The claims are time-barred under German law, therefore, if Plaintiff knew or was grossly negligent in not knowing of "the circumstances giving rise to the claim[s]" before the end of 2011.  *Id.* ¶¶ 16, 21-22.

### 2. By 2011, Plaintiff knew or was grossly negligent in not knowing of the circumstances underlying its claims on the German-Bank Certificates.

"Knowledge" for statute-of-limitations purposes is "not difficult to meet under German law."  Rohe Aff. ¶¶ 31-32.  It "does not require that the plaintiff understand the legal basis for its claim" or "possess evidence sufficient to sustain its allegations."  *Id.* ¶ 32.  It requires only that the plaintiff be aware of facts enabling it "to plead its allegations to such extent as to enable the defendant to reply."  *Id.*  And the plaintiff can be aware of the facts entitling it to relief "in any forum" in the world, not just in Germany.  *Id.* ¶ 34.  If the plaintiff possesses this kind of "awareness," it can "assert a consistent and coherent claim with a reasonable expectation of success" and thus has "knowledge" for purposes of the German statute of limitations.  *Id.*

Plaintiff knew of the circumstances allowing it to bring these claims in the United States before the end of 2011.  *Id.* ¶ 80.  At that time, Plaintiff could have filed a virtually identical Complaint:  Redacting post-2011 information from this Complaint changes essentially nothing.  *See* Ex. 2.  Plaintiff was aware as early as April 2007 of allegations that RMBS trustees had failed to address breaches, but rather than acting, Plaintiff "watched . . . very closely" to see if it

11

would "enter into such proceedings."  Stmt. ¶¶ 88, 472. ███████████████

████████████████████████████████████████████████████████████

██████████████████  *Id.* ¶¶ 130-31, 142, 144, 508-09, 521, 523.  And then in 2011,

Plaintiff sued a sponsor of at least one trust here for "ignor[ing] . . . due diligence findings" by a

risk manager that revealed "a significant deterioration of [mortgage] lending standards and a

parallel jump in lending exceptions."  *Id.* ¶¶ 137, 516.  In other words, it made the same kind of

allegations in 2011 that it makes here.  Together, then, the "evidence demonstrating [Plaintiff's

pre-2012] awareness" of the facts underlying its claims "is voluminous."  Rohe Aff. ¶ 51.

But even if Plaintiff did not have "knowledge," it "would have had such knowledge but

for [its] gross negligence."  *IKB*, 634 F. App'x at 22; *see* Rohe Aff. ¶¶ 16, 65.  A plaintiff is

grossly negligent for these purposes when it knows of "obvious, readily accessible facts that

required its attention and further investigation," but when it fails to perform that investigation.

Rohe Aff. ¶ 44.  That duty to investigate is "heightened" when, as here, the plaintiff is

"sophisticated."  *Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,

2013 WL 6667601, at *10-11 (S.D.N.Y. Dec. 17, 2013); *see* Rohe Aff. ¶ 47; Stmt. ¶¶ 72-75, 90-

96, 112-20, 456-59, 473-79, 490-98.  And the duty becomes more heightened still as the "volume

of [the plaintiff's] investment" increases, *Deutsche Zentral*, 2013 WL 6667601, at *10-11, as it

did here, to the tune of hundreds of millions of dollars, *see* Ex. 14; Ex. 15 (Chart 2).

Measured by these standards, Plaintiff was at least aware of "obvious, readily accessible

facts that required its attention and further investigation."  Rohe Aff. ¶ 44.  Indeed, Plaintiff

admits that, by 2011, not only was there reason for investigation, but "it was apparent that

Defendants had breached their duties and would not take steps to remedy their failures."  Compl.

¶ 143.  Perhaps Plaintiff does not mean "apparent *to Plaintiff*," only to others; but even so, that

admission gives up the game.  Failing to know or at least investigate what is "apparent" to others is the very definition of "gross negligence."  Rohe Aff. ¶ 52.

But there is more.  Plaintiff admits, for example, that it knew about significant performance issues with the German-Bank Certificates long before the end of 2011, Stmt. ¶¶ 125-28, 503-06, alone and independently triggering a duty under German law to investigate, Rohe Aff. ¶ 65.  Alongside these performance issues, Plaintiff was also aware back in 2006 of widespread underwriting problems in the mortgage loan origination industry.  Stmt. ¶¶ 85-89, 105-09, 462-72.  And Plaintiff knew of widely reported problems in the mortgage servicing industry, as evidenced by its discussions surrounding the robo-signing scandal at length, including the potential liability of RMBS deal parties as to missing or defective documents.  *Id.* ¶¶ 110-11, 130-35, 489, 511-13.  ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████              *Id.* ¶¶ 133-35, 511-13.

All of this knowledge of "obvious, readily accessible facts" triggered Plaintiff's duty to investigate well before the end of 2011; and a simple, inexpensive investigation at that time would have led Plaintiff to the very information it relied on to file the Complaint in 2015.  Rohe Aff. ¶ 65.  That means that, even assuming Plaintiff did not have *actual knowledge* of the circumstances surrounding its claims, it was "grossly negligent" in failing to come up with that knowledge.  And indeed, one court has reached that conclusion involving a Plaintiff affiliate and the same certificates in the analogous context of the U.S. discovery rule.  *See Commerzbank AG London Branch v. UBS AG*, 2015 WL 3857321, at *3 (N.Y. Sup. Ct. June 17, 2015) (holding that the same information trigged a plaintiff duty to investigate before the end of 2011, in a case

13

involving 34 of the German-Bank Certificates).

Plaintiff may respond that it must have knowledge of facts that allow it to file suit *in Germany*, not in the United States, and that because German courts have heightened pleading relative to U.S. courts, it could not have acquired such knowledge.  But that would be wrong three times over.  *First*, the German statute of limitations "will begin to run if the plaintiff possesses sufficient information" to make a "coherent claim . . . *in any forum* where it would be reasonable to bring suit, *including the United States*."  Rohe Aff. ¶ 34 (emphasis added).  So Plaintiff's awareness of the facts allowing it to sue in the United States suffices.  *Second*, and in any event, Plaintiff *did* have awareness of facts allowing it to sue *in Germany*, as well as in the United States.  *Id.* ¶¶ 78, 80.  And *third*, even if Plaintiff did not have actual knowledge, it was grossly negligent in not using the tools available to it to acquire such knowledge.  *Id.* ¶¶ 65, 81. German plaintiffs have ample tools to investigate and obtain discovery—indeed, more than in the United States.  *Id.* ¶¶ 36-40.  To give just one of the many examples Professor Rohe offers, Plaintiff could have used 28 U.S.C. § 1782 to obtain U.S. Bank's "testimony," "document[s]," and "other thing[s] for use in a proceeding in a [German] tribunal," even *before* filing suit in Germany.  *See id.* ¶ 36 & n.35.

In sum, Plaintiff's German-Bank Certificate claims arose, and the facts needed to allege those claims were known or reasonably available to Plaintiff, before the end of 2011.  As a result, Plaintiff's claims accrued before the end of 2011, and Plaintiff was required to file its claims before the end of 2014.  Its failure to do so means that the claims as to the German-Bank Certificates are time-barred.[7]

---

[7] A subset of the German-Bank Certificate claims accrued in Ireland—specifically, claims relating to 21 certificates held by Palmer Square 3 (an Irish CDO) and arising before those certificates were sold to Dresdner on August 29, 2008.  Stmt. ¶¶ 18, 421.  But that does not help

**C.      Many Of The Non-German-Bank-Certificate Claims Are Untimely Under Cayman Islands Law.**

The remaining certificates—the 23 "Non-German-Bank Certificates"—must be timely under Cayman law.  They are not.  The Cayman Islands has a six-year statute of limitations for breach of contract, trust, or fiduciary duty.  Wood Aff. ¶¶ 16-18.  Under Cayman Islands law, the limitations period starts to run when the claim arises, regardless of when the plaintiff or its assignee learned or could have learned of the breach.  *Id.* ¶¶ 19-21, 23.  Thus, all document-defect claims relating to the Non-German Bank Certificates are barred, as are all claims based on alleged discovery of R&W breaches before December 28, 2009.  *Id.* ¶¶ 9-12; Stmt. ¶¶ 178-82.

**IV.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON NEARLY ALL OF PLAINTIFF'S POST-EOD CLAIMS.**

Plaintiff fares no better on the merits of its claims.  It lacks evidence as to most of them, starting with its post-EOD claims.[8]  Stmt. § XI; Compl. ¶ 10 (fiduciary duties arise "after an 'Event of Default'").  A post-EOD claim can arise only if (i) a contractually defined EOD occurred *and* (ii) U.S. Bank had actual knowledge or received written notice of the EOD.  For all except one trust, Plaintiff lacks evidence as to one or both of these things.

**A.      U.S. Bank Is Entitled To Summary Judgment On All Servicer-Breach EODs.**

Plaintiff's primary theory of post-EOD duties relates to servicer-breach EODs.  For these, Plaintiff first must show that a servicer-breach EOD occurred.  Plaintiff cannot do so for over

---

Plaintiff.  All such claims, which by definition include only those arising before August 30, 2008, are necessarily time-barred under Ireland's six-year statute of limitations, which begins to run when the claim arises, regardless of the plaintiff's knowledge.  Breen Aff. ¶¶ 6-9, 11-14.

[8] Four of the trusts here are governed by Delaware law.  Stmt. ¶ 34.2  Delaware courts likely would construe the contracts as New York courts have, given that courts "strive to give indenture provisions a consistent and uniform meaning."  *Concord Real Estate CDO 2006-1, Ltd. v. Bank of Am. N.A.*, 996 A.2d 324, 331 (Del. Ch. 2010).  The principles governing the Delaware tort claims also mirror those under New York law.  *See infra* § VII.

half the trusts because it has no evidence that the servicer or master servicer received written notice of its breach.  Independently defeating these claims as to all trusts (including those for which servicer or master servicer actual knowledge of a breach can trigger an EOD), there is no evidence U.S. Bank received written notice or had actual knowledge of a servicer-breach EOD.

           **1.**       **There is no evidence that a servicer-breach EOD occurred for the trusts requiring written notice to the servicer or master servicer.**

In 28 trusts, to prove a contractually defined EOD, Plaintiff must show that the servicer or master servicer received *written notice* of a material breach.  Ex. 36.  Plaintiff fails to do so.

           **(a)**       **Plaintiff cannot rely on the prevention doctrine.**

Plaintiff's principal argument regarding written notice to the servicer relies on the so-called "prevention doctrine."  According to this argument, if the trustee could have given written notice of a breach that might have triggered an EOD if uncured, the trustee loses the ability to rely on the lack of an EOD.  That is, an EOD that did not *actually* occur can be *deemed* to have occurred.  At the motion-to-dismiss stage, this Court followed "several courts in this District" that had applied the prevention doctrine under similar circumstances.  MTD Order at 8.  But the law has changed.  The First Department has since definitively resolved the issue, holding that the prevention doctrine has no application in these circumstances.  *See BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*, 165 A.D.3d 526, 527 (1st Dept. 2018); *Fixed Income Shares: Series M v. Citibank, N.A.*, 157 A.D.3d 541, 542-43 (1st Dept. 2018).  This Court is "bound" by those decisions "unless [it] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion."  *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010).

In *Fixed Income*, the First Department rejected the prevention doctrine in a case like this for three reasons:  (1) the trustee had no duty to give notice; (2) the trustee did not actively prevent others from giving notice; and (3) "in any event," certificateholders themselves could

have provided the required notice.  157 A.D.3d at 542-43.  In so concluding, the court specifically rejected an argument that some federal courts had accepted:  that the provision stating that an EOD occurs after notice "shall have been given" to the servicer or master servicer somehow imposes a duty on the trustee to give notice.  *Id.*  That provision, *Fixed Income* held, "does not require [the trustee] to give notice to cure; it merely defines 'Event of Default.'"  *Id.* at 542.  *BlackRock* then reaffirmed *Fixed Income*.  Addressing the same "shall have been given" clause, the court reiterated that "the PSAs do not require US Bank to send a notice to cure, but merely designate it as one of the parties that is permitted to send such a notice."  *BlackRock*, 165 A.D.3d at 527.  And it found that the trustee did not engage in active conduct because a "failure to send a notice to cure to the servicers is not 'active conduct.'"  *Id.*

This Court should—and, respectfully, is bound to—follow the lead of these cases.  *First*, U.S. Bank had no duty to give the notice preceding an EOD.  For 24 of the 28 trusts, U.S. Bank never has such a duty.  Stmt. ¶¶ 188, 556.  For the remaining four trusts, the duty can arise (upon a U.S. Bank Responsible Officer's actual knowledge (or written notice for one trust) of a master-servicer breach), but did not.  *Id.* ¶¶ 349-52, 640-42.  *Second*, Plaintiff has no evidence that U.S. Bank actively prevented others from giving notice to servicers or master servicers.  *Id.* ¶¶ 255, 576.  At most, U.S. Bank failed to give notice, and "failure to send a notice to cure to the servicers is not 'active conduct.'"  *Fixed Income*, 157 A.D.3d at 542.  And *third*, Plaintiff cannot satisfy the causation element of the prevention doctrine because, for all but one trust, certificateholders themselves are empowered to send the notice to trigger the cure period.  *Id.* at 542-43; *W&S II*, 2019 WL 495581, at *8; Stmt. ¶¶ 187, 555, 211.

In its opposition to U.S. Bank's pre-motion letter, Plaintiff pointed to one post-*Fixed Income* decision:  *Pacific Life Ins. Co. v. Bank of New York Mellon*, 2018 WL 1382105, at *10

(S.D.N.Y. Mar. 16, 2018).  But *Pacific Life* is irreconcilable with the First Department's

holdings.  *Pacific Life* relied on an interpretation of the "shall have been given" language that

*Fixed Income* rejected.  And subsequently, in *Blackrock*, the plaintiffs put *Pacific Life* in front of

the First Department and asked it to reverse position.  But the First Department reaffirmed *Fixed*

*Income* notwithstanding that argument.  Indeed, the *Pacific Life* court *itself* later clarified that its

prevention-doctrine conclusions were dicta:  They "did not turn on the application of the

prevention doctrine"; the allegations instead "create a reasonable expectation that discovery will

reveal evidence of written notice."  2018 WL 1871174, at *2 (S.D.N.Y. Apr. 17, 2018).

In short, the law has changed, and the prevention doctrine provides Plaintiff no refuge.

> **(b)    Plaintiff has no evidence that servicers and/or master servicers received the required written notice and demand to cure.**

Without the prevention doctrine, Plaintiff has no evidence of an EOD for the 28 written-

notice trusts because it has no trust-specific written notice to the servicer of a breach and demand

for cure.  Stmt. ¶¶ 202-54, 563-75.  In an effort to show these things, Plaintiff points to letters

U.S. Bank sent to all the servicers it worked with regarding generalized industry problems,

asking them to report any non-compliance.  *Id.* ¶¶ 204-07, 565-68.  But these letters did not

purport to notify servicers of any actual breaches, much less breaches specific to the trusts here,

and thus cannot trigger an EOD.  *Id.*  Plaintiff next points to letters from certificateholders.  But

those were either devoid of any trust-specific information or written in terms so vague that the

recipients could not determine how they had allegedly breached their duties.  *Id.* ¶¶ 210-45.  And

for some, the holders sending the letters admitted that they lacked the requisite percentage of

voting rights to provide the notice that could trigger the cure period for an EOD.  *Id.* ¶¶ 234-35;

*see also id.* ¶ 211 (for SURF 2007-BC1, even an adequately supported letter would not suffice).

For these 28 trusts, without written notice and demand to cure to the servicer, there was no EOD.

### 2.   There is no evidence that U.S. Bank had actual knowledge or received written notice of any servicer-breach EOD.

For *all* trusts, to prove its post-EOD claims, Plaintiff must show not just that there was an EOD, but also that U.S. Bank received "written notice" of the EOD or (in some trusts) that a specifically defined "Responsible Officer" had "actual knowledge" of the EOD.  Stmt. ¶¶ 192, 559.  The PSAs require that an EOD be an unambiguous event—the subject of a writing or actually known to a specific person—because a post-EOD world could entail the trustee taking costly actions that holders ultimately pay for, including the potential replacement of the servicer.  *Phoenix Light*, 2017 WL 3973951, at *2.  The agreements therefore require that the EOD be clear at the time rather than debatably imputed years later.

### (a)   Plaintiff has no evidence that U.S. Bank received written notice of a servicer-breach EOD.

To start, Plaintiff has no evidence of the written notice of an EOD required for 11 of the trusts.  Those PSAs provide that "the Trustee shall not be deemed to have actual knowledge of an Event of Default until a Responsible Officer of the Trustee *shall have received written notice thereof*."  Stmt. ¶ 192.1.  As Judge Caproni held regarding an identical provision, absent "written notice of an Event of Default, the Trustee lacks 'knowledge' and is not subject to a prudent person duty."  *Phoenix Light*, 2017 WL 3973951, at *16.  The trustee's "actual knowledge" for these trusts "is irrelevant."  *Id.* at *17; *Commerce Bank v. Bank of N.Y. Mellon*, 141 A.D.3d 413, 415 (1st Dep't 2016).  Plaintiff may again point to certificateholders' letters, this time as evidence that *U.S. Bank* received written notice of an *EOD*.  But, as explained above, *supra* at 18, those letters fall short of giving notice of even servicer *breaches*; they come nowhere near giving notice of *an EOD*.  *See Commerce Bank*, 141 A.D.3d at 415 (letters informing a trustee of events "that, with time, might ripen into Events of Default," are not written notice of an EOD).

19

> **(b)     For 45 trusts, Plaintiff has no evidence that U.S. Bank obtained actual knowledge of a servicer-breach EOD.**

For 45 trusts, either written notice or a Responsible Officer's actual knowledge of an EOD can trigger the post-EOD standard of care.  Plaintiff has no evidence of written notice for reasons stated above, and Plaintiff fares no better with actual knowledge.  Ambiguous indications of an EOD fall short:  Plaintiff must point to evidence establishing that the contractually specified person had actual knowledge.  Because U.S. Bank has no duty to investigate or monitor servicers, *see* Stmt. ¶¶ 36, 430, ambiguous evidence of servicer breaches cannot possibly give the trustee actual knowledge of a servicer breach, let alone actual knowledge of an EOD.  *Id.* ¶¶ 302-07, 593-99; *see Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 450 (S.D.N.Y. 2002) (where evidence of a fact's occurrence was "murky," "ambiguous," and "not clear cut," no "reasonable trier of fact" could find that defendant "*knew*" that fact).

Plaintiff's evidence is ambiguous at best.  For example, Plaintiff alleges servicer breaches based on a purported failure to maintain REO properties.  Stmt. ¶¶ 315, 607.  In support, it cites litigation filed by the City of Los Angeles.  *Id.* ¶¶ 317, 609.  But the litigation relates to only one or two properties out of thousands of loans in the trusts.  *Id.*  The litigation thus cannot show that any servicer failed to perform in "any *material* respect."  *Id.*  In any event, *allegations* in a separate lawsuit are not evidence for summary-judgment purposes.  *See Toshiba Corp. v. CDI Media, Inc.*, 2014 WL 643702, at *3 (S.D.N.Y. Feb. 19, 2014) ("[T]he Court cannot consider mere allegations brought in another case" on summary judgment.).  Plaintiff also cites servicers' annual RegAB Item 1122 and USAP certifications.  Stmt. ¶¶ 310, 602.  But these do not help Plaintiff because they relate to a servicer's performance at the platform level—*i.e.*, they were not trust-specific—and so are not evidence of a breach, much less an EOD.  *Id.*

Because there was no servicer-breach EOD, much less an EOD that U.S. Bank received

written notice or had actual knowledge of, Plaintiff's servicer-breach post-EOD claims fail.

**B.  Plaintiff's Alternative EOD Theories Are Meritless.**

Plaintiff asserts alternative kinds of EODs, but none raises a material fact for trial.

*Missing or non-compliant RegAB certifications.*  Plaintiff insists that servicers' and master servicers' failures to furnish annual RegAB statements of compliance were automatic EODs.  Plaintiff references several letters from U.S. Bank employees stating that U.S. Bank had not yet received compliant certifications from the servicers or master servicers for seven trusts.  Stmt. ¶ 246.  But these letters did not trigger U.S. Bank's duties in any of the seven trusts, either because they could not serve as the requisite written notice *to* U.S. Bank, or because neither an automatic nor a servicer-breach EOD occurred based on the letters.  *Id.* ¶¶ 192.1, 187.1, 247.

Plaintiff further asserts that, because certain certifications are missing from U.S. Bank's production, they were never delivered.  *Id.* ¶¶ 276, 577.  But all of the "missing" certifications either *were* delivered or were not required to be delivered to U.S. Bank.  *Id.* ¶¶ 277-82, 578.  Plaintiff's reliance on untimely certifications also fails.  *Id.* ¶¶ 284-87, 579.

For eight other trusts, Plaintiff points to letters requesting further information from the servicer as to whether certain certifications were compliant.  *Id.* ¶¶ 250, 571.  These letters do not evidence any breach because they do not take the position that the certifications were, in fact, non-compliant, and Plaintiff cannot show that the certifications actually deviated from the PSAs' requirements.  *Id.* ¶¶ 251-52, 572-73.  Regardless, for two of the eight trusts, these letters do not constitute written notice *to* U.S. Bank of an EOD, as required for post-EOD claims.  *Id.* ¶ 192.1.

*Cumulative-loss EODs.*  Plaintiff says an EOD occurred in four trusts when cumulative losses exceeded certain thresholds.  *Id.* ¶ 262.  That is false for GSAMP 2006-HE5: in that trust, only "Master Servicer Events of Default" can give rise to post-EOD claims, and cumulative-loss events are not Master Servicer EODs.  *Id.* ¶¶ 264-67.  For two more, HEAT 2005-9 and ABSHE

21

2006-HE1, an EOD does not occur until losses exceed a certain threshold *and* holders direct the trustee in writing to terminate the servicers.  *Id.* ¶¶ 268-75.  With no evidence of the required written direction from holders, Plaintiff cannot manufacture an EOD.  *Id.*  For the last, GSAMP 2006-HE6, U.S. Bank does not seek summary judgment on EOD-specific grounds.

      *Servicer-rating downgrade*.  Plaintiff incorrectly claims that EODs occurred in two trusts when the servicer's rating was downgraded.  These servicer downgrades are irrelevant because only a *Master* Servicer EOD can trigger U.S. Bank's post-EOD duties.  *Id.* ¶¶ 256-61.

      *Depositor EODs*.  For four trusts, Plaintiff claims that a depositor EOD occurred.  It alleges that depositors breached in failing to "deliver complete Mortgage Files for all of the Loans," triggering an EOD.  *Id.* ¶ 353.  But depositors had no duty to deliver complete Mortgage Files and so could not have breached in failing to do so.  *Id.* ¶ 355.  Plaintiff thus has no evidence of a depositor EOD, let alone U.S. Bank's actual knowledge or written notice of it.

## V.    U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON VIRTUALLY ALL OF PLAINTIFF'S PRE-EOD R&W CONTRACT CLAIMS.

      Without an EOD, Plaintiff faces an uphill battle.  That is because, before an EOD, Plaintiff must identify a *specific and express trustee duty* to take action before it can even attempt to show a breach.  Stmt. ¶ 35.  Many claims based on U.S. Bank's alleged discovery of a Material R&W Breach (a breach that "materially and adversely affects" either the value of the related Mortgage Loan or certain parties' interests in the Mortgage Loan, *id.* ¶ 360), fail for lack of a specific and express trustee duty.  Even where U.S. Bank had those duties, Plaintiff lacks evidence that they were ever triggered; there is no loan-specific evidence that U.S. Bank discovered or received written notice of (depending on the trust) specific breaches as to specific loans.  *Phoenix Light*, 2017 WL 3973951, at *8, 9.  Many R&W claims fail for the additional reason that any notice and enforcement action would have been futile.

### A.   U.S. Bank Did Not Have Notice And Enforcement Duties For Many Trusts.

U.S. Bank cannot breach duties not specifically and expressly assigned to it.  The PSAs for two trusts do not expressly impose a notice duty on U.S. Bank for Material R&W Breaches, and so U.S. Bank has no notice duty for these trusts.  Stmt. ¶ 361.  The same is true for 21 trusts for which U.S. Bank has no duty to enforce repurchase of breaching loans.  *Id.* ¶¶ 363-64. Plaintiff will attempt to imply duties using provisions in some trusts that say the trustee agrees to "hold the Trust Fund" and exercise "rights referred to above" for the "benefit" of holders.  *E.g.*, Ex. 5 § 2.06.  But § 2.06 does not create duties—it merely "delineates that the trustee holds the trust fund for the benefit of the investors rather than for the trustee's own benefit or the benefit of any other party to the PSA."  *W&S II*, 2019 WL 495581, at *5.

### B.   For Most Loans, Plaintiff Lacks Evidence That U.S. Bank Discovered Or Had Written Notice Of Loan-Specific Breaches Needed To Trigger Any Duties.

For the remaining trusts, U.S. Bank's notice and enforcement duties arise only if it discovers or receives written notice of specific Material R&W Breaches "on a loan-by-loan and trust-by-trust basis."  MTD Order at 13; *see also Phoenix Light*, 2017 WL 3973951, at *7-8. Judge Caproni's summary-judgment decision in *Phoenix Light v. BNYM* is particularly instructive.  She held that a plaintiff in an RMBS trustee case "cannot rely on generalized proof," but rather must present "loan- or Trust-specific proof relative to [the trustee]'s knowledge of any breach."  *Id.* at *8.  Applying this standard, she granted the defendant summary judgment as to all loans except those covered by loan-specific breach notices.  *Id.*

Requiring loan-specific knowledge of breaches makes sense because the remedies Plaintiff says U.S. Bank should have pursued are loan-specific—they "rest[] on the ability of an RMBS trustee to undertake defined, concrete measures" as "to a specific defect, in a specific loan."  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 2017 WL 945099, at *6 (S.D.N.Y.

Mar. 10, 2017).  For example, U.S. Bank could not enforce a seller's duty to "repurchase the affected Mortgage Loan" (the breaching loan) "at the Purchase Price" without loan-specific knowledge.  *E.g.*, Ex. 5 § 2.03; *U.S. Bank, N.A. v. UBS Real Estate Sec., Inc.*, 205 F. Supp. 3d 386, 424 (S.D.N.Y. 2016) ("Section 2.03 provides for a loan-specific repurchase remedy" that "appl[ies] to breaches on an individualized loan-by-loan basis.").  "[T]ogether, these breach and remedy provisions make clear that breaches must be discovered (and remedied) relative to the particular mortgage loans in breach."  *Phoenix Light*, 2017 WL 3973951, at *8.

All of this means Plaintiff must show that U.S. Bank discovered or received written notice of a *loan-specific* breach.  That can happen only if U.S. Bank performs its own investigation or learns of the breach from someone else.  Stmt. ¶ 366.  But the contracts say U.S. Bank *has no duty to investigate* unless directed to do so by a certain percentage of investors.  *Id.* ¶¶ 366-67.  That leaves being told about loan-specific breaches by someone who has done an investigation or another party with more information than U.S. Bank.  *Id.*  Here, for over 93% of the 162,130 loans in the 39 trusts, Plaintiff has no loan- and breach-specific evidence of discovery or written notice of a Material R&W Breach.  *Id.* ¶ 369.[9]  Indeed, for five trusts, Plaintiff has no evidence that U.S. Bank discovered or received written notice of a breach for *any* loan.  *Id.* ¶¶ 368-69  The Court should grant summary judgment as to all of these loans.

Plaintiff may seek to expand the universe of loans at issue by invoking a non-loan-specific "inquiry notice" or "constructive knowledge" theory.  By this theory, U.S. Bank "should have carefully investigated" after it "caught wind" of certain problems based on generalized, publicly available information.  *See, e.g.*, Compl. ¶¶ 79, 92, 160.  But that is incompatible with

---

[9] U.S. Bank received "Potential Breach Notices" for 106 loans, but because they did not purport to identify *actual* breaches, they cannot show discovery or written notice.  Stmt. ¶ 370.9.

the agreements and case law:  An agreement that expressly disclaims a trustee duty to investigate is incompatible with a trustee duty to inquire into, investigate, or catch wind of problems, and the case law has rejected the theory, *see BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, 2017 WL 3610511, at \*9 (S.D.N.Y. Aug. 21, 2017); *Royal Park v. HSBC*, 2017 WL 945099, at \*7; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 4682220, at \*7-8 (S.D.N.Y. Sept. 28, 2018).[10]

Regardless of what "discovery" means, however, the trigger for "discovery" must at a minimum be *loan-specific*.  Decisions suggesting that "discovery" might be something different than "actual knowledge" are thus entirely consistent with the loan-specific requirement.  *See Phoenix Light*, 2017 WL 3973951, at \*7; *Blackrock v. Wells Fargo*, 2017 WL 3610511, at \*10; *Fixed Income*, 157 A.D.3d at 542.  For any duties to arise, the trustee must be told about a specific Material R&W Breach, even if it does not yet have actual knowledge that there truly is a breach that is in fact material.  What Plaintiff offers—"[m]edia reports, poor loan performance, government investigations, and other publicly available information"—"do not provide a basis for discovery of a loan-specific breach."  *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, 2017 WL 3392855, at \*11 (Ohio Ct. Com. Pl. Aug. 4, 2017).[11]

Because Plaintiff lacks loan-specific evidence of discovery or written notice for all except 9,951 loans, its R&W claims for the remaining 152,179 loans must be dismissed.

---

[10] Even if the "discovery" and "no investigation" clauses, taken together, were somehow ambiguous as to the trustee's duties, that ambiguity must be resolved in U.S. Bank's favor.  The PSAs have their own built-in canon of construction limiting trustee duties to those "express[ly]" and "specific[ally]" set forth.  Stmt. ¶ 35.  By any measure, the discovery and no-investigation clauses cannot be reconciled in a way that specifically and expressly requires U.S. Bank to inquire regarding suspected breaches.  U.S. Bank thus had no duty to investigate.

[11] For three trusts, only *written notice* of a Material R&W Breach triggers trustee duties.  Stmt. ¶ 362.1.  Constructive knowledge cannot suffice for these trusts.  Nor does it work for five more trusts where only written notice from certain deal parties that the obligated party failed to cure, substitute, or repurchase the breaching loan triggers U.S. Bank's enforcement duty.  *Id.* ¶ 365.1.

**C.      R&W Claims On Many Of The Remaining Loans Fail For Other Reasons.**

Even for the 9,951 loans for which Plaintiff has a triable issue as to U.S. Bank's

discovery, many of Plaintiff's R&W claims fail.  As to both notice and enforcement, Plaintiff has

no standing as to 4,868 loans because it sold the related certificates *before* U.S. Bank received

notice for these loans.  Stmt. ¶ 370.1.  Separately, for 114 loans, Plaintiff's claims cannot survive

summary judgment because any notice or enforcement action by U.S. Bank would have been

futile.  *Fixed Income*, 314 F. Supp. 3d at 557 (granting trustee summary judgment).  First, for 39

loans, the warrantor's bankruptcy precluded U.S. Bank from taking action.  *Id.*; *see* Stmt.

¶ 370.8.2.  Second, for 81 loans (including 6 of the 39 above), Plaintiff's notice and enforcement

claims fail because loan-specific notice came only after the limitations period for repurchase

litigation had expired.  *Id.* ¶ 370.8.1.  In those circumstances, there was no reason for U.S. Bank

to send notice or enforce repurchase.  *Fixed Income*, 314 F. Supp. 3d at 559-60.

Specific to notice claims, moreover, Plaintiff's claims separately fail for 9,131 loans

because U.S. Bank sent the required notice upon discovering any loan-specific breach.  Stmt.

¶ 370.3.  Plaintiff's enforcement claims independently fail for 6,886 loans because the PSA

imposed no trustee duty to enforce (6,739 of loans) and/or because U.S. Bank received a notice

that the loans would be, or were actually, repurchased (469 of loans).  *Id.* ¶¶ 370.4, 370.10.

All told—even setting aside standing and timeliness—Plaintiff's R&W notice claims fail

for all but 185 loans, and its R&W enforcement claims fail for all but 2,289 loans.  *Id.* ¶ 370.11.

**VI.     U.S. BANK IS ENTITLED TO SUMMARY JUDGMENT ON MANY OF THE
PRE-EOD CONTRACT CLAIMS RELATING TO DOCUMENT DEFECTS.**

Plaintiff's other pre-EOD breach-of-contract theory has its own problems.  Plaintiff

asserts that U.S. Bank learned about "document defects" in Mortgage Files—the files containing

things like the note, mortgage, assignment, and title policy—yet failed to give notice and demand

26

that the obligated party cure or repurchase the affected loan.  Compl. ¶¶ 104-06; Stmt. ¶¶ 371-74.

Many of the PSAs do not impose these duties, and, for the bulk of the PSAs that do, the duties

were never triggered.  Aside from that, many of these claims fail because U.S. Bank either

fulfilled its duties or was not the trustee when any relevant duties arose.

*Notice duty*.  U.S. Bank is entitled to summary judgment on all notice claims for 26 out of

the 39 trusts and on certain notice claims (those under § 2.02) for seven more trusts.

Starting with the 26 trusts, Plaintiff's notice-duty claims fail for four of the 26 trusts

because U.S. Bank had no document-defect notice duty at all.  Stmt. ¶ 375.  For 13 more trusts,

U.S. Bank did not have notice duties because BANA as predecessor trustee had those duties at

the time that notice allegedly should have been given.  *Id.* ¶ 379.  And the relevant succession

agreements say that the successor trustee is not liable for the predecessor trustee's conduct.  *Id.*

¶¶ 390-91.  (Notice claims for two of these 13 trusts fail for separate reasons.  *Id.* ¶ 379.)  For

two more of the 26 trusts, U.S. Bank had no duty because an obligated party had already

received notice from the custodian.  *Id.* ¶ 380.  And for the last seven of the 26 trusts, Plaintiff's

notice claims fail because U.S. Bank fulfilled its notice duties.  U.S. Bank did so for one trust by

sending a letter to the deal parties requesting cure or repurchase of affected loans.  *Id.* ¶ 377.

U.S. Bank did so for the other six trusts by causing the custodian to list exceptions on exception

reports and delivering those reports with certifications.  *Id.* ¶ 376.

For seven more trusts, U.S. Bank is entitled to summary judgment on notice claims under

§ 2.02 because U.S. Bank had no § 2.02 notice duty.  That duty belonged to the party reviewing

the Mortgage File, which for these trusts was the Custodian, not U.S. Bank.  *Id.* ¶ 381.

*Enforcement duty*.  U.S. Bank also is entitled to summary judgment on Plaintiff's claims

that U.S. Bank should have enforced repurchase of loans with document defects for 27 of the 39

27

trusts.  For 21 of the 27 trusts, U.S. Bank had no enforcement duty for document defects.  *Id.*

¶¶ 383-84.  For the other six, Plaintiff lacks evidence of the written notice required to trigger

U.S. Bank's enforcement duty.  *Id.* ¶ 385.  Separately, for 13 of the 27 trusts, U.S. Bank had no

enforcement duties—BANA as predecessor trustee had any duties that arose.  *Id.* ¶ 386.[12]

> *Document defects as Material R&W Breaches*.  Plaintiff might assert that document
> defects were Material R&W Breaches.  But for at least 11 trusts, there is no R&W regarding the
> Mortgage File's completeness, so document defects cannot breach any R&W.  *Id.* ¶ 388.

## VII.    PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED.

U.S. Bank is entitled to summary judgment on Plaintiff's tort claims, as well.  As

discussed, tort claims for 17 trusts fail under no-action clauses, and, separately, Plaintiff's

fiduciary-duty claim fails for 55 of the 56 trusts because Plaintiff has no evidence of an EOD on

which the post-EOD claims depend.  *See supra* § IV.  But that is not the half of it.

### A.    Plaintiff's Tort Claims Are Duplicative Of Its Contract Claims.

First, the tort claims must be dismissed as duplicative based on a recent decision from

New York's highest court:  *Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 94 N.E.3d 456, 461

(N.Y. 2018).  There the New York Court of Appeals held that, "[t]o determine whether a tort

claim lies," a court must ask whether "the nature of the injury, how the injury occurred and the

harm it caused" is the same as the contract claims.  *Id.* at 460-61.  If the answer is yes, the tort

claim is barred.[13]  That decision, combined with Plaintiff's failure to develop any evidence,

---

[12] Plaintiff cannot rely on U.S. Bank's succession to custodian in 16 trusts to trigger notice or
enforcement duties.  The predecessor custodian warranted that it complied with its duties or
would remain liable for its actions, and U.S. Bank had no obligation to (and did not) review the
custodial files.  Stmt. ¶¶ 392-96.

[13] *See also Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle
that where a dispute arises from obligations that are expressly addressed by contract, that dispute
will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising
out of the same facts that underlie the contract obligations would be foreclosed as superfluous.").

compels summary judgment—notwithstanding this Court's prior decision declining to dismiss the tort claims "on a motion to dismiss," "at th[at] stage."  MTD Order at 18, 20.

In *Dormitory Authority*, both the lower courts had denied summary judgment on a tort claim, reasoning that it fell "within the professional malpractice exception" to the duplicativeness doctrine.  *Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 2013 WL 786714, at *8-9 (N.Y. Sup. Ct. Feb. 27, 2013), *aff'd as modified*, 137 A.D.3d 433 (1st Dep't 2016).  But the Court of Appeals reversed.  It explained that the complaint's negligence allegations were "merely a restatement, albeit in slightly different language," of the "contractual obligations." *Dormitory Auth.*, 94 N.E.3d at 461.  Although "the negligence claim [was] framed in terms of [the] failure to comply with professional standards of care" and sought "an additional, unspecified $4 million in damages," the complaint "fail[ed] to include a single allegation that contain[ed] any distinction between the damages applicable to either claim."  *Id.*  Nor was there any "injury alleged . . . that a separate negligence claim would include that is not already encompassed in [the] contract claim."  *Id.* at 462.  The plaintiff failed to correct this defect during discovery—it had continued to make "no distinction between" the damages "incurred based on one claim or the other."  *Id.* at 461.  The tort claim was therefore barred.

*Dormitory Authority* is on all fours with this case.  The negligence and fiduciary-duty claims, though framed as "extra-contractual duties," are identical to the duties (allegedly) imposed by the contracts.  *See* Stmt. ¶¶ 397-98, 666-67.  Not only that, "the nature of the injury, how the injury occurred and the harm it caused" are the same.  *Dormitory Auth.*, 94 N.E.3d at 460-61; *see* Compl. ¶¶ 139-45, 162, 168, 171 (alleging that the U.S. Bank's negligence and breaches of fiduciary duties caused the exact same economic injury as U.S. Bank's contract breaches).  And when asked during discovery to describe the different categories and theories of

damages for each type of claim, Plaintiff made "no distinction between" the types of damages or the injury "incurred based on one claim or the other." *Dormitory Auth.*, 94 N.E.3d at 461; *see* Ex. 92. Thus, *Dormitory Authority* squarely forecloses Plaintiff's tort claims.

**B.    Plaintiff's Conflict-of-Interest Tort Claims Fail For Lack of Evidence Of A Quid-Pro-Quo Arrangement.**

Plaintiff's tort claims based on purported conflicts of interest fail for an additional reason: the record is devoid of evidence that U.S. Bank labored under an actual conflict. To prove a conflict-of-interest claim in this context, Plaintiff must provide evidence of "specific acts of self-dealing," *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011), in the form of a "quid pro quo situation," *Commerce Bank*, 141 A.D.3d at 416. Plaintiff has none. Stmt. ¶¶ 399-401, 668-70. Its conflict-of-interest claims thus fail.

**C.    Plaintiff's Tort Claims Based On Ministerial Duties Fail Too.**

Plaintiff's claims based on "ministerial duties" rest on duties that are not ministerial. The supposedly "ministerial" acts that Plaintiff says U.S. Bank performed negligently are "failing to provide notices of the numerous defaults" and failing to "review each of the mortgage files for the mortgage loans and certify that the documentation for each of the loans was accurate and complete." Compl. ¶¶ 13, 43, 67. But the duty to perform ministerial acts with due care applies only to "basic, non-discretionary" tasks, *Commerce Bank*, 141 A.D. at 415, like processing payments to investors or posting remittance reports. But providing notice of breaches is not a "ministerial task," *see id.*; nor is inspecting and reviewing the contents of documents, *Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 928 N.E.2d 396, 399 (N.Y. 2010). Thus, Plaintiff's ministerial-duties claims must also be dismissed.

**CONCLUSION**

The Court should grant U.S. Bank's motion for partial summary judgment.

30

Dated:   August 1, 2019

Respectfully submitted,

JONES DAY
David F. Adler
Louis A. Chaiten
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939; (216) 579-0212 (fax)
dfadler@jonesday.com
lachaiten@jonesday.com

Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts  02110-1781
(617) 960-3939; (617) 449-6999 (fax)
mmarcucci@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas  75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

Andrew S. Kleinfeld
250 Vesey Street
New York, New York  10281-1047
(212) 326-3939; (212) 755-7306 (fax)
askleinfeld@jonesday.com

*Attorneys for Defendant U.S. Bank National
Association*

# APPENDIX A

## SUMMARY CHART 1
## SUMMARY OF BASES FOR U.S. BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ABSHE 2005-HE8 | M5 | -- | Sold | X | -- | X | X | 139 (Notice) 141 (Enforcement) | X (notice) | X | No claims. |
| ABSHE 2005-HE8 | M6 | -- | -- | X | -- | X | X | 139 (Notice) 141 (Enforcement) | X (notice) | X | No claims. |
| ABSHE 2006-HE1 | M7 | -- | -- | X | -- | X | X | 0 | X (notice) | X | No claims. |
| ABSHE 2006-HE5 | M2 | -- | -- | -- | X | X | X | 11 (Notice) 11 (Enforcement) | X (notice) | X | No claims.[1] |
| BSABS 2005-EC1 | M8 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| BSABS 2005-HE10 | M3 | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |
| BSABS 2005-HE4 | M5 | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |
| BSABS 2005-HE7 | M3 | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |
| BSABS 2005-HE9 | M4 | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |

[1] Eliminating loans in breach notices dated earlier than December 28, 2009 reduces the number of loans for which there is a triable issue to zero loans for this trust.

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BSARM 2006-2 | 3A3 | -- | Sold Duke Repo | X | -- | X | X | 0 | -- | X | No claims. |
| CHASE 2006-A1 | 4A2 | -- | -- | -- | X | X | X | 0 | X | X | No claims. |
| CMLTI 2005-10 | 1A34 | -- | Duke Repo | X | -- | X | X | 0 | X (§ 2.02 notice) | X | No claims. |
| CMLTI 2005-HE1 | M6 | -- | -- | X | -- | X | X | 0 | X (§ 2.02 notice) | X | No claims. |
| *CMLTI 2005-HE3 | M5 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2005-HE3 | M6 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2005-HE4 | M6 | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| CMLTI 2006-AR7 | 1A3B | -- | Duke Repo | X | -- | X | X | 1 (Notice) 40 (Enforcement) | X (§ 2.02 notice) | X | No claims. |
| *CMLTI 2006-NC2 | M2 Barrington II | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-NC2 | M2 Palmer | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE2 | M3 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |

2

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *CMLTI 2006-WFHE2 | M5 Barrington II | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE2 | M5 Palmer | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE3 | M5 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE3 | M6 Barrington II | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE3 | M6 Palmer | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2006-WFHE4 | M1 | X | Sold | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2007-AMC2 | M4 | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| CMLTI 2007-AR1 | M1 | -- | -- | X | -- | X | X | 6 (Notice) 37 (Enforcement) | X (§ 2.02 notice) | X | No claims. |
| *CMLTI 2007-WFHE1 | M5 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2007-WFHE1 | M6 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *CMLTI 2007-WFHE2 | M3 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |

3

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *CSAB 2006-4 | A6A | X | Sold | -- | X | X | X | n/a | n/a | X | No claims. |
| FFMER 2007-2 | A2D | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |
| GSAA 2006-12 | M4 | -- | -- | X | -- | X | X | 2 (Notice) 11 (Enforcement) | -- | X | No claims. |
| GSAA 2007-1 | M3 | -- | -- | X | -- | X | X | 2 (Notice) 14 (Enforcement) | -- | X | No claims. |
| GSAMP 2006-HE5 | M1 | -- | -- | -- | X | X | X | 0 | X | X | No claims. |
| GSAMP 2006-HE6 | M1 | -- | -- | -- | X | X | Cumulative loss EOD | 6 (Notice) 28 (Enforcement) | -- | X | Post-EOD claims; R&W notice claims for 4 loans; R&W enforcement claims for 4 loans[2] |
| HEAT 2005-2 | B1 | -- | Sold | X | -- | X | X | 0 | X | X | No claims. |
| HEAT 2005-4 | B1 | -- | Sold | X | -- | X | X | 1 (Notice) | X | X | No claims. |
| HEAT 2005-4 | M7 | -- | Sold | X | -- | X | X | 1 (Notice) | X | X | No claims. |
| HEAT 2005-9 | M2 | -- | Sold | -- | X | X | X | 0 | X | X | No claims. |
| HEAT 2006-4 | M7 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| HEAT 2006-6 | M2 | -- | -- | -- | X | X | X | 0 | X | X | No claims. |
| HEAT 2007-2 | M1 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |

---

[2] Eliminating loans in breach notices dated earlier than December 28, 2009 reduces the number of loans for which there is a triable issue to four total loans for this trust.

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HEAT 2007-2 | M3 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| JPALT 2006-A6 | 2A4 | -- | Sold | -- | X | X | X | 0 (Notice) 3 (Enforcement) | X | X | No claims. |
| JPALT 2006-A6 | 2A8 | -- | Sold Duke Repo | X | -- | X | X | 0 (Notice) 3 (Enforcement) | X | X | No claims. |
| JPALT 2007-S1 | M3 | -- | -- | -- | X | X | X | 0 (Notice) 6 (Enforcement) | X | X | Pre-EOD R&W enforcement claims for 6 loans |
| JPALT 2007-S1 | M4 | -- | -- | -- | X | X | X | 0 (Notice) 6 (Enforcement) | X | X | Pre-EOD R&W enforcement claims for 6 loans |
| *JPMAC 2005-FRE1 | M6 | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2005-FRE1 | M7 | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2005-WMC1 | M5 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2005-WMC1 | M6 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2005-WMC1 | M7 | X | -- | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2006-CH1 | M6 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |

5

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *JPMAC 2006-CH2 | MV2 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2006-CH2 | MV6 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2006-CW2 | MV3 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| *JPMAC 2006-NC2 | M2 | X | -- | -- | X | X | X | n/a | n/a | X | No claims. |
| MABS 2005-FRE1 | M4 | -- | -- | X | -- | X | X | 7 (Notice) 100 (Enforcement) | -- | X | No claims. |
| MABS 2006-AM2 | A4 | -- | Sold Duke Repo | X | -- | X | X | 0 | X (§ 2.02 notice, all enforcement) | X | No claims. |
| MABS 2006-AM3 | A4 | -- | Sold Duke Repo | X | -- | X | X | 0 | X (§ 2.02 notice, all enforcement) | X | No claims. |
| MABS 2006-NC2 | M3 | -- | -- | X | -- | X | X | 3 (Notice) | X (§ 2.02 notice, all enforcement) | X | No claims. |
| *MARM 2007-HF2 | A2 | X | Sold | X | -- | X | X | n/a | n/a | X | No claims. |
| MLMI 2006-AHL1 | M2 | -- | -- | -- | X | X | X | 0 | X | X | No claims. |
| MSM 2006-15XS | A3 | -- | Sold | -- | X | X | X | 3 (Notice) 4 (Enforcement) | X | X | No claims. |

6

| Trust | Certificate | No-Action | Plaintiff Lacks Standing (Sold and Duke Repo) | All Claims on German-Bank Certificates Untimely | Pre-EOD pre-Dec. 28, 2009 claims untimely (Cayman law, Barrington II) | No Servicer-Breach EOD | No Alternative EOD | Loans with triable issue on notice and enforcement (excluding standing and SOL) | No document-defect claims | No tort claims | CLAIMS REMAINING IF U.S. BANK'S MOTION IS GRANTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SABR 2006-WM1 | A2C | -- | Sold Duke Repo | X | -- | X | X | 1 (Notice) | X | X | No claims. |
| SURF 2007-BC1 | M5 | -- | -- | X | -- | X | X | 1 (Notice) 1,894 (Enforcement) | X (enforcement) | X | No claims. |
| WAMU 2007-OA2 | B1 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| WAMU 2007-OA6 | B1 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| WAMU 2007-OA6 | B2 | -- | -- | X | -- | X | X | 0 | X | X | No claims. |
| WMALT 2007-OA2 | B1 | -- | -- | X | -- | X | X | 1 (Notice) | X | X | No claims. |
| WMALT 2007-OA2 | B2 | -- | -- | X | -- | X | X | 1 (Notice) | X | X | No claims. |
| WMALT 2007-OC1 | A1 | -- | Sold | X | -- | X | X | 1 (Notice) | X | X | No claims. |

SUMMARY CHART 2
SUMMARY OF CERTIFICATE-SPECIFIC STANDING AND STATUTE-OF-LIMITATIONS ARGUMENTS[1]

| Trust | Certificate | Plaintiff Lacks Standing as to 30 Sold Certificates[2] | Plaintiff Lacks Standing As To 7 Duke Repo Certificates[3] | All Claims on German-Bank Certificates Time-Barred Under German Statute of Limitations[4] | Claims on Certain German-Bank Certificates Untimely To The Extent Accruing in Ireland[5] | Pre-EOD contract claims accruing before Dec. 28, 2009 time-barred under Cayman law (Barrington II Certificates)[6] |
|---|---|---|---|---|---|---|
| ABSHE 2005-HE8 | M5 | X | - | X | - | - |
| ABSHE 2005-HE8 | M6 | - | - | X | - | - |
| ABSHE 2006-HE1 | M7 | - | - | X | - | - |
| ABSHE 2006-HE5 | M2 | - | - | - | - | X |
| BSABS 2005-EC1 | M8 | - | - | X | - | - |
| BSABS 2005-HE10 | M3 | X | - | X | - | - |
| BSABS 2005-HE4 | M5 | X | - | X | - | - |
| BSABS 2005-HE7 | M3 | X | - | X | - | - |
| BSABS 2005-HE9 | M4 | X | - | X | - | - |
| BSARM 2006-2 | 3A3 | X | X | X | - | - |
| CHASE 2006-A1 | 4A2 | - | - | - | - | X |
| CMLTI 2005-10 | 1A34 | - | X | X | - | - |

[1] Exhibits 130 and 131 summarize the claims that would be untimely under BANA's statute-of-limitations arguments.

[2] See Exhibit 46 (Chart 14)

[3] See Exhibit 15 (Chart 2-B)

[4] See Exhibit 15 (Charts 2-A, 2-B, 2-C, 2-E, and 2-F)

[5] See Exhibit 15 (Chart 2-C)

[6] See Exhibit 15 (Chart 2-D)

* Designates the Trusts for which the Court previously dismissed contract claims in its Sept. 27, 2017 order for failure to comply with no-action clauses and for which U.S. Bank now moves for summary judgment as to all tort claims based on Plaintiff's failure to comply with no-action clauses.

| Trust | Certificate | Plaintiff Lacks Standing as to 30 Sold Certificates[2] | Plaintiff Lacks Standing As To 7 Duke Repo Certificates[3] | All Claims on German-Bank Certificates Time-Barred Under German Statute of Limitations[4] | Claims on Certain German-Bank Certificates Untimely To The Extent Accruing in Ireland[5] | Pre-EOD contract claims accruing before Dec. 28, 2009 time-barred under Cayman law (Barrington II Certificates)[6] |
|---|---|---|---|---|---|---|
| CMLTI 2005-HE1 | M6 | - | - | X | - | - |
| *CMLTI 2005-HE3 | M5 | X | - | X | - | - |
| *CMLTI 2005-HE3 | M6 | X | - | X | - | - |
| *CMLTI 2005-HE4 | M6 | - | - | X | - | - |
| CMLTI 2006-AR7 | 1A3B | - | X | X | - | - |
| *CMLTI 2006-NC2 | M2 Barrington II | - | - | - | - | X |
| *CMLTI 2006-NC2 | M2 Palmer | - | - | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | - |
| *CMLTI 2006-WFHE2 | M3 | X | - | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | - |
| *CMLTI 2006-WFHE2 | M5 Barrington II | - | - | - | - | X |
| *CMLTI 2006-WFHE2 | M5 Palmer | X | - | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | - |
| *CMLTI 2006-WFHE3 | M5 | - | - | - | - | X |
| *CMLTI 2006-WFHE3 | M6 Barrington II | - | - | - | - | X |
| *CMLTI 2006-WFHE3 | M6 Palmer | X | - | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | - |
| *CMLTI 2006-WFHE4 | M1 | X | - | - | - | X |
| *CMLTI 2007-AMC2 | M4 | - | - | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | - |

| Trust | Certificate | Plaintiff Lacks Standing as to 30 Sold Certificates[2] | Plaintiff Lacks Standing As To 7 Duke Repo Certificates[3] | All Claims on German-Bank Certificates Time-Barred Under German Statute of Limitations[4] | Claims on Certain German-Bank Certificates Untimely To The Extent Accruing in Ireland[5] | Pre-EOD contract claims accruing before Dec. 28, 2009 time-barred under Cayman law (Barrington II Certificates)[6] |
|---|---|---|---|---|---|---|
| CMLTI 2007-AR1 | M1 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| *CMLTI 2007-WFHE1 | M5 | -- | -- | -- | -- | X |
| *CMLTI 2007-WFHE1 | M6 | -- | -- | -- | -- | X |
| *CMLTI 2007-WFHE2 | M3 | X | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| *CSAB 2006-4 | A6A | X | -- | -- | -- | X |
| FFMER 2007-2 | A2D | X | -- | X | -- | -- |
| GSAA 2006-12 | M4 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| GSAA 2007-1 | M3 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| GSAMP 2006-HE5 | M1 | -- | -- | -- | -- | X |
| GSAMP 2006-HE6 | M1 | -- | -- | -- | -- | X |
| HEAT 2005-2 | B1 | X | -- | X | -- | -- |
| HEAT 2005-4 | B1 | X | -- | X | -- | -- |
| HEAT 2005-4 | M7 | X | -- | X | -- | -- |
| HEAT 2005-9 | M2 | X | -- | -- | -- | X |
| HEAT 2006-4 | M7 | -- | -- | X | -- | -- |
| HEAT 2006-6 | M2 | -- | -- | -- | -- | X |
| HEAT 2007-2 | M1 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| HEAT 2007-2 | M3 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |

| Trust | Certificate | Plaintiff Lacks Standing as to 30 Sold Certificates[2] | Plaintiff Lacks Standing As To 7 Duke Repo Certificates[3] | All Claims on German-Bank Certificates Time-Barred Under German Statute of Limitations[4] | Claims on Certain German-Bank Certificates Untimely To The Extent Accruing in Ireland[5] | Pre-EOD contract claims accruing before Dec. 28, 2009 time-barred under Cayman law (Barrington II Certificates)[6] |
|---|---|---|---|---|---|---|
| JPALT 2006-A6 | 2A4 | X | -- | -- | -- | X |
| JPALT 2006-A6 | 2A8 | X | X | X | -- | -- |
| JPALT 2007-S1 | M3 | -- | -- | -- | -- | X |
| JPALT 2007-S1 | M4 | -- | -- | -- | -- | X |
| *JPMAC 2005-FRE1 | M6 | -- | -- | X | -- | -- |
| *JPMAC 2005-FRE1 | M7 | -- | -- | X | -- | -- |
| *JPMAC 2005-WMC1 | M5 | X | -- | X | -- | -- |
| *JPMAC 2005-WMC1 | M6 | X | -- | X | -- | -- |
| *JPMAC 2005-WMC1 | M7 | -- | -- | X | -- | -- |
| *JPMAC 2006-CH1 | M6 | -- | -- | -- | -- | X |
| *JPMAC 2006-CH2 | MV2 | -- | -- | -- | -- | X |
| *JPMAC 2006-CH2 | MV6 | -- | -- | -- | -- | X |
| *JPMAC 2006-CW2 | MV3 | X | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| *JPMAC 2006-NC2 | M2 | -- | -- | -- | -- | X |
| MABS 2005-FRE1 | M4 | -- | -- | X | -- | -- |
| MABS 2006-AM2 | A4 | X | X | X | -- | -- |
| MABS 2006-AM3 | A4 | X | X | X | -- | -- |

4

| Trust | Certificate | Plaintiff Lacks Standing as to 30 Sold Certificates[2] | Plaintiff Lacks Standing As To 7 Duke Repo Certificates[3] | All Claims on German-Bank Certificates Time-Barred Under German Statute of Limitations[4] | Claims on Certain German-Bank Certificates Untimely To The Extent Accruing in Ireland[5] | Pre-EOD contract claims accruing before Dec. 28, 2009 time-barred under Cayman law (Barrington II Certificates)[6] |
|---|---|---|---|---|---|---|
| MABS 2006-NC2 | M3 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| *MARM 2007-HF2 | A2 | X | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| MLMI 2006-AHL1 | M2 | -- | -- | | -- | X |
| MSM 2006-15XS | A3 | X | -- | | -- | X |
| SABR 2006-WM1 | A2C | X | X | X | -- | -- |
| SURF 2007-BC1 | M5 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WAMU 2007-OA2 | B1 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WAMU 2007-OA6 | B1 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WAMU 2007-OA6 | B2 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WMALT 2007-OA2 | B1 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WMALT 2007-OA2 | B2 | -- | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |
| WMALT 2007-OC1 | A1 | X | -- | X (post-Aug. 29, 2008) | X (through Aug. 29, 2008) | -- |

## SUMMARY CHART 3
### SUMMARY OF BASES FOR SUMMARY JUDGMENT ON POST-EOD CLAIMS (CONTRACT AND TORT)

| TRUST | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | No EOD Occurred | | | No Trustee Knowledge of EOD Ex. 133 | | | | | |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | Reg.AB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
| | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | | | | | | | |
| ABSHE 2005-HE8 | -- | X | X | X | | No missing certifications. Plaintiff cannot rely on untimely certifications. | n/a | n/a | n/a |
| ABSHE 2006-HE1 | -- | X | X | X | X | No missing certifications. | X | n/a | n/a |
| ABSHE 2006-HE5 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| BSABS 2005-EC1 | X | -- | X | X | X | Only alleged missing certification is from when BANA served as Trustee | n/a | n/a | n/a |
| BSABS 2005-HE10 | X | -- | X | X | X | Only alleged missing certification is from when BANA served as Trustee | n/a | n/a | n/a |
| BSABS 2005-HE4 | X | -- | X | X | X | Only alleged missing certification is from when BANA served as Trustee | n/a | n/a | n/a |
| BSABS 2005-HE7 | X | -- | X | X | X | Only alleged missing certification is from when BANA served as Trustee | n/a | n/a | n/a |
| BSABS 2005-HE9 | X | -- | X | X | X | Only alleged missing certification is from when BANA served as Trustee | n/a | n/a | n/a |
| BSARM 2006-2 | X | -- | X | X | X | No missing certifications. | n/a | n/a | n/a |

\* Designates the Trusts for which the Court previously dismissed contract claims in its Sept. 27, 2017 order for failure to comply with no-action clauses and for which U.S. Bank now moves for summary judgment as to all tort claims based on Plaintiff's failure to comply with no-action clauses.

| TRUST | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | No EOD Occurred | | | No Trustee Knowledge of EOD Ex. 133 | | | | | |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | RegAB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
| | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | | | | | | | |
| CHASE 2006-A1 | X | -- | X | X | X | n/a | n/a | n/a | n/a |
| CMLTI 2005-10 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. Plaintiff cannot rely on untimely certifications. | n/a | n/a | n/a |
| CMLTI 2005-HE1 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. | n/a | n/a | n/a |
| *CMLTI 2005-HE3 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. | n/a | n/a | n/a |
| *CMLTI 2005-HE4 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. | n/a | n/a | n/a |
| CMLTI 2006-AR7 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *CMLTI 2006-NC2 | -- | X | X | X | X | | n/a | n/a | n/a |
| *CMLTI 2006-WFHE2 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *CMLTI 2006-WFHE3 | -- | X | X | X | X | n/a | n/a | n/a | n/a |

2

| | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
| | No EOD Occurred | | | No Trustee Knowledge of EOD Ex. 133 | | | | | |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | | | | | | | |
| TRUST | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | RegAB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
|---|---|---|---|---|---|---|---|---|---|
| *CMLTI 2006-WFHE4 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *CMLTI 2007-AMC2 | -- | X | X | X | X | Plaintiff cannot rely on untimely certifications. | n/a | n/a | n/a |
| CMLTI 2007-AR1 | -- | X | X | X | X | Plaintiff cannot rely on untimely certifications. | n/a | n/a | n/a |
| *CMLTI 2007-WFHE1 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *CMLTI 2007-WFHE2 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *CSAB 2006-4 | X | -- | X | X | X | n/a | n/a | n/a | n/a |
| FFMER 2007-2 | X | -- | X | X† | n/a | n/a | n/a | n/a | n/a |
| GSAA 2006-12 | X | -- | X | X | X | n/a | n/a | n/a | n/a |
| GSAA 2007-1 | X | -- | X | X | X | n/a | n/a | n/a | n/a |
| GSAMP 2006-HE5 | X | -- | X | X† | n/a | No missing certifications. | X U.S. Bank concedes EOD. | n/a | n/a |
| GSAMP 2006-HE6 | -- | X | X | X† | n/a | No missing certifications. | n/a | n/a | n/a |
| HEAT 2005-2 | X | -- | X | X† | n/a | Letters from U.S. Bank are not written notice to U.S. Bank. | n/a | n/a | n/a |

3

| TRUST | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | No EOD Occurred | | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No Trustee Knowledge of EOD Ex. 133 | | RegAB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | | | | |
| | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | | | | | | | |
| HEAT 2005-4 | X | --- | X | X+ | n/a | Letters *from* U.S. Bank are not written notice *to* U.S. Bank. | n/a | n/a | n/a |
| HEAT 2005-9 | X | --- | X | X+ | n/a | Letters to servicers as to whether certifications were compliant do not reflect a default. Letters *from* U.S. Bank are not written notice *to* U.S. Bank. | X | n/a | n/a |
| HEAT 2006-4 | X | --- | X | X+ | n/a | Letters to servicers as to whether certifications were compliant do not reflect a default. Letters *from* U.S. Bank are not written notice *to* U.S. Bank. No missing certifications. | n/a | n/a | n/a |
| HEAT 2006-6 | X | --- | X | X+ | n/a | Letters *from* U.S. Bank are not written notice *to* U.S. Bank. No missing certifications. | n/a | n/a | n/a |
| HEAT 2007-2 | X | --- | X | X+ | n/a | Letters *from* U.S. Bank are not written notice *to* U.S. Bank. No missing certifications. | n/a | n/a | n/a |
| JPALT 2006-A6 | X (Trustee duty to give notice not triggered) | --- | X | X | X | No missing certifications. | n/a | X | n/a |

4

| TRUST | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
| | No EOD Occurred | | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No Trustee Knowledge of EOD Ex. 133 | | RegAB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | | | | |
| | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | | | | | | | |
| JPALT 2007-S1 | X (Trustee duty to give notice not triggered) | -- | X | X | X | No missing certifications. | n/a | X | n/a |
| *JPMAC 2005-FRE1 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. | n/a | n/a | n/a |
| *JPMAC 2005-WMC1 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *JPMAC 2006-CH1 | -- | X | X | X | X | No missing certifications. | n/a | n/a | n/a |
| *JPMAC 2006-CH2 | -- | X | X | X | X | No missing certifications. | n/a | n/a | n/a |
| *JPMAC 2006-CW2 | X (Trustee duty to give notice not triggered) | -- | X | X | X | n/a | n/a | n/a | n/a |
| *JPMAC 2006-NC2 | -- | X | X | X | X | No missing certifications. | n/a | n/a | n/a |
| MABS 2005-FRE1 | -- | X | X | X | X | Letters to servicers as to whether certifications were compliant do not reflect a default. | n/a | n/a | n/a |
| MABS 2006-AM2 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| MABS 2006-AM3 | -- | X | X | X | X | n/a | n/a | n/a | n/a |

| | SERVICER-BREACH EODS | | | | | ALTERNATIVE EODS | | | |
| | No EOD Occurred | | | No Trustee Knowledge of EOD Ex. 133 | | | | | |
| | No Prevention Doctrine (no duty to give notice and no active hindrance) | | | | | | | | |
| TRUST | Only Written Notice to the Servicer or Master Servicer Can Trigger EOD Ex. 36 | Written Notice or Actual Knowledge of Servicer or Master Servicer Can Trigger EOD Ex. 36 | No written notice to servicer or master servicer Stmt. § XI.B, XXIII.B | No evidence of written notice to U.S. Bank of EOD + designates written-notice-only trust Stmt. § XI.D.1, XXIII.D.1 | No evidence U.S. Bank had actual knowledge Stmt. § XI.D.2, XI.D.3 | RegAB Certifications Stmt. § XI.C.3, XI.C.4, XXIII.C.1, XXIII.C.2 | No Cumulative-loss EODs Stmt. § XI.C.2 | Servicer rating downgrade did not trigger duties Stmt. § XI.C.1 | No Depositor EODs Stmt. § XI.E |
|---|---|---|---|---|---|---|---|---|---|
| MABS 2006-NC2 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| *MARM 2007-HF2 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| MLMI 2006-AHL1 | X | -- | X | X⁺ | n/a | n/a | n/a | n/a | n/a |
| MSM 2006-15XS | X (Trustee duty to give notice not triggered) | -- | X | X | X | n/a | n/a | n/a | n/a |
| SABR 2006-WM1 | -- | X | X | X | X | n/a | n/a | n/a | n/a |
| SURF 2007-BC1 | X | -- | X | X⁺ | n/a | n/a | n/a | n/a | n/a |
| WAMU 2007-OA2 | X | -- | X | X | X | Missing certifications are not automatic EODs. | n/a | n/a | X |
| WAMU 2007-OA6 | X | -- | X | X | X | | n/a | n/a | X |
| WMALT 2007-OA2 | X | -- | X | X | X | n/a | n/a | n/a | X |
| WMALT 2007-OC1 | X | -- | X | X | X | n/a | n/a | n/a | X |

6

## SUMMARY CHART 4
### SUMMARY OF BASES FOR SUMMARY JUDGMENT ON PRE-EVENT OF DEFAULT CONTRACT CLAIMS (39 TRUSTS)

| Trust | No duty to give notice of R&W breaches[1] | No duty to enforce R&W breaches[2] | Loans with a triable issue on notice or enforcement after applying U.S. Bank's loan-specific arguments[3] | U.S. Bank is entitled to summary judgment on document-defect notice claims[4] | U.S. Bank is entitled to summary judgment on document-defect enforcement claims[5] | No completeness R&W[6] |
|---|---|---|---|---|---|---|
| ABSHE 2005-HE8 | -- | -- | 139 (Notice) 141 (Enforcement) | U.S. Bank fulfilled its notice duty by sending letter. | -- | -- |
| ABSHE 2006-HE1 | -- | X | 0 | Custodian provided notice. | -- | -- |
| ABSHE 2006-HE5 | -- | -- | 11 (Notice) 11 (Enforcement) | Custodian provided notice. | -- | -- |
| BSABS 2005-EC1 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| BSABS 2005-HE10 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| BSABS 2005-HE4 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| BSABS 2005-HE7 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| BSABS 2005-HE9 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| BSARM 2006-2 | -- | X | 0 | -- | -- | X |
| CHASE 2006-A1 | -- | X | 0 | No duty to give notice | No duty to enforce | -- |
| CMLTI 2005-10 | -- | -- | 0 | U.S. Bank's § 2.02 notice duty not triggered. | -- | -- |
| CMLTI 2005-HE1 | -- | -- | 0 | U.S. Bank's § 2.02 notice duty not triggered. | -- | -- |

---

[1] See Separate Statement of Undisputed Facts ("Stmt.") ¶ 361; Exhibit 221 (Chart 47-A).

[2] Stmt. ¶¶ 363-64.

[3] Stmt. ¶¶ 368-70; Exhibit 127 (Chart 26).

[4] Stmt. ¶¶ 375-81.

[5] Stmt. ¶¶ 383-86.

[6] Stmt. ¶388; Exhibit 246 (Chart 62).

| Trust | No duty to give notice of R&W breaches[1] | No duty to enforce R&W breaches[2] | Loans with a triable issue on notice or enforcement after applying U.S. Bank's loan-specific arguments[3] | U.S. Bank is entitled to summary judgment on document-defect notice claims[4] | U.S. Bank is entitled to summary judgment on document-defect enforcement claims[5] | No completeness R&W[6] |
|---|---|---|---|---|---|---|
| CMLTI 2006-AR7 | -- | -- | 1 (Notice) 40 (Enforcement) | U.S. Bank's § 2.02 notice duty not triggered. | -- | -- |
| CMLTI 2007-AR1 | -- | -- | 6 (Notice) 37 (Enforcement) | U.S. Bank's § 2.02 notice duty not triggered. | -- | -- |
| FFMER 2007-2 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | -- |
| GSAA 2006-12 | -- | -- | 2 (Notice) 11 (Enforcement) | -- | -- | -- |
| GSAA 2007-1 | -- | -- | 2 (Notice) 14 (Enforcement) | -- | -- | -- |
| GSAMP 2006-HE5 | -- | -- | 0 | BANA was trustee. Duty limited to missing mortgage note. | No duty to enforce. BANA was trustee. | -- |
| GSAMP 2006-HE6 | -- | -- | 6 (Notice) 28 (Enforcement) | -- | -- | -- |
| HEAT 2005-2 | -- | X | 0 | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| HEAT 2005-4 | -- | X | 1 (Notice) | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| HEAT 2005-9 | -- | X | 0 | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| HEAT 2006-4 | -- | X | 0 | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| HEAT 2006-6 | -- | X | 0 | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| HEAT 2007-2 | -- | X | 0 | U.S. Bank satisfied limited duty to cause custodian to deliver. | No duty to enforce | -- |
| JPALT 2006-A6 | X | -- | 0 (Notice) 3 (Enforcement) | No duty to give notice. | U.S. Bank's duty not triggered (no written notice of failure to cure) | -- |
| JPALT 2007-S1 | X | -- | 0 (Notice) 6 (Enforcement) | No duty to give notice. | U.S. Bank's duty not triggered (no written notice of failure to cure) | -- |
| MABS 2005-FRE1 | -- | -- | 7 (Notice) 100 (Enforcement) | -- | -- | -- |
| MABS 2006-AM2 | -- | -- | 0 | U.S. Bank's § 2.02 notice duty not triggered. | U.S. Bank's duty not triggered (no written notice of failure to cure) | -- |
| MABS 2006-AM3 | -- | -- | 0 | U.S. Bank's § 2.02 notice duty not triggered. | U.S. Bank's duty not triggered (no written notice of failure to cure) | -- |

| Trust | No duty to give notice of R&W breaches[1] | No duty to enforce R&W breaches[2] | Loans with a triable issue on notice or enforcement after applying U.S. Bank's loan-specific arguments[3] | U.S. Bank is entitled to summary judgment on document-defect notice claims[4] | U.S. Bank is entitled to summary judgment on document-defect enforcement claims[5] | No completeness R&W[6] |
|---|---|---|---|---|---|---|
| MABS 2006-NC2 | -- | -- | 3 (Notice) | U.S. Bank's § 2.02 notice duty not triggered. | U.S. Bank's duty not triggered (no written notice of failure to cure) | -- |
| MLMI 2006-AHL1 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | -- |
| MSM 2006-15XS | -- | -- | 3 (Notice) 4 (Enforcement) | BANA was trustee. U.S. Bank's duty was not triggered. | BANA was trustee. U.S. Bank's duty not triggered (no written notice from specified parties). | -- |
| SABR 2006-WM1 | -- | X | 1 (Notice) | No duty to give notice. | No duty to enforce. | -- |
| SURF 2007-BC1 | -- | -- | 1 (Notice) 1,894 (Enforcement) | -- | No duty to enforce. | X |
| WAMU 2007-OA2 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| WAMU 2007-OA6 | -- | X | 0 | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| WMALT 2007-OA2 | -- | X | 1 (Notice) | BANA was trustee. | No duty to enforce. BANA was trustee. | X |
| WMALT 2007-OC1 | -- | X | 1 (Notice) | BANA was trustee. | No duty to enforce. BANA was trustee. | X |

## SUMMARY CHART 5
## SUMMARY OF BASES FOR SUMMARY JUDGMENT ON TORT CLAIMS (56 TRUSTS)

| Trust | No-Action Clause Bars Tort Claims (Ex. 255) | Duplicative (Barred by *Dormitory Authority*) | No EOD for post-EOD Tort Claims | No Alleged Breaches of Ministerial Duties | No Evidence of Conflict of Interest |
|---|---|---|---|---|---|
| ABSHE 2005-HE8 | -- | X | X | X | X |
| ABSHE 2006-HE1 | -- | X | X | X | X |
| ABSHE 2006-HE5 | -- | X | X | X | X |
| BSABS 2005-EC1 | -- | X | X | X | X |
| BSABS 2005-HE10 | -- | X | X | X | X |
| BSABS 2005-HE4 | -- | X | X | X | X |
| BSABS 2005-HE7 | -- | X | X | X | X |
| BSABS 2005-HE9 | -- | X | X | X | X |
| BSARM 2006-2 | -- | X | X | X | X |
| CHASE 2006-A1 | -- | X | X | X | X |
| CMLTI 2005-10 | -- | X | X | X | X |
| CMLTI 2005-HE1 | -- | X | X | X | X |
| *CMLTI 2005-HE3 | X | X | X | X | X |
| *CMLTI 2005-HE4 | X | X | X | X | X |
| CMLTI 2006-AR7 | -- | X | X | X | X |
| *CMLTI 2006-NC2 | X | X | X | X | X |
| *CMLTI 2006-WFHE2 | X | X | X | X | X |
| *CMLTI 2006-WFHE3 | X | X | X | X | X |
| *CMLTI 2006-WFHE4 | X | X | X | X | X |
| *CMLTI 2007-AMC2 | X | X | X | X | X |
| CMLTI 2007-AR1 | -- | X | X | X | X |
| *CMLTI 2007-WFHE1 | X | X | X | X | X |
| *CMLTI 2007-WFHE2 | X | X | X | X | X |
| *CSAB 2006-4 | X | X | X | X | X |
| FFMER 2007-2 | -- | X | X | X | X |
| GSAA 2006-12 | -- | X | X | X | X |
| GSAA 2007-1 | -- | X | X | X | X |
| GSAMP 2006-HE5 | -- | X | X | X | X |
| GSAMP 2006-HE6 | -- | X | -- | X | X |
| HEAT 2005-2 | -- | X | X | X | X |
| HEAT 2005-4 | -- | X | X | X | X |
| HEAT 2005-9 | -- | X | X | X | X |
| HEAT 2006-4 | -- | X | X | X | X |
| HEAT 2006-6 | -- | X | X | X | X |
| HEAT 2007-2 | -- | X | X | X | X |
| JPALT 2006-A6 | -- | X | X | X | X |

* Designates the Trusts for which the Court previously dismissed contract claims in its Sept. 27, 2017 order for failure to comply with no-action clauses and for which U.S. Bank now moves for summary judgment as to all tort claims based on Plaintiff's failure to comply with no-action clauses.

| Trust | No-Action Clause Bars Tort Claims (Ex. 255) | Duplicative (Barred by *Dormitory Authority*) | No EOD for post-EOD Tort Claims | No Alleged Breaches of Ministerial Duties | No Evidence of Conflict of Interest |
|---|---|---|---|---|---|
| JPALT 2007-S1 | -- | X | X | X | X |
| *JPMAC 2005-FRE1 | X | X | X | X | X |
| *JPMAC 2005-WMC1 | X | X | X | X | X |
| *JPMAC 2006-CH1 | X | X | X | X | X |
| *JPMAC 2006-CH2 | X | X | X | X | X |
| *JPMAC 2006-CW2 | X | X | X | X | X |
| *JPMAC 2006-NC2 | X | X | X | X | X |
| MABS 2005-FRE1 | -- | X | X | X | X |
| MABS 2006-AM2 | -- | X | X | X | X |
| MABS 2006-AM3 | -- | X | X | X | X |
| MABS 2006-NC2 | -- | X | X | X | X |
| *MARM 2007-HF2 | X | X | X | X | X |
| MLMI 2006-AHL1 | -- | X | X | X | X |
| MSM 2006-15XS | -- | X | X | X | X |
| SABR 2006-WM1 | -- | X | X | X | X |
| SURF 2007-BC1 | -- | X | X | X | X |
| WAMU 2007-OA2 | -- | X | X | X | X |
| WAMU 2007-OA6 | -- | X | X | X | X |
| WMALT 2007-OA2 | -- | X | X | X | X |
| WMALT 2007-OC1 | -- | X | X | X | X |

2