# EXHIBIT 282



February 28, 2012

Bank of America Merrill Lynch
Attn. Global Securities Solutions
540 W. Madison St. Suite 1833
Chicago, IL 60661

## OFFICER'S CERTIFICATE

I, Rod Hartman, hereby certify that I am an officer of Bank of America, National Association, (the "Servicer"). I further certify, with respect to the applicable servicing agreement relating to the securitization transactions(s) set forth on Exhibit A attached hereto (the "Servicing Agreement") that:

(a) A review of the activities of the Servicer during the preceding calendar year and of the performance of the Servicer under the Servicing Agreement has been made under my supervision; and

(b) To the best of my knowledge, based on such review, the Servicer has fulfilled all of its obligations under the Servicing Agreement in all material respects throughout such year.

_____
Rod Hartman
Vice President

February 28, 2012
Date

Bank of America, CA6-918-02-11
225 W. Hillcrest Dr., Thousand Oaks, CA 91380

ⓞRecycled Paper

CONFIDENTIAL

USBCOMMERZ00750758

Exhibit A - Securitized Transaction(s)

Bank of America, NA (Merrill Lynch Mortgage Investors, Inc.) as Owner/Depositor

FFMLT 2005-FF12
FFMLT 2006-FF18
FFMLT 2007-FF1
FFMLT 2007-FF2
FFMLT 2007-FFA
FFMLT 2007-FFC
HALO 2007-AR2
HASCO 2007-HE1
HASCO 2007-HE2
HASCO 2007-NC1
MANA 2007-AF1
MANA 2007-OAR2
MANA 2007-OAR5
MERRILL (HLS INV 610, 611, 699)
MERRILL (HLS INV 640)
MLFFMLT 2007-1
MLFFMLT 2007-2
MLFFMLT 2007-3
MLFFMLT 2007-4
MLFFMLT 2007-5
MLFFMLT 2007-6
MLFFMLT 2007-A
MLFFMLT 2007-H1
MLMBS 2007-1
MLMBS 2007-3
MLMI 2006-A2
MLMI 2006-A3
MLMI 2006-A4
MLMI 2006-AHL1
MLMI 2006-AR1
MLMI 2006-FF1
MLMI 2006-FM1
MLMI 2006-HE1
MLMI 2006-HE2
MLMI 2006-HE3
MLMI 2006-HE4
MLMI 2006-HE5
MLMI 2006-HE6
MLMI 2006-MLN1
MLMI 2006-RM1
MLMI 2006-RM2
MLMI 2006-RM4
MLMI 2006-RM5

Exhibit A- Securitized Transaction(s)

Bank of America, NA (Merrill Lynch Mortgage Investors, Inc.) as Owner/Depositor

MLMI 2006-SD1
MLMI 2006-SL1
MLMI 2006-SL2
MLMI 2006-WMC1
MLMI 2006-WMC2
MLMI 2007-HE1
MLMI 2007-HE2
MLMI 2007-HE3
MLMI 2007-MLN1
MLMI 2007-SD1
MLMI 2007-SL1
SURF 2006-AB1
SURF 2006-AB2
SURF 2006-AB3
SURF 2006-BC1
SURF 2006-BC2
SURF 2006-BC3
SURF 2006-BC4
SURF 2006-BC5
SURF 2007-AB1
SURF 2007-BC1
SURF 2007-BC2

# Bank of America, National Association
Compliance with Item 1122 of Regulation AB
Report of Independent Registered Public Accounting Firm
As of and for the year ended December 31, 2011

CONFIDENTIAL

USBCOMMERZ00750761

## Table of Contents

|  | Section |
|---|---|
| Report of Independent Registered Public Accounting Firm | A |
| Management Assertion of Compliance with Applicable Servicing Criteria | B |

CONFIDENTIAL
USBCOMMERZ00750762

# SECTION A

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

CONFIDENTIAL
USBCOMMERZ00750763



### Report of Independent Registered Public Accounting Firm

To the Board of Directors of
Bank of America, National Association:

We have examined Bank of America, National Association and its affiliates Countrywide Home Loans, Inc. ("CHL"), BAC Tax Services Corporation ("BAC Tax Services"), BAC Field Services Corporation ("BAC Field Services") and Newport Management Corporation ("Newport Management"), and such companies collectively, the ("Company") compliance with the servicing criteria set forth in Item 1122(d) of the Securities and Exchange Commission's Regulation AB for the "Platform" which is comprised of: (i) publicly issued (i.e., registered with the Securities and Exchange Commission ("SEC") pursuant to the Securities Act of 1933, as amended) residential mortgage-backed securities (securities collateralized by residential mortgage loans), including prime, alternative loan products, sub-prime, HELOC and closed seconds) issued on or after January 1, 2006 for which the Company provides Applicable Services; and (ii) domestic transactions included in the previous BANA Regulation AB Item 1122 platform and transferred into the current consolidated platform during 2009 for which Applicable Services are provided and whose transaction agreements require scheduled interest and/or scheduled principal remittances; and (iii) any non-publically issued transaction involving residential mortgage loans for which the Company provides Applicable Services that specifically requires the Company to deliver an annual platform-level assessment of compliance in respect to Applicable Servicing Criteria; and (iv) any transaction for which the Servicer assumed servicing responsibilities from Wilshire Credit Corporation or Home Loan Services, Inc. (collectively, the "Prior Servicers") during 2010 and for which the Prior Servicers previously reported in their respective Regulation AB Item 1122 Management Assertions described in the accompanying Management Assertion of Compliance with Applicable Servicing Criteria ("Management's Assertion"), as of December 31, 2011 and for the year then ended (Newport Management only for the period January 1, 2011 through May 31, 2011, the date acquired by QBE Financial Institution Risk Services, Inc.), excluding criterion 1122(d)(1)(iii) and 1122(d)(3)(i)(c), which the Company has determined are not applicable to the servicing activities performed by it with respect to the Platform. The platform excludes any transactions issued by any government sponsored enterprise for which the Company provides the servicing functions described in the preceding sentence. As described in Management's Assertion, for servicing criteria 1122(d)(4)(ii), 1122(d)(4)(vi), 1122(d)(4)(vii), and 1122(d)(4)(viii), the Company has engaged various vendors to perform the activities required by these servicing criteria. The Company has determined that these vendors are not considered "servicers" as defined in Item 1101(j) of Regulation AB, and the Company has elected to take responsibility for assessing compliance with the servicing criteria applicable to each vendor as permitted by Interpretation 17.06 of the SEC Division of Corporation Finance Manual of Publicly Available Telephone Interpretations ("Interpretation 17.06"). As permitted by Interpretation 17.06, the Company has asserted that it has policies and procedures in place designed to provide reasonable assurance that the vendor's activities comply in all material respects with the servicing criteria applicable to each vendor. The Company is solely responsible for determining that it meets the SEC requirements to apply Interpretation 17.06 for the vendors and related criteria as described in its assertion, and we performed no procedures with respect to the Company's determination of its eligibility to use Interpretation 17.06. Management is responsible for the Company's compliance with the servicing criteria. Our responsibility is to express an opinion on the Company's compliance with the servicing criteria based on our examination.

Our examination was conducted in accordance with attestation standards of the Public Company Accounting Oversight Board (United States) and, accordingly, included examining, on a test basis, evidence about the Company's compliance with the applicable servicing criteria and performing such other procedures as we considered necessary in the circumstances. Our examination included testing of selected asset-backed transactions and securities that comprise the Platform, testing of selected servicing activities related to the Platform, and determining whether the Company processed those selected transactions and performed those selected activities in compliance with the applicable servicing criteria. Our procedures were limited to the selected transactions and servicing activities performed by the Company during the period covered by this report. Our procedures were not designed to detect noncompliance arising from errors that may have occurred prior to or subsequent to our tests that may have affected the balances or amounts calculated or reported by the Company during the period covered by this report.

*PricewaterhouseCoopers LLP, 350 S. Grand Avenue, Los Angeles, CA 90071*
*T: (213) 356 6000, F: (813) 637 4444, www.pwc.com/us*

CONFIDENTIAL                                                                                                      USBCOMMERZ00750764



We believe that our examination provides a reasonable basis for our opinion. Our examination does not provide a legal determination on the Company's compliance with the servicing criteria.

We have been informed that, under the Company's interpretation of 1122(d)(4)(vii), in the absence of specific investor/insurer timeframe standards, the Company generally services loans in accordance with Fannie Mae guidelines which are generally considered to be accepted industry standards. In those cases where loss mitigation or recovery actions were not initiated, conducted and concluded within the specific timeframes set forth in the Fannie Mae guidelines or transaction agreements that contain them, the Company does not consider foreclosure initiation delays to be instances of non-compliance when the Company has made contact with the obligor and is actively engaged in negotiations regarding a loan modification or other loss mitigation alternative, and the Company does not consider delays in the timeframe to conduct and conclude foreclosures to be instances of non-compliance when the foreclosure process is interrupted or impeded by a bankruptcy filing, automatic stay, court delay, delay in service of process, skip trace, probate, foreclosure moratorium, natural or man-made disaster, legal proceeding or government seizure.

We have been informed that, under the Company's interpretation of 1122(d)(4)(x)(B), even though some state laws require such payments of interest, the Company represents that Federal pre-emption rules for nationally chartered banks under 12 CFR §34.4 would be available to it where applicable and enforceable and such Federal pre-emption alone would represent compliance for loans for which the Company pays interest and for those for which the Company may decide not to pay interest on borrower funds held in escrow.

Our examination disclosed the following material noncompliance with the servicing criteria set forth in Item 1122(d)(1)(ii), 1122d(d)(4)(ii), 1122(d)(4)(vi), and 1122(d)(4)(vii) of Regulation AB applicable to the Company during year ended December 31, 2011. For criterion 1122(d)(1)(ii), in some instances policies and procedures have not been instituted to monitor the third party's performance and compliance with such servicing activities, for material servicing activities that are outsourced to third parties. For criterion 1122(d)(4)(ii), in some instances pool assets and related documents are not safeguarded as required by the transaction agreements. For criterion 1122(d)(4)(vi), in some instances loan modifications were not made, reviewed, and/or approved in accordance with the provisions of the transaction agreements. For criterion 1122(d)(4)(vii), in some instances loss mitigation or recovery actions were not initiated, conducted or concluded in accordance with the required timeframes established under the transaction agreements.

In our opinion, except for the material noncompliance described in the preceding paragraph, the Company complied with the aforementioned applicable servicing criteria as of and for the year ended December 31, 2011 for the Platform, in all material respects.

*PricewaterhouseCoopers LLP*

February 24, 2012

2

CONFIDENTIAL

USBCOMMERZ00750765

# SECTION B

## MANAGEMENT ASSERTION OF COMPLIANCE WITH APPLICABLE SERVICING CRITERIA

CONFIDENTIAL

USBCOMMERZ00750766



## MANAGEMENT ASSERTION OF COMPLIANCE
## WITH APPLICABLE SERVICING CRITERIA

February 24, 2012

Bank of America, National Association ("BANA" and the "Servicer") and its affiliates Countrywide Home Loans, Inc ("CHL"), BAC Tax Services Corporation ("BAC Tax Services"), BAC Field Services Corporation ("BAC Field Services") and Newport Management Corporation ("Newport Management") and such companies collectively, (the "Company"), each being parties that participated in servicing functions, as such term is described under Title 17, Section 229.1122 of the Code of Federal Regulations ("Item 1122 of Regulation AB"), provide this platform-level assessment of their compliance with respect to the Applicable Servicing Criteria specified in Item 1122(d) of Regulation AB as it applies to the following Servicing Criteria, Period and Platform:

Applicable Servicing Criteria: the Servicer provides cash collection and administration, investor remittances and reporting (except for those activities relating to trustee and paying agent services), and pool asset administration (except for those activities relating to custodial operations of pool assets and related documents) services for all servicing criteria set forth in Schedule A hereto, to the extent required in the related agreements, except the criteria listed in the column titled "Inapplicable Servicing Criteria" on Schedule A. Also, footnotes are used to clarify or condition the extent to which the criteria are covered based on the activities performed with respect to the Platform.

Period: This assessment of compliance is as of and for the period January 1, 2011 to December 31, 2011; except for Newport Management which the assertion is for the period January 1, 2011 through May 31, 2011, the date acquired by QBE Financial Institution Risk Services, Inc.

Platform: The "Platform" is comprised of:

(i) publicly issued (i.e., registered with the Securities and Exchange Commission ("SEC") pursuant to the Securities Act of 1933, as amended) residential mortgage-backed securities (securities collateralized by residential mortgage loans), including prime, alternative loan products, sub-prime, HELOC and closed seconds) issued on or after January 1, 2006 for which the Company provides Applicable Services; and

(ii) domestic transactions included in the previous BANA Regulation AB Item 1122 platform and transferred into the current consolidated platform during 2009 for which Applicable Services are provided and whose transaction agreements require scheduled interest and/or scheduled principal remittances; and

(iii) any non-publicly issued transaction involving residential mortgage loans for which the Company provide Applicable Services that specifically requires the Company to deliver an annual Regulation AB Item 1122 platform-level assessment of compliance in respect to Applicable Servicing Criteria; and

(iv) any transaction for which the Servicer assumed servicing responsibilities from Wilshire Credit Corporation or Home Loan Services, Inc. (collectively, the "Prior Servicers") during 2010 and for which the Prior Servicers previously reported in their respective Regulation AB Item 1122 Management Assertions.

The Platform excludes any transactions issued by any government sponsored enterprise for which the Company provides the servicing functions described in the preceding sentence as of and for the year ended December 31, 2011.

CONFIDENTIAL

USBCOMMERZ00750767



With respect to the Platform and the Period, the Company provides the following assessment of compliance in respect of the Applicable Servicing Criteria:

1. The Company is responsible for assessing its compliance with the Applicable Servicing Criteria.

2. The Company has assessed compliance with the Applicable Servicing Criteria.

3. Other than as identified on Schedule B hereto, as of and for the Period, the Company complied in all material respects with the Applicable Servicing Criteria.

The foregoing assessment of compliance in respect of the Applicable Servicing Criteria is made by the Servicer for all Applicable Servicing Criteria other than those noted in Schedule A hereto as being performed by affiliates BAC Tax Services or Newport Management. BAC Tax Services and Newport Management, as affiliates, make their assessments of compliance only in respect to the Applicable Servicing Criteria that they performed as noted in Schedule A hereto.

PricewaterhouseCoopers LLP, an independent registered public accounting firm, has issued an attestation report with respect to the Company's foregoing assessment of compliance as of and for the period ended December 31, 2011.

Bank of America, National Association

By: _____
Anthony T. Meola
Senior Vice President



## Schedule A

### Applicable Servicing Criteria

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| **General Servicing Considerations** | | | | | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X[1] | | | |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X | | | |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the pool assets are maintained. | | | | X |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | X | | | |
| **Cash Collection and Administration** | | | | | |
| 1122(d)(2)(i) | Payments on pool assets are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | X | | | |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | X | | | |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | X | | | |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | X | | | |

---

[1] Servicing functions performed by the Company with respect to Item 1122(d)(1)(i) do not relate to monitoring triggers or to monitoring performance and events of default other than those that are related to the Servicer pursuant to the transaction agreements.



| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | X | | | |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | X[2] | | | |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | X | | | |
| Investor Remittances and Reporting | | | | | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of pool assets serviced by the Servicer. | A, B[3], D[4] | | | C |

[2] Unissued checks held to make tax disbursements on behalf of obligors are safeguarded by BAC Tax Services.

[3] Servicing functions performed by the Company with respect to Item 1122(d)(3)(i)(B) do not relate to information other than that contained in the monthly remittance reports delivered by the Company to the master servicer, trustee, and/or bond administrator.

[4] Servicing functions performed by the Company with respect to Item 1122(d)(3)(i)(D) relate to agreeing the total unpaid principal balance and number of pool assets serviced by the Company to the master servicer and/or trustee's records posted on their respective websites. Servicing functions performed by the Company with respect to this criteria for master servicers and/or trustees without a website do not relate to information other than that contained in the monthly reports delivered by the Company to the respective master servicer and/or trustee.



| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X[5] | | | |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X[6] | | | |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | X[7] | | | |
| **Pool Asset Administration** | | | | | |
| 1122(d)(4)(i) | Collateral or security on pool assets is maintained as required by the transaction agreements or related mortgage loan documents. | X[8] | | | |
| 1122(d)(4)(ii) | Pool assets and related documents are safeguarded as required by the transaction agreements | X[8,9] | X[10] | | |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | X | | | |

---

[5] Servicing functions performed by the Company with respect to Item 1122(d)(3)(ii) do not relate to amounts other than amounts remitted by the Company to the master servicer, trustee, and/or bond administrator; certain activities that produce amounts that the Company remits to investors may be performed by asset recovery vendor, but for the Period, none of such vendors performed material servicing activities for the Platform.

[6] Servicing functions performed by the Company with respect to Item 1122(d)(3)(iii) do not relate to records other than the applicable custodial bank account statements maintained by the Company pursuant to the transaction agreements.

[7] Servicing functions performed by the Company with respect to Item 1122(d)(3)(iv) do not relate to records other than custodial bank account statements and wire records of the Company and the remittance reports prepared and delivered by the Company.

[8] Servicing functions performed by the Company with respect to Items 1122(d)(4)(i) and 1122(d)(4)(ii) do not relate to the custodial operations of the pool assets and related documents (collateral file) by the document custodian responsible for such functions for the related transaction.

[9] With respect to Item 1122(d)(4)(ii), the Company engages an affiliate, BAC Field Services to perform specific and limited property preservation and repair functions in order to maintain and safeguard pool assets

[10] With respect to Item 1122(d)(4)(ii), in order to maintain and safeguard pool assets the Company engages vendors to perform specific and limited property preservation and repair functions and property management for tenant occupied REO.

CONFIDENTIAL



| Reference | SERVICING CRITERIA Criteria | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| | | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(4)(iv) | Payments on pool assets, including any payoffs, made in accordance with the related pool asset documents are posted to the Servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related pool asset documents. | X | | | |
| 1122(d)(4)(v) | The Servicer's records regarding the pool assets agree with the Servicer's records with respect to an obligor's unpaid principal balance. | X | | | |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's pool assets (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | X | X[11] | | |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | X[12] | X[13] | | |

---

[11] With respect to Item 1122(d)(4)(vi), the Company engages vendors to perform specific and limited functions in the loan modification process.

[12] In the absence of specific investor/insurer timeframe standards, the Company generally services loans in accordance with Fannie Mae guidelines which are generally considered to be accepted industry standards. In those cases where loss mitigation or recovery actions were not initiated, conducted and concluded within the specific timeframes set forth in the Fannie Mae guidelines or transaction agreements that contain them, the Company does not consider foreclosure initiation delays to be instances of non-compliance when the Company has made contact with the obligor and is actively engaged in negotiations regarding a loan modification or other loss mitigation alternative, and the Company does not consider delays in the timeframe to conduct and conclude foreclosures to be instances of non-compliance when the foreclosure process is interrupted or impeded by a bankruptcy filing, automatic stay, court delay, delay in service of process, skip trace, probate, foreclosure moratorium, natural or man-made disaster, legal proceeding or government seizure.

[13] With respect to Item 1122(d)(4)(vii), the Company engages vendors to perform specific and limited functions related to loss mitigation, foreclosures, short sales, deeds in lieu of foreclosure and REO liquidations.



| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company Is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company Is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a pool asset is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent pool assets including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | X | X[14] | | |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for pool assets with variable rates are computed based on the related pool asset documents. | X | | | |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's pool asset documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable pool asset documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related pool assets, or such other number of days specified in the transaction agreements. | X[15] | | | |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the Servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | X[16] | | X[17] | |

[14] With respect to Item 1122(d)(4)(viii), the Company engages vendors to perform specific and limited functions related to inbound calls on delinquent accounts.

[15] For criterion 1122(d)(4)(x)(B), even though some state laws require such payments of interest, the Company asserts that Federal pre-emption rules for nationally chartered banks under 12 CFR § 34.4 would be available to it where applicable and enforceable and such Federal pre-emption alone would represent compliance for loans for which the Company may pay interest and for those for which the Company may decide not to pay interest on borrower funds held in escrow.

[16] Servicing functions relating to the responsibility of an obligor to make property tax payments are performed by BAC Tax Services. During the period January 1, 2011 through May 31, 2011, Newport Management as an affiliate provided servicing functions relating to the responsibility of an obligor to insure a mortgaged property.

[17] During the period June 1, 2011 through December 31, 2011, Newport Management (a direct subsidiary of QBE Financial Institution Risk Services, Inc.) as a vendor provided specific, limited servicing functions relating to the responsibility of an obligor to insure a mortgaged property and will provide a Regulation AB Item 1122 report of compliance for the period.

CONFIDENTIAL



| Reference | Criteria | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| | | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the Servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | X[18] | | | |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the Servicer, or such other number of days specified in the transaction agreements. | X[19] | | | |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | X | | | |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | X[20] | | | |

---

[18] Performed by BAC Tax Services.

[19] The Servicer performs all of the functions under criterion 1122(d)(4)(xiii) except specific limited tax and insurance disbursement activity performed by affiliates. Tax disbursements made on behalf of an obligor were posted to the obligor's account records by BAC Tax Services. During the period January 1, 2011 through May 31, 2011, insurance disbursements made on behalf of an obligor were posted to the obligor's account by Newport Management as an affiliate.

[20] Servicing functions performed by the Company with respect to Item 1122(d)(4)(xv) do not relate to Item 1115 of Regulation AB (derivative transactions). With respect to external enhancement or other support, identified in Item 1114(a)(1) through (3), there were no activities performed during the Reporting Period with respect to the Platform, because there were no occurrences of events that would require the Company to perform such activities.



## Schedule B*

### Material Instances of Non-Compliance

1. For criterion 1122(d)(1)(ii), the Company notes that in some instances policies and procedures have not been instituted to monitor the third party's performance and compliance with such servicing activities, for material servicing activities that are outsourced to third parties.

2. For criterion 1122(d)(4)(ii), the Company notes that in some instances, pool assets and related documents are not safeguarded as required by the transaction agreements.

3. For criterion 1122(d)(4)(vi), the Company notes in some instances loan modification actions were not made, reviewed, and/or approved in accordance with the provisions of the transaction agreements.

4. For criterion 1122(d)(4)(vii), the Company notes in some instances loss mitigation or recovery actions were not initiated, conducted or concluded in accordance with the required timeframes established under the transaction agreements.

### Management Discussion of Non-Compliance and Remediation

1. While the effective measurement period for Regulation AB compliance is January 2011 - December 2011, the Company developed and implemented significant improvements in managing third parties (vendors) throughout the year including the formal establishment of a specialized group dedicated to improving vendor-management processes in August 2011. Effective policies, procedures, and scorecard monitoring of vendors are now in place to ensure all outsourced servicing activities are performed in accordance with Regulation AB and Bank of America standards.

2. These instances were due in large part to increased volume in loans going through foreclosure.

   The Servicer is in the process of implementing controls and processes to monitor and track released files to ensure return of the documents to Bank of America. Development of an action plan to retrieve documents in the aging pipeline is in progress.

3. These instances were due in large part to increased efforts to work with borrowers to modify troubled loans while acting in the best interests of borrowers and investors during a continuing troubled economic environment.

   The Servicer is implementing a strengthened Quality Assurance and Quality Control framework, enhanced audit procedures for the database that defines investor specific modification options, additional reporting to management, enhanced training for database users, and formalized policies and procedures to ensure that modification actions are made, reviewed and/or approved consistent with the provisions of the transaction agreements.

---

\* PwC's attestation report covers Material Instances of Non-Compliance, but not Management's Discussion of Non-Compliance and Remediation.



4. These instances were due in large part to increased efforts to work with borrowers to modify or otherwise handle troubled loans while acting in the best interests of borrowers and investors and increased efforts to put in place various regulatory and other moratoria on certain foreclosure activities. Certain additional delays in loss mitigation activities are deemed to be caused by uncontrollable events (such as regulatory moratoria on foreclosure activities, implementation of the Administration's Making Home Affordable and Home Affordable Modification Programs and other regulatory guidelines, and borrowers in the bankruptcy process) and are not considered material instances of non-compliance.

The Servicer has significantly increased staffing levels and is implementing a strengthened Quality Assurance and Quality Control framework, enhanced training and policies and procedures, as well as implementing additional system improvements to ensure that recovery actions are initiated, conducted, and concluded in accordance with the timeframes established by the transaction agreements.

CONFIDENTIAL
USBCOMMERZ00750776