# EXHIBIT 298



PricewaterhouseCoopers LLP
350 South Grand Avenue
Los Angeles CA 90071
Telephone (213) 356 6000
Facsimile (813) 637 4444

### Report of Independent Registered Public Accounting Firm

To the Board of Directors of Bank of America Home Loan Servicing L.P.:

We have examined BAC Home Loans Servicing, LP ("BAC Servicing LP") and its affiliates Bank of America, National Association ("BANA"), Countrywide Home Loans, Inc. ("CHL"), BAC Tax Services Corporation ("BAC Tax Services") and Newport Management Corporation ("Newport Management," and such companies collectively, the ("Company") compliance with the servicing criteria set forth in Item 1122(d) of the Securities and Exchange Commission's Regulation AB for publicly issued (i.e. registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933, as amended) residential mortgage-backed securities (securities collateralized by residential mortgage loans, (including prime, alternative loan products, sub-prime, HELOC and closed seconds), issued on or after January 1, 2006 for which the Company provides applicable services (the "Platform") described in the accompanying Assessment of Compliance with SEC Regulation AB Servicing Criteria, as of December 31, 2009 and for the period November 14, 2009 to December 31, 2009, excluding criterion 1122(d)(1)(iii), which the Company has determined are not applicable to the servicing activities performed by it with respect to the Platform. In addition, commencing with the transfer of loans as of November 13, 2009 from the previous BANA platform onto the platform operated by the Servicer, this new consolidated platform also includes (i) domestic transactions established by BANA prior to Platform Conversion for which Applicable Services are provided and whose transaction agreements require scheduled interest and/or scheduled principal remittances, and (ii) any non-publically issued transaction involving residential mortgage loans for which the Company provides Applicable Services that specifically requires the Company to deliver an annual platform-level assessment of compliance in respect to Applicable Servicing Criteria. The platform excludes any transactions issued by any government sponsored enterprise for which the Company provides the servicing functions described in the preceding sentence. Management is responsible for the Company's compliance with the servicing criteria. Our responsibility is to express an opinion on the Company's compliance with the servicing criteria based on our examination.

Our examination was conducted in accordance with attestation standards of the Public Company Accounting Oversight Board (United States) and, accordingly, included examining, on a test basis, evidence about the Company's compliance with the applicable servicing criteria and performing such other procedures as we considered necessary in the circumstances. Our examination included testing of selected asset-backed transactions and securities that comprise the Platform, testing of selected servicing activities related to the Platform, and determining whether the Company processed those selected transactions and performed those selected activities in compliance with the applicable servicing criteria. Our procedures were limited to the selected transactions and servicing activities performed by the Company during the period covered by this report. Our procedures were not designed to detect noncompliance arising from errors that may have occurred prior to or subsequent to our tests that may have affected the balances or amounts calculated or reported by the Company during the period covered by this report. We believe that our examination provides a reasonable basis for our opinion. Our examination does not provide a legal determination on the Company's compliance with the servicing criteria.



We have been informed that, under the Company's interpretation of 1122(d)(4)(vii), in absence of specific investor/insurer timeframe standards, the Company services loans in accordance with Fannie Mae guidelines which is considered the accepted industry standard. In those cases where loss mitigation or recovery actions were not initiated, conducted and concluded within the specific timeframes set forth in the Fannie Mae guidelines or transactions agreements that contain specific timeframes, the Company does not consider foreclosure initiation delays to be instances of non-compliance when the Company has made contact with the obligor and is actively engaged in negotiations regarding a loan modification or other loss mitigation alternative, and the Company does not consider delays in the timeframe to conduct and conclude foreclosures to be instances of non-compliance when the foreclosure process is interrupted or impeded by a bankruptcy filing, automatic stay, court delay, delay in service of process, skip trace, probate, foreclosure moratorium, natural or man-made disaster, legal proceeding or government seizure.

We have been informed that, under the Company's interpretation of 1122(d)(4)(x)(B), the Company generally pays interest on borrower funds held in escrow; however, even though some state laws require such payments of interest, the Company represents that Federal pre-emption rules for nationally chartered banks under 12 CFR §34.4 would be available to it if conditions arose that necessitated invoking pre-emption and such Federal pre-emption alone represents compliance for loans for which the Company pays interest and for those for which the Company may decide not to pay interest on borrower funds held in escrow.

Our examination disclosed the following material noncompliance with the servicing criteria set forth in Item 1122(d)(4)(vi) of Regulation AB applicable to the Company during the period November 14, 2009 to December 31, 2009. For criterion 1122(d)(4)(vi), loan modifications were not made, reviewed, and/or approved in accordance with the provisions of the transaction agreements.

In our opinion, except for the material noncompliance described in the preceding paragraph, the Company complied with the aforementioned applicable servicing criteria as of and for the period November 14, 2009 to December 31, 2009 for the Platform, in all material respects.

*PricewaterhouseCoopers LLP*

February 26, 2010

2

CONFIDENTIAL USBCOMMERZ00882149

## MANAGEMENT ASSERTION OF COMPLIANCE
## WITH APPLICABLE SERVICING CRITERIA



February 25, 2010

BAC Home Loans Servicing, LP ("BAC Servicing LP", the "Servicer") and its affiliates Bank of America, National Association ("BANA"), Countrywide Home Loans, Inc., BAC Tax Services Corporation ("BAC Tax Services") and Newport Management Corporation ("Newport Management," and such companies collectively, the "Company"), each being parties that participated in servicing functions, as such term is described under Title 17, Section 229.1122 of the Code of Federal Regulations ("Item 1122 of Regulation AB"), provide this platform-level assessment of their compliance with respect to the Applicable Servicing Criteria specified in Item 1122(d) of Regulation AB as it applies to the following Servicing Criteria, Period and Platform:

<u>Applicable Servicing Criteria</u>: the Servicer provides cash collection and administration, investor remittances and reporting (except for those activities relating to trustee and paying agent services), and pool asset administration (except for those activities relating to custodial operations of pool assets and related documents) services for all servicing criteria set forth in <u>Schedule A</u> hereto, to the extent required in the related agreements, except the criteria listed in the column titled "Inapplicable Servicing Criteria" on <u>Schedule A</u>. Also, footnotes are used to clarify or condition the extent to which the criteria are covered based on the activities performed with respect to the Platform.

<u>Period</u>: November 13, 2009 (the "Platform Conversion Date") marked the end of the previous BANA Reg AB platform, and November 14, 2009 marks the beginning of the period for this platform. This assessment of compliance is as of and for the period November 14, 2009 to December 31, 2009.

<u>Platform</u>: publicly-issued (i.e., registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933, as amended) residential mortgage-backed securities (securities collateralized by residential mortgage loans, including prime, alternative loan products, sub-prime, HELOC and closed seconds) issued on or after January 1, 2006 for which the Company provides Applicable Services. In addition, commencing with the transfer of loans from the previous BANA platform onto the platform operated by the Servicer, this new consolidated platform also includes (i) domestic transactions established by BANA prior to Platform Conversion for which Applicable Services are provided and whose transaction agreements require scheduled interest and/or scheduled principal remittances, and (ii) any non-publically issued transaction involving residential mortgage loans for which the Company provides Applicable Services that specifically requires the Company to deliver an annual platform-level assessment of compliance in respect to Applicable Servicing Criteria. The platform excludes any transactions issued by any government sponsored enterprise for which the Company provides the servicing functions described in the preceding sentence.

With respect to the Platform and the Period, the Company provides the following assessment of compliance in respect of the Applicable Servicing Criteria:

1. The Company is responsible for assessing its compliance with the Applicable Servicing Criteria.

2. The Company has assessed compliance with the Applicable Servicing Criteria.

3. Other than as identified on <u>Schedule B</u> hereto, as of and for the Period, the Company complied in all material respects with the Applicable Servicing Criteria.

Bank of America, 400 Countrywide Way, Simi Valley, CA 93065

Recycled Paper

CONFIDENTIAL                                                            USBCOMMERZ00882150

The foregoing assessment of compliance in respect of the Applicable Servicing Criteria is made by the Servicer for all Applicable Servicing Criteria other than those noted in Schedule A hereto as being performed by BAC Tax Services or Newport Management and is being made by either BAC Tax Services or Newport Management, as the case may be, for the Applicable Servicing Criteria noted in Schedule A as being performed by it.

PricewaterhouseCoopers LLP, an independent registered public accounting firm, has issued an attestation report with respect to the Company's foregoing assessment of compliance as of and for the period ended December 31, 2009.

Bank of America, National Association
BAC Home Loans Servicing, LP
by BAC GP, LLC, its General Partner

By: _____
Rebecca S Mairone
Senior Vice President

By: _____
Kevin L. Meyers
Senior Vice President

BAC Tax Services Corporation

By: _____
Kevin Hemphill
Vice President

Newport Management Corporation

By: _____
Carolyn Philmon
Senior Vice President

Page 2 of 8

CONFIDENTIAL                                                              USBCOMMERZ00882151

## Schedule A

### Applicable Servicing Criteria

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| **General Servicing Considerations** | | | | | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X | | | |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X | | | |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the pool assets are maintained. | | | | X |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | X | | | |
| **Cash Collection and Administration** | | | | | |
| 1122(d)(2)(i) | Payments on pool assets are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | X | | | |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | X | | | |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | X | | | |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | X | | | |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | X | | | |

Page 3 of 8

CONFIDENTIAL
USBCOMMERZ00882152

| Reference | Criteria | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| | | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | X[1] | | | |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | X | | | |
| **Investor Remittances and Reporting** | | | | | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of pool assets serviced by the Servicer. | X[2] | | | |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X[3] | | | |

---

[1] Unissued checks held to make tax disbursements on behalf of obligors are safeguarded by BAC Tax Services.

[2] Servicing functions performed by the Company with respect to Item 1122(d)(3)(i)(B) do not relate to information other than that contained in the monthly remittance reports delivered by the Company to the master servicer, trustee, and/or bond administrator. Servicing functions performed by the Company with respect to Item 1122(d)(3)(i)(D) relate to agreeing the total unpaid principal balance and number of pool assets serviced by the Company to the trustee's records, not to the investors' records.

[3] Servicing functions performed by the Company with respect to Item 1122(d)(3)(ii) do not relate to amounts other than amounts remitted by the Company to the master servicer, trustee, and/or bond administrator.

CONFIDENTIAL    USBCOMMERZ00882153

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X[4] | | | |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | X[5] | | | |
| Pool Asset Administration | | | | | |
| 1122(d)(4)(i) | Collateral or security on pool assets is maintained as required by the transaction agreements or related mortgage loan documents. | X[6] | | | |
| 1122(d)(4)(ii) | Pool assets and related documents are safeguarded as required by the transaction agreements | X[6] | | | |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | X | | | |
| 1122(d)(4)(iv) | Payments on pool assets, including any payoffs, made in accordance with the related pool asset documents are posted to the Servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related pool asset documents. | X | | | |
| 1122(d)(4)(v) | The Servicer's records regarding the pool assets agree with the Servicer's records with respect to an obligor's unpaid principal balance. | X | | | |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's pool assets (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | X | | | |

[4] Servicing functions performed by the Company with respect to Item 1122(d)(3)(iii) do not relate to records other than the applicable custodial bank account statements maintained by the Company pursuant to the transaction agreements.

[5] Servicing functions performed by the Company with respect to Item 1122(d)(3)(iv) do not relate to records other than custodial bank account statements and wire records of the Company and the remittance reports prepared and delivered by the Company.

[6] Servicing functions performed by the Company with respect to Item 1122(d)(4)(i) and Item 1122(d)(4)(ii) do not relate to the custodial operations of the pool assets and related documents (collateral file) by the document custodian responsible for such functions for the related transaction.

CONFIDENTIAL                                                                                                       USBCOMMERZ00882154

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | X[7] | | | |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a pool asset is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent pool assets including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | X | | | |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for pool assets with variable rates are computed based on the related pool asset documents. | X | | | |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's pool asset documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable pool asset documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related pool assets, or such other number of days specified in the transaction agreements. | X[8] | | | |

---

[7] In the absence of specific investor/insurer timeframe standards, the Company generally services loans in accordance with Fannie Mae guidelines which are generally considered to be accepted industry standard. In those cases where loss mitigation or recovery actions were not initiated, conducted and concluded within the specific timeframes set forth in the Fannie Mae guidelines or transaction agreements that contain them, the Company does not consider foreclosure initiation delays to be instances of non-compliance when the Company has made contact with the obligor and is actively engaged in negotiations regarding a loan modification or other loss mitigation alternative, and the Company does not consider delays in the timeframe to conduct and conclude foreclosures to be instances of non-compliance when the foreclosure process is interrupted or impeded by a bankruptcy filing, automatic stay, court delay, delay in service of process, skip trace, probate, foreclosure moratorium, natural or man-made disaster, legal proceeding or government seizure.

8 For criterion 1122(d)(4)(x)(B), the Company generally pays interest on borrower funds held in escrow; however, even though some state laws require such payments of interest, the Company asserts that Federal pre-emption rules for nationally chartered banks under 12 CFR § 34.4 would be available to it if conditions arose that necessitated invoking pre-emption and such Federal pre-emption alone represents compliance for loans for which the Company pays interest and for those for which the Company may decide not to pay interest on borrower funds held in escrow.

CONFIDENTIAL

USBCOMMERZ00882155

| SERVICING CRITERIA | | APPLICABLE SERVICING CRITERIA | | INAPPLICABLE SERVICING CRITERIA | |
|---|---|---|---|---|---|
| Reference | Criteria | Performed Directly by the Company | Performed by Vendor(s) for which the Company is the Responsible Party | Performed by subservicer(s) or vendor(s) for which the Company is NOT the Responsible Party | NOT performed by the Company or by subservicer(s) or vendor(s) retained by the Company |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the Servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | X[9] | | | |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the Servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | X[10] | | | |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the Servicer, or such other number of days specified in the transaction agreements. | X[11] | | | |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | X | | | |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | X[12] | | | |

---

[9] Servicing functions relating to the responsibility of an obligor to make property tax payments are performed by BAC Tax Services. Servicing functions relating to the responsibility of an obligor to insure a mortgaged property are performed by Newport Management.

[10] Performed by BAC Tax Services

[11] Tax disbursements made on behalf of an obligor are posted to the obligor's account records by BAC Tax Services. Disbursements made on behalf of an obligor in respect of insurance required to be maintained on a mortgaged property are posted to the obligor's account by Newport Management.

[12] Servicing functions performed by the Company with respect to Item 1122(d)(4)(xv) do not relate to Item 1115 of Regulation AB (derivative transactions). With respect to external enhancement or other support, identified in Item 1114(a)(1) through (3), there were no activities performed during the Reporting Period with respect to the Platform, because there were no occurrences of events that would require the Company to perform such activities.

CONFIDENTIAL                                                                                                     USBCOMMERZ00882156

## Schedule B

## Material Instances of Noncompliance

1. For criterion 1122(d)(4)(vi), the Company notes that due to the high volume of modifications resulting from the economic climate of the last two years in some instances loan modifications were not made, reviewed, and/or approved in accordance with provisions of the transaction agreements.

CONFIDENTIAL

USBCOMMERZ00882157