UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
COMMERZBANK AG,  )
  )
       Plaintiff,  )
  )
   -against-  )
  )
U.S. BANK NATIONAL ASSOCIATION  )   Case No. 16-cv-04569 (WHP)
and BANK OF AMERICA, N.A.,  )
  )
       Defendants.  )
  )
  )
  )
  )
  )
  )
------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

JONES DAY
David F. Adler
Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts  02110-1781
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Louis A. Chaiten
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939; (216) 579-0212 (fax)
lachaiten@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas  75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

*Attorneys for Defendant U.S. Bank National Association*

## TABLE OF CONTENTS

                                                                                                                                   **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

GLOSSARY ..................................................................................................................... iv

I.     PLAINTIFF'S TORT CLAIMS FAIL UNDER 17 NO-ACTION CLAUSES ......................................................................................................... 2

II.    PLAINTIFF LACKS STANDING ON ALL CLAIMS AS TO 32 CERTIFICATES ........................................................................................... 3

III.   MOST OF PLAINTIFF'S CLAIMS ARE UNTIMELY ....................................... 4

IV.   MOST OF PLAINTIFF'S POST-EOD CLAIMS FAIL AS A MATTER OF LAW ............................................................................................................. 6

V.    NEARLY ALL OF PLAINTIFF'S PRE-EOD R&W CONTRACT CLAIMS FAIL ................................................................................................. 10

VI.   MANY OF PLAINTIFF'S PRE-EOD DOCUMENT-DEFECT CLAIMS FAIL ............. 11

VII.  ALL OF PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED ................. 12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*,
   634 F.3d 112 (2d Cir. 2011).........................................................................................................7

*Alfaro v. Wal-Mart Stores, Inc.*,
   210 F.3d 111 (2d Cir. 2000).......................................................................................................11

*Ambac Assurance Corp. v. Countrywide Home Loans Inc.*,
   175 A.D.3d 1156 (1st Dep't 2019) ............................................................................................10

*Bakal v. U.S. Bank Nat'l Ass'n*,
   747 F. App'x 32 (2d Cir. 2019) .................................................................................................12

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo
   Bank, N.A.*,
   247 F. Supp. 3d 377 (S.D.N.Y. 2017).........................................................................................4

*BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n*,
   165 A.D.3d 526 (1st Dept. 2018) ...........................................................................................7, 8

*Commerce Bank v. Bank of N.Y. Mellon*,
   141 A.D.3d 413 (1st Dep't 2016) ...............................................................................................9

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
   234 F. Supp. 3d 462 (S.D.N.Y. 2017).....................................................................................3, 4

*Dormitory Auth. v. Samson Constr. Co.*,
   94 N.E.3d 456 (N.Y. 2018).......................................................................................................12

*Fixed Income Shares: Series M v. Citibank N.A.*,
   314 F. Supp. 3d 552 (S.D.N.Y. 2018).........................................................................................1

*Gries Sports Enters., Inc. v. Modell*,
   473 N.E.2d 807 (Ohio 1984) ......................................................................................................3

*IKB Deutsche Industriebank AG v. McGraw Hill Fin.*,
   634 F. App'x 19 (2d Cir. 2015) ...................................................................................................5

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   2014 WL 3529686 (C.D. Cal. July 14, 2014).........................................................................5, 6

*Loral Corp. v. Goodyear Tire & Rubber Co.*,
   1996 WL 38830 (S.D.N.Y. Feb. 1, 1996)...................................................................................5

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
   2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) ............................................................... 9, 11

*Putman High Yield Tr. v. Bank of N.Y.*,
   7 A.D.3d 439 (1st Dep't 2004) ..................................................................................... 9

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   2013 WL 3233130 (Del. Ch. June 20, 2013) ............................................................... 2

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   16 N.E.3d 1165 (N.Y. 2014) ......................................................................................... 2

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   2018 WL 4682220 (S.D.N.Y. Sept. 28, 2018) ............................................................. 10

*S & S Chopper Serv., Inc. v. Scripter*,
   394 N.E.2d 1011 (Ohio Ct. App. 1977) ....................................................................... 3

*Taylor v. First Resolution Inv. Corp.*,
   72 N.E.3d 573 (Ohio 2016) .......................................................................................... 4

*United States ex rel. Kolchinsky v. Moody's Corp.*,
   238 F. Supp. 3d 550 (S.D.N.Y. 2017) .......................................................................... 4

*Vincent v. Money Store*,
   915 F. Supp. 2d 553 (S.D.N.Y. 2013) .......................................................................... 6

*West v. Am. Tel. & Tel. Co.*,
   311 U.S. 223 (1940) ..................................................................................................... 8

**STATUTES**

28 U.S.C. § 1782 .................................................................................................................. 6

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws (1971) ........................................................ 3, 4

# GLOSSARY

This brief will use the following terms and symbols for ease of reference, many of which overlap with Plaintiff's abbreviations.

| | |
|---|---|
| ¶ | Paragraphs in "Stmt.," *i.e.*, Part One of Defendant U.S. Bank National Association's Reply and Response to Plaintiff's Counter-Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York (including U.S. Bank's statement paragraphs, Plaintiff's responses to those paragraphs, and U.S. Bank's replies to those responses) |
| BANA | Defendant Bank of America, N.A. |
| BANA Br. | Memorandum of Law in Support of Bank of America, N.A.'s Motion for Summary Judgment (ECF No. 302) |
| BANA Reply | Reply Memorandum of Law in Support of Bank of America's Motion for Summary Judgment |
| BNYM | Bank of New York Mellon |
| Br. | Memorandum of Law in Suport of U.S. Bank's Motion for Partial Summary Judgment (ECF No. 307) |
| Breen | Affidavit of Richard Breen in Support of U.S. Bank's Motion for Partial Summary Judgment (ECF No. 297), dated July 31, 2019 |
| CFU | Paragraphs in "CFU," *i.e.*, Part Two of Defendant U.S. Bank National Association's Reply and Response to Plaintiff's Counter-Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York (including Plaintiff's counter-statement paragraphs and U.S. Bank's responses to those paragraphs) |
| ECF No. | Documents on this Court's Electronic Docket (No. 16-cv-04569) |

| | |
|---|---|
| EOD | Event of Default |
| Ex. | Exhibits to the Declaration of Michael T. Marcucci in Support of U.S. Bank National Association's Motion for Partial Summary Judgment and the Supplemental Declaration of Michael T. Marcucci in Support of U.S. Bank National Association's Motion for Partial Summary Judgment |
| Moriarty | Expert Declaration of Stephen Moriarty QC, submitted in support of U.S. Bank's Motion |
| Opp. | Commerzbank's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment (ECF No. 322) |
| Order | This Court's Opinion and Order granting in part and denying in part Defendants' motion to dismiss (ECF No. 135) |
| R&Ws | Representations and warranties |
| Restatement | Restatement (Second) of Conflict of Laws (1971) |
| RMBS | Residential Mortgage-Backed Securities |
| Rohe Reply | Reply Declaration of Prof. Dr. Mathias Rohe in Support of U.S. Bank's Motion for Partial Summary Judgment |
| SDNY | Southern District of New York |
| Wood | Affidavit of Jayson Nathan Wood in Support of U.S. Bank's Motion for Partial Summary Judgment (ECF No. 296), dated July 31, 2019 |

Tellingly, Plaintiff's opposition begins not with the language of the contracts, but with a history lesson. Plaintiff invokes, among other non-contractual sources, its own "expert," a ratings agency, the Federal Reserve, and 1936 legislative history about the trustee's supposed "principal purpose" and role. Opp. 2-4. Missing from the discussion of purpose and Depression-era history, however, is what these 21st-century contracts say about the role of this trustee. Under the contracts' plain language, whatever broader obligations other deal parties may have, and however contracts typically may be construed, this RMBS trustee has no pre-EOD duties unless "specific[ally]" and "express[ly]" set forth. So while "public policy" and a Restatement section on implied duties might suggest a party should "act in good faith," Opp. 4, and while U.S. Bank did so,* these contracts disclaim these generic and implied duties, at least as to the trustee. Order 21 (dismissing Plaintiff's implied-covenant-of-good-faith claim).

These important limitations reflect business realities. Here we are more than a decade after these agreements closed, and applying seemingly simple terms like "discovery" and "actual knowledge" continues to "bedevil[]" courts and "cry[] out for definitive judicial resolution." *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 557 (S.D.N.Y. 2018). If interpreting the trustee's duties requires years of litigation, a bunch of history, and insights into the "spirit of the bargain," Opp. 3, how was a trust officer supposed to know what to do in real time a decade ago? That is why the contracts say a trust officer can rely on the plain language of the contract—he need only look to the "specific" and "express" requirements, and need not act based on a *right* to act, or some *inferred* duty, or a general "charge[]" to help certificateholders, Opp. 1. And only upon that officer's actual knowledge or receipt of written notice of a

---

* Plaintiff refers the Court to its expert's opinions on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
Opp. 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, see the Expert Reports of U.S. Bank' expert, Christopher Hillcoat. Ex. 271.

contractually defined EOD does U.S. Bank's standard of care become that of a "prudent person."

Plaintiff not only ignores the contracts' plain language and business realities, it also muddles what ought to be a simpler exercise. U.S. Bank chose to file a narrow motion raising only those merits issues the Court can resolve based on the straightforward language of the contracts—not cobbled together from history, but what is specifically and expressly set forth. This Court can thus resolve those issues by applying a simple rule: if a claimed contractual duty depends on implication, history, purpose, or the spirit of the contracts, that duty is not "specifically" and "expressly" imposed, and Plaintiff loses at summary judgment.

Before turning to the merits, however, we begin where U.S. Bank's opening brief began, with the threshold requirements for suing: the no-action clauses, standing, and timeliness.

## I.     PLAINTIFF'S TORT CLAIMS FAIL UNDER 17 NO-ACTION CLAUSES.

For the 17 trust agreements with no-action clauses that "do not require a demand on the trustee," Plaintiff's *tort* claims fail just as its *contract* claims did. Order 15; *see* Br. 4-5. In asserting (at 39-40) that *Quadrant* categorically exempts tort claims from no-action clauses, Plaintiff misreads that case, which *dismissed tort claims* under an identical no-action clause (one that did not contain "on the securities" language). *Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1171 n.10, 1178 (N.Y. 2014). The tort claims here fail because they arise not from the "securities" (as Plaintiff seems to think), but "arise from" and are "based on the [contracts]," just like those dismissed in *Quadrant*. *Id.* at 1173; *see* ECF No. 278, at 2-3; ECF No. 287.

The same goes for Plaintiff's fiduciary-duty claims. *See* Opp. 40. Those claims "on [their] face assert[] a right 'by virtue or by availing of'" the contractual provisions, and are "therefore covered by plain language of the [no-action clause]," *Quadrant v. Vertin*, 2013 WL 3233130, at *22 (Del. Ch. June 20, 2013); whereas the fiduciary-duty claims that survived in *Quadrant* "d[id] not rely on any provision of the [contract]," *id.* at *21.

2

Last, Plaintiff is wrong (at 40) that no-action clauses cannot bar pre-EOD claims or claims against trustees; indeed, this Court already dismissed both kinds of claims, Order 16-17.

## II.   PLAINTIFF LACKS STANDING ON ALL CLAIMS AS TO 32 CERTIFICATES.

Plaintiff admits that 30 certificates were sold before it filed this suit, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌—meaning that if New York law applies, claims on these certificates automatically transferred away from Plaintiff. Opp. 4-7. Plaintiff also accepts that New York law applies if New York has the "most significant relationship" with the transfer. It does. The law of the place of performance generally governs, *see* Br. 5-6; *Gries Sports Enters. v. Modell*, 473 N.E.2d 807, 809-10 (Ohio 1984) and here that is New York, where the sales were conducted—at DTC in New York. (DTC's role is more significant than Plaintiff suggests, Opp. 4-5; DTC fulfills the *sole purpose* of the sales agreements—transferring ownership. *See* BANA Br. 4-6.) New York is also where the subject matter of the contracts (the certificates) was located. ¶¶ 57-67; CFU 18; *see* Restatement § 188(2)(a), (d). And it is the law that market participants (including Plaintiff) long *expected* to govern, CFU 24; Exs. 60-61, 344-47, which is "of considerable importance in contracts" choice-of-law cases. Restatement § 188, cmt. b.

Plaintiff thinks English law applies, which would not help it because the result would be the same. Moriarty ¶¶ 45-68, 112. But the better view is New York law applies. That some transfers were agreed to by traders in England, Opp. 6, is far less important than the location of performance and contracts' subject matter, and the parties' justified expectations (all New York). *See, e.g.*, *Gries*, 473 N.E.2d at 809-10; *S & S Chopper Serv. v. Scripter*, 394 N.E.2d 1011, 1012-13 (Ohio Ct. App. 1977); Restatement § 188, cmt. e. Nor were these "sales by English sellers to English buyers." Opp. 6. Because the parties' place of business or incorporation matters, not its "branch or agency," *Commerzbank AG v. Deutsche Bank*, 234 F. Supp. 3d 462, 470 (S.D.N.Y. 2017), neither Plaintiff nor most buyers are "English"; some are even in *New York*. CFU 21-23;

3

*see* Restatement § 188(2)(e).  Any English connection cannot overcome the many factors on New York's side.  But either way Plaintiff lacks standing.  And whatever law applies, Plaintiff lacks standing on the 7 Duke Repo Certificates.  ████████████████████████

████████████████████, and thus lacks evidence it owns the *claims*.  ¶¶ 49-55; Br. 6-7.

### III. MOST OF PLAINTIFF'S CLAIMS ARE UNTIMELY.

Plaintiff ignores that Ohio law has a borrowing statute and "follows" borrowing-statute precedent of "New York's highest court."  *Taylor v. First Resolution Inv.*, 72 N.E.3d 573, 585-89 (Ohio 2016).  That precedent, this Court found, requires these claims to *also* be timely under the law of the place Plaintiff suffered injury.  Order 7.  And as this Court held, the "place of injury" is where the holders resided, *id.*—Germany for most certificates and the Cayman Islands for some others; it is not England because the holders did not "reside" there, *see Commerzbank*, 234 F. Supp. 3d at 470–71.  (And even if it were England, the claims would be untimely for the same reasons as they are untimely under Cayman law.  Moriarty ¶ 90-112; Br. 15.)  This Court has not ruled on the timeliness of Plaintiff's claims under German or Cayman law, but should do so now.

*German Law*.  Plaintiff agrees that German law bars these claims if (i) Plaintiff brought them more than three years after the year in which they *arose*; and (ii) Plaintiff had the required level of *knowledge* about the claims.  Br. 9-14; Opp. 9-13.  Both are true here.

As for "arose":  Plaintiff argues that its allegations cannot "show[] when breaches occurred."  Opp. 10.  But allegations are binding judicial admissions, Br. 9, and can "plead [a plaintiff] out of court," *U.S. ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 558-59 (S.D.N.Y. 2017); Rohe Reply ¶ 51.  Plaintiff's case, *BlackRock v. Wells Fargo*, 247 F. Supp. 3d 377 (S.D.N.Y. 2017), agrees that a complaint's allegations are "admission[s]."  Though the court did not resolve "knowledge" (as opposed to when breaches occurred) based on those admissions, *id.* at 419, we do not rely solely on the complaint's allegations to show "knowledge," Br. 11-14.

4

Nor do Plaintiff's fallback arguments work. Opp. 10. German statute-of-limitations law does not recognize the kind of "continuing" breaches Plaintiff alleges. Rohe Reply ¶¶ 98-109. And though what is a "reasonable time" to perform cannot always be resolved on summary judgment, Opp. 10, it can here. For one thing, many of U.S. Bank's duties came with express time limits rather than an implied "reasonable time" limit. ¶¶ 167-72, 546-51. And even for those duties without express time limits, there is an exception to implying a "reasonable time": when a party refuses to perform, in which case the breach occurs at the time the defendant made clear "its allegedly insufficient [performance]." *Loral Corp. v. Goodyear Tire & Rubber*, 1996 WL 38830, at *8 (S.D.N.Y. Feb. 1, 1996). Here that happened no later than 2011, when U.S. Bank made clear it would not do more without "direction and indemnity." ¶¶ 37, 69, 453. U.S. Bank thus prevails if "Commerzbank knew of USB's breaches before 2012." Opp. 11.

As for "knowledge": Plaintiff insists that it did not "kn[o]w *each element* of *each claim*" (and also was not grossly negligent in failing to know). Opp. 9, 11-13. But Plaintiff misunderstands what it must know. A plaintiff need only know of the *circumstances underlying its claims*, even if the prospects of its success are uncertain. Rohe Reply §§ V.A, VII.A; *IKB Deutsche Industriebank AG v. McGraw Hill Fin.*, 634 F. App'x 19, 22 (2d Cir. 2015).

There can be no genuine dispute that Plaintiff knew of the circumstances underlying these claims outside the limitations period. Rohe Reply § VII.A-B; *see* ¶¶ 68-168; 452-545. Ironically, Plaintiff opposes this only by arguing it must know of the precise "loan-specific" facts for every "specific breaching loan[]." Opp. 12. Not so, for limitations purposes: "Courts in Germany" have held that "public sources of information such as media reports and court decisions"—exactly what Plaintiff uses—are "sufficient to trigger the three-year limitations period," even if insufficient to prove liability. *In re Countrywide Fin. Corp. Mortg.-Backed Sec.*

5

*Litig.*, 2014 WL 3529686, at *6 (C.D. Cal. July 14, 2014); *see also* Rohe Reply § VI.C. Plaintiff thus knew enough before 2012 to trigger the limitations period. *Id.*; *see* Ex. 2.

Plaintiff's other arguments reveal similar misunderstandings of German law. Knowing enough to sue in a "foreign tribunal" (Opp. 9) *does* trigger the limitations period, Rohe Reply § V.B., and Plaintiff at any rate knew enough to sue in Germany, *id.* ¶ 40. Indeed, if Plaintiff wanted to sue there, it could have employed even more discovery devices than in the U.S.—most notably 28 U.S.C. § 1782, which would have allowed it to access facts allegedly "hidden in Defendants' files," Opp. 12, even before it brought suit. Rohe Reply ¶¶ 24, 29-47. Plaintiff was at least "grossly negligent" in not using these "readily available" devices to obtain the loan-specific facts it says it needed, Rohe Reply ¶ 94, § VII.C, making these claims untimely.

*Cayman Law.* Plaintiff's only argument (at 13) is untrue: U.S. Bank *did* "identify the trusts or loans" that are time-barred. Br. 15; ¶ 180 (23 certificates); Ex. 127 (loan-specific chart).

*No Tolling.* The relevant principles for the borrowing statute are those of the countries where injury occurred, not the state tolling principles Plaintiff cites (at 14, 16-17). *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013). German law allows none of Plaintiff's theories. Rohe ¶ 110. The other countries' laws allow one of them, Wood ¶ 24-25; Breen ¶ 14-15, but require fraud or deliberate concealment, *id.*; Plaintiff has only nonfeasance. CFU 562-64.

## IV. MOST OF PLAINTIFF'S POST-EOD CLAIMS FAIL AS A MATTER OF LAW.

In arguing (at 26-27) about what the "prudent person" standard of care requires—an issue irrelevant to our Motion—Plaintiff skips past two prerequisites of its post-EOD claims: (1) that an EOD occurred, and (2) that U.S. Bank had actual knowledge or written notice of it.

**1.** For 28 trusts, an EOD occurs only if a servicer or master servicer received *written notice* of a material breach. Br. 16-18. Plaintiff alludes to this in three ways, but none works.

*Letters.* The letters (at 30-31) are not notice of a material breach, by a contractually

specified party, to the servicer of a "particular trust," as they must be. *BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*, 165 A.D.3d 526, 527 (1st Dept. 2018); *see* ¶¶ 204-06; CFU 371-86, 402. The "particular format" does not matter (Opp. 31), but notice must reflect trust-specific breaches so that the servicer can cure them. The cited letters do not, and indeed do not even mention a breach, far less request a cure, less still for a particular trust. Ex. 132.

*Servicer knowledge.* *BlackRock* forecloses Plaintiff's attempt (at 29) to excuse written notice by insisting that servicers' *knowledge* of their breaches made notices "superfluous." 165 A.D.3d at 527. For good reason: Written notice under the contracts serves a separate purpose from knowledge of breaches—it formally demands that the servicer *cure* its breaches. Ex. 132.

*Prevention doctrine.* Without evidence of written notice, Plaintiff needs the prevention doctrine to excuse this condition precedent. Plaintiff's argument (at 35-39) relies nearly exclusively on outdated *federal* precedent, including on this Court's motion-to-dismiss decision. But the legal landscape has changed. Two First Department cases have since rejected this Court's holding (and Plaintiff's continued argument) that the prevention doctrine applies because U.S. Bank "*could have* notified the Servicers." Opp. 27, 35; *see* Order 8-9. Now, being "permitted to send such a notice" is not enough. *BlackRock*, 165 A.D.3d at 527; *see* Br. 16-17.

Our federalist system requires this Court to follow these new state cases. Because the "New York Court of Appeals [has not] address[ed]" this issue, and "[b]ecause there is no disagreement among the [state appellate courts] in this regard," this Court is bound by these new cases. *10 Ellicott Square Court Corp. v. Mountain Valley Indem.*, 634 F.3d 112, 120 n.10 (2d Cir. 2011); *see* ECF No. 334 (responding to Plaintiff's supplemental authority on prevention doctrine). A federal court may not cast aside the unanimous view of eight different state appellate justices, in favor of what it considers the better reasoned view. As the Supreme Court

has explained: "[A] federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable." *West v. AT&T Co.*, 311 U.S. 223, 236–37 (1940).

Pitted against these new state cases, Plaintiff fails. It shows neither that U.S. Bank had a *duty* to give notice nor that it *actively prevented* others from giving notice. Br. 16-17. On duty, Plaintiff persists (at 38) that "shall have been given" creates a duty, but the two new cases reject its view. Nor do its cited provisions create a duty. CFU 442-43. On "active prevention," Plaintiff points (at 38) to U.S. Bank's RegAB 1122 certifications and Form 10-D filings. But even if these could be "active" conduct, they could not have prevented notice to servicers. U.S. Bank's 1122 certifications would not disclose servicer breaches, CFU 448, far less for a "particular trust," *BlackRock*, 165 A.D.3d at 527. As for Form 10-D filings, they ended by 2008, and not even Plaintiff says they should have noted servicer breaches, CFU 450. And even if U.S. Bank had a duty or actively prevented notice, the new state cases would still defeat the prevention doctrine because holders themselves "could have sent notice of the servicers' failure." Br. 17. On this point, holders' "ability to verify" *sellers'* "R&Ws" (Opp. 36) says nothing about holders' ability to learn and give notice of *servicers'* failures. *See* CFU 33-35.

Post-EOD claims based on servicer EODs for these 28 trusts thus fail as a matter of law.

**2.** For *all 56* trusts, those that require written notice to the servicer and those that do not, these post-EOD claims fail unless Plaintiff *additionally* has evidence that *U.S. Bank* had "actual knowledge" or received "written notice" *of an EOD*. Here too, Plaintiff falls short.

*Written notice.* For the 11 agreements in which U.S. Bank is not "deemed to have actual knowledge" unless it "received written notice" of the EOD, Plaintiff is wrong (Opp. 34) that "actual knowledge" alone suffices. Br. 19. The First Department and SDNY have rejected that

8

argument because this language "expressly requires 'actual knowledge'" "in the form of written notification." *Putman High Yield Tr. v. Bank of N.Y.*, 7 A.D.3d 439, 439 (1st Dep't 2004); Ex. 273; *see Phoenix Light v. BNYM*, 2017 WL 3973951, at *16-17 (S.D.N.Y. Sept. 7, 2017). The non-summary-judgment cases (Opp. 35) interpret different language (*e.g.*, "discovery," *Natixis*), or different agreements (*e.g.*, ones that make "actual knowledge" independently sufficient, *BNP Paribas*). The agreements here, like in *Putman*, require an EOD to be "known to the Trustee" (§ 8.01), but then define *how*: only if the Trustee "received written notice" (§ 8.02). In short, someone—though not necessarily the certificateholders (Opp. 34)—must give U.S. Bank written notice of an EOD, which did not happen. *See Phoenix*, 2017 WL 3973951, at *16-17.

Unable to shake this written-notice requirement, Plaintiff tries (at 30, 34) to meet it with investor notices. But these fail. Br. 19; ¶¶ 210-45, 563-75; CFU 404-32. So do "notice[s] of noncompliance," Opp. 34; servicer noncompliance alone is not an EOD. CFU 435; *Commerce Bank v. BNYM*, 141 A.D.3d 413, 415 (1st Dep't 2016).

*Actual knowledge*. Plaintiff does no better for the 45 trusts in which a Responsible Officer's "actual knowledge" of an EOD may trigger the post-EOD standard of care. Plaintiff's main problem here is resolvable at summary judgment: It relies on what is (at best) ambiguous evidence of servicer *breaches* from which no "reasonable trier of fact" could find that a particular person *actually* "*knew*" all the elements of an *EOD* had occurred in specific trusts. Br. 20. Purported issues with servicer compliance statements (Opp. 28-29) and ████████ (Opp. 29, 32) do not work for reasons explained, Br. 20, Stmt. ¶¶ 310, 315-17, and for many other reasons, CFU 311-16, 336, 456-60, 387-403. And much of Plaintiff's other evidence (Opp. 29-30), including that regarding foreclosure practices, either is mischaracterized, *e.g.*, CFU 343-344, or does not relate to any specific trust, let alone the at-issue trusts, *e.g.*, CFU 356, 359.

9

**3.** Plaintiff lastly tries to show other EODs (Opp. 32-33), many previously unasserted, but it lacks evidence that these occurred, or lacks evidence they can trigger the prudent-person standard of care. *See* CFU 452-455.2 (compliance statements); CFU 472-82, 552-61 (cumulative losses and ratings downgrades); CFU 483-94 (improper transfers); ¶¶ 353-59 (depositor EODs).

## V.  NEARLY ALL OF PLAINTIFF'S PRE-EOD R&W CONTRACT CLAIMS FAIL.

Plaintiff has not identified specific and express pre-EOD duties assigned to U.S. Bank and thus loses as a matter of law. Rights, generic obligations, and implied duties do not work.

***No duties***. For some trusts, R&W notice and enforcement duties are not *specifically* and *expressly* assigned to U.S. Bank (as Plaintiff concedes for some). ¶ 362-65; CFU 120-22.

***No loan-specific evidence of discovery***. Plaintiff tries to excuse its lack of *loan-specific* evidence of trustee discovery (needed to trigger any trustee duties) in ways our opening brief (at 23-25) anticipated. Plaintiff's cases using "knew or should have known" as shorthand for *warrantors'* "discovery," *e.g.*, *Ambac Assurance v. Countrywide Home Loans*, 175 A.D.3d 1156 (1st Dep't 2019), do not resolve a *trustee's* "discovery." As to *trustees*, "the uniform view of judges in this District" is that "discovery' requires more than inquiry notice." *Royal Park v. Deutsche Bank Nat'l Tr.*, 2018 WL 4682220, at *9 (S.D.N.Y. Sept. 28, 2018). For good reason: Even if "discovery" required *other parties* to look into facts, it cannot require a *trustee* to do so, because the contracts expressly carve out any pre-EOD duty to investigate for trustees (and only for trustees). For this reason, Plaintiff can no longer rely on the duties and evidence it pleaded (and the Court accepted for motion-to-dismiss purposes), including an alleged "duty to nose to the source" and evidence of problems in other trusts, generalized "widespread breaches," and default rates (at 21-23). Order 9, 13-14; ¶ 36.

Plaintiff responds (at 23) that the no-investigation clause does not *really* mean what it says because another provision, § 8.01, clarifies that the trustee is not immunized for its own

10

negligence.  But § 8.01 does not create any duties; it merely makes clear that, when duties *already* exist, the trustee can be liable for negligently performing them.  That much is clear from negligence law, which requires "the existence of a duty," *Alfaro v. Wal-Mart Stores*, 210 F.3d 111, 114 (2d Cir. 2000), and from § 8.01 itself, which contains an exception, "provid[ing], however," that no trustee duties may be implied and that the trustee's duties are "determined solely by the express provisions" of the agreements.  ¶¶ 35, 39, 40.  The "express provisions" of these agreements, far from assigning the trustee a duty to investigate, *disclaim* that duty.  ¶¶ 35, 37, 39, 40.  The trustee cannot be "negligent" for not doing something it never had a duty to do.

In any case, even if the trustee were subject to a "should have known" standard, it would still be *loan-specific*.  Plaintiff would need to prove "loan-by-loan" (Order 13-14) that U.S. Bank "should have known of loan-specific breaches," *see Phoenix*, 2017 WL 3973951, at *8.  And Plaintiff cannot meet that test for the vast majority of loans.  CFU 133; Br. 23-25.

In sum, save for 4,245 loans with loan-specific evidence, judgment is proper.  Even for these, many claims fail, Br. 26, leaving fewer than 2,800 loans with enforcement claims and fewer than 200 with notice claims (even setting aside standing and timeliness).  CFU 133-35.

## VI.   MANY OF PLAINTIFF'S PRE-EOD DOCUMENT-DEFECT CLAIMS FAIL.

Plaintiff's document-defect claims are untimely.  *Supra* § III.  But even if timely, many fail for lack of a duty.  Plaintiff does not even attempt to dispute this for many notice claims.  Br. 27 (none for 26 trusts; no § 2.02 duty for seven trusts).  For several trusts, it concedes U.S. Bank had no enforcement duty.  Opp. 18, 25 (six trusts); CFU 80.  For others, Plaintiff tries to locate a duty in the "hold the Trust Fund" clause, but cannot.  Br. 23; ¶¶ 383-84; BANA Reply III.B.  Even when this duty can arise, Plaintiff lacks proof that it did.  ¶ 385 (BANA records); CFU 101 (repurchase demands).  The claim (at 25) that U.S. Bank prevented "enforcement duties" from arising by "breach[ing] its notice duties" ignores that U.S. Bank had no duty to notify itself.

11

Plaintiff fares no better in trying to hold U.S. Bank liable for duties that arose, if at all, under BANA's watch. Br. 27-28 (13 trusts). The authorities about successor trustee liability (Opp. 25) have no place here; they address common-law or ERISA trustees. And the argument (at 26) that U.S. Bank discovered defects when it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ fails for lack of evidence that U.S. Bank ▮▮▮▮▮▮▮▮▮▮▮. It had neither duty nor reason to do so; BANA expressly warranted that it fulfilled its duties. *See* ¶¶ 390-96. And Plaintiff is wrong that it was "commonplace" to address defects years after closing. CFU 102-12.

As predicted, Plaintiff says that document defects are R&W breaches. Opp. 19-20. But Plaintiff concedes that at least 11 trusts lack a completeness R&W that could turn a document defect into an R&W breach. ¶ 388, Opp. 19; CFU 156. And where the representation is not about the completeness of the mortgage file, but rather that a title policy and valid mortgage cover the loan, Plaintiff lacks evidence that exception reports (Plaintiff's only evidence of "discovery," Opp. 19-20), revealed those breaches, CFU 163-65, 172-74; *see also id.* 158-61.

## VII. ALL OF PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED.

Whether falling under the duplicativeness or economic-loss rubric, *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456 (N.Y. 2018) and *Bakal v. U.S. Bank*, 747 F. App'x 32, 37 (2d Cir. 2019), bar Plaintiff's tort claims because they allege the same injury as contract claims. Br. 28-30. That is equally true for the 17 no-action clause trusts for which Plaintiff's contract claims have already been dismissed (Opp. 41); existence of a current contract claim does not matter under *Dormitory Auth.*, 94 N.E.3d at 462. Nor does it matter that Plaintiff asserts a duty "independent of its contractual obligations," *id.* at 459; plaintiffs in *Dormitory Auth.* and *Bakal* did that too. Those cases supersede any contrary cases (Opp. 40-41). And Plaintiff's tort theories fail even without these new, binding cases: it lacks evidence of a quid pro quo, EODs in most trusts, and breach of "ministerial" duties. Br. 30; ¶¶ 196, 399-401, 668-70; CFU 495-561.

12

Dated:  November 4, 2019               Respectfully submitted,

/s/ 

JONES DAY
David F. Adler
Michael T. Marcucci
100 High Street, 21st Floor
Boston, Massachusetts  02110-1781
(617) 960-3939; (617) 449-6999 (fax)
dfadler@jonesday.com
mmarcucci@jonesday.com

Louis A. Chaiten
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939; (216) 579-0212 (fax)
lachaiten@jonesday.com

Albert J. Rota
2727 N. Harwood Street, Suite 500
Dallas, Texas  75201-1515
(214) 220-3939; (214) 969-5100 (fax)
ajrota@jonesday.com

*Attorneys for Defendant U.S. Bank National Association*