# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF** ~~OHIO~~
~~WESTERN DIVISION~~NEW YORK

-----------------------------------------------------------------x

COMMERZBANK AG,



Plaintiff,

Index No. 16-cv-04569-WHP

**AMENDED COMPLAINT**

~~Defendants~~Defendant.

**DEMAND FOR JURY TRIAL**

-against-~~—~~

~~ENDORSED~~
~~HEREON)~~

~~Plaintiff, :        No.~~

~~COMPLAINT~~

~~(WITH JURY DEMAND~~

U.S. BANK NATIONAL ASSOCIATION
~~and BANK~~ ~~OF AMERICA, NA~~.

-----------------------------------------------------------------x

**TABLE OF CONTENTS Page**

NATURE OF ACTION ...................................................................................................1

PARTIES ......................................................................................................................6

JURISDICTION AND VENUE ....................................................................................9

FACTUAL ALLEGATIONS .......................................................................................11

I.      THE SECURITIZATION PROCESS.................................................................11

II.     ~~DEFENDANTS~~U.S. BANK'S DUTIES AND OBLIGATIONS....................................13

      A.    ~~Defendants~~U.S. Bank's Duties Pertaining to the Delivery of Mortgage Files ..~~18~~17

      B.    ~~Defendants~~U.S. Bank Had a Duty to Provide Notice of Defaults and
Enforce Repurchase Obligations Triggered by Such Notice ................................24

      C.    ~~Defendants~~U.S. Bank's Duty to Act Prudently
Upon the Occurrence of an Event of Default........................................................26

      D.    ~~Defendants~~U.S. Bank Had a Duty to Address the Servicers'
Failure to Meet Prudent Servicing Standards .......................................................27

      E.    ~~Defendants Are~~U.S. Bank Is Liable for Negligence in Performing ~~Their~~Its Duties
29

III.    ~~DEFENDANTS~~U.S. BANK BREACHED ~~THEIR~~ITS
CONTRACTUAL, FIDUCIARY, AND STATUTORY DUTIES ..................................31

      A.    ~~Defendants~~U.S. Bank Failed to Provide Notice of the Sponsors' and Originators'
Pervasive Representation and Warranty Breaches   31

            1.    The Originators' and Sponsors' Pervasive
Breaches of Representations and Warranties.............................................41

      B.    ~~Defendants~~U.S. Bank Failed to Act Prudently
Upon the Occurrence of ~~Events~~an Event of Default.............................................52

            1.    Events of Default Under the PSAs Relating to
Document Delivery Failures in the Covered Trusts .............................~~54~~53

            2.    ~~Defendants~~U.S. Bank Received Written Notice of Representation and
Warranty Violations Which Ripened into Events of Default ................~~57~~56

            3.    Events of Default Concerning False Servicer Certifications ................~~58~~57

C.   ~~Defendants~~U.S. Bank Failed to Address the Master
     Servicers' and Servicers' Looting of Trust Assets ........................................... ~~60~~59

IV.   ~~DEFENDANTS~~U.S. BANK SUFFERED FROM CONFLICTS OF INTEREST ........ ~~67~~66

V.   ~~DEFENDANTS~~U.S. BANK'S CONDUCT INJURED COMMERZBANK ............... ~~71~~70

CAUSES OF ACTION ........................................................................................ ~~73~~72

FIRST CAUSE OF ACTION (Violations of the TIA) ........................................... ~~73~~72

SECOND CAUSE OF ACTION (Breach of Contract) ........................................... ~~75~~74

THIRD CAUSE OF ACTION (Breach of Fiduciary Duty) ..................................... ~~76~~75

FOURTH CAUSE OF ACTION (Negligence— Failure to Avoid Conflict of Interest and Perform
Ministerial Acts with Due Care) ......... ~~77~~76

FIFTH CAUSE OF ACTION (Violation of the Streit Act) ...................................... ~~77~~76

SIXTH CAUSE OF ACTION (Breach of the Covenant of Good Faith) ................. ~~79~~78

PRAYER FOR RELIEF ...................................................................................... ~~79~~78

Plaintiff Commerzbank AG ("Plaintiff" or "Commerzbank"), by and through its attorneys, brings this action against ~~Defendants~~Defendant U.S. Bank National Association ("U.S. Bank~~") and Bank of America, NA ("Bank of America" and, together, "Defendants~~," "Defendant," or "~~Trustees~~Trustee"), and alleges as follows:

### NATURE OF ACTION

1.      This action arises out of ~~Defendants' roles~~U.S. Bank's role as trustee for ~~57~~56 securitization trusts (the "Covered Trusts"), identified in Exhibit A, and asserts claims against U.S. Bank ~~and Bank of America~~ for breaches of ~~their~~its contractual and fiduciary duties and ~~their~~its duties under the federal Trust Indenture Act of 1939 (the "TIA"), 15 U.S.C. § 77aaa, *et seq.*, and New York's Streit Act,

N.Y. Real Property Law § 124, *et seq.* (the "Streit Act").

2.      The Covered Trusts were created to facilitate residential mortgage-backed securities ("RMBS") transactions introduced to investors from 2005 to 2007. Thirteen of the RMBS transactions were sponsored by Citigroup Global Markets Realty Corporation (the "Citigroup Trusts"), ten were sponsored by DLJ Mortgage Capital, Inc. (the "DLJ Trusts"), nine were sponsored by J.P. Morgan Mortgage Acquisition Corporation (the "JPMorgan Trusts"), six were sponsored by EMC Mortgage Corporation (the "EMC Trusts"), five were sponsored by UBS Real Estate Securities Inc. (the "UBS Trusts"), four were sponsored by Washington Mutual Bank or Washington Mutual Mortgage Securities Corporation (collectively, the "WaMu Trusts"), three were sponsored by Goldman Sachs Mortgage Company (the "Goldman Sachs Trusts"), two were sponsored by Merrill Lynch Mortgage Lending Inc. (the "Merrill Lynch Trusts"), one was sponsored by Barclays Bank PLC (the "Barclays Trust"), one was sponsored by Credit Based Asset Servicing and Securitization LLC (the "C-BASS Trust"), one was sponsored by First Franklin Financial

Corporation (the "First Franklin Trust"), ~~one was sponsored by Chevy Chase Bank, F.S.B. (the "Chevy Chase Trust")~~ and one was sponsored by Morgan Stanley

Mortgage Capital Inc. (the "Morgan Stanley Trust") (Citigroup, DLJ, JPMorgan, EMC, UBS, WaMu, Goldman Sachs, Merrill Lynch, Barclays, C-BASS, First Franklin, ~~Chevy Chase~~ and Morgan Stanley are referred to collectively as the "Sponsors").

3.     Commerzbank acquired RMBS certificates with a purchase value in excess of $~~803~~693 million dollars issued by the Covered Trusts identified in Exhibit B ("the Certificates"). Exhibit B identifies Certificates Commerzbank still holds (the "Held Certificates") and the Certificates Commerzbank has sold (the "Sold Certificates").

4.     The Certificates represent interests in the cash flows associated with the mortgage loans deposited into the Covered Trusts by the Sponsors and their affiliates or business partners. The certificateholders are the beneficiaries of the Covered Trusts. The performance of the RMBS depended on the Sponsors depositing properly underwritten mortgage loans with complete documentation into the Covered Trusts. The quality of the mortgage loans is critical, and numerous provisions of the governing agreements assure that only qualifying loans would be deposited into the Covered Trusts. Similarly, because the securities were to be "mortgage-backed," numerous other provisions seek to assure that complete documentation for each loan, including an original mortgage note and a properly assigned mortgage, would be delivered to the Trustee.

5.     The certificateholders, however, did not receive any loan or mortgage files that they could check to make certain that their contractual rights were being protected. Rather, such investors were dependent upon their trustee ~~representatives~~representative, U.S. Bank ~~and Bank of America~~, to police the deals and to protect their contractual and other legal rights.

6.     As ~~trustees~~trustee for the Covered Trusts, U.S. Bank ~~and Bank of America~~ ~~owe~~owes Commerzbank and the other certificateholders certain contractual and common law duties, as well as duties under

the TIA and the Streit Act with respect to the mortgage loans owned by the Covered Trusts. ~~Defendants~~

U.S. Bank and the relevant servicers ("Servicers"[1]) were required to provide notice of breaches of representations and warranties by the Sponsors and the parties who originated the mortgage loans underlying the Covered Trusts (the "Originators") concerning key attributes of the mortgage loans underlying the Covered Trusts, including the origination guidelines applicable to those loans and adherence to state laws regarding predatory lending. ~~Defendants~~ U.S. Bank had a duty to enforce the obligation of the responsible parties (typically the Sponsor and their affiliates that served as the depositors (the "Depositors") or the Originators) to repurchase loans that breached representation and warranty provisions or were missing required documentation. ~~Defendants were~~U.S. Bank was also required to address defaults by the Servicers who were required to engage in prudent loss mitigation practices.

7.      ~~Defendants were~~U.S. Bank was actively involved in the origination and servicing of mortgage loans and typically had very close business relationships with the Sponsors, Originators, and Depositors. Nevertheless, as ~~trustees, Defendants were~~trustee, U.S. Bank was obligated to act against the financial interest of the Sponsors, Originators, and Depositors when demanded by the circumstances. ~~Defendants~~ U.S. Bank, however, abandoned ~~their~~its obligations to protect the rights of investors.

8.      ~~Defendants~~U.S. Bank's breaches of ~~their~~its contractual, fiduciary, and statutory duties give rise to six distinct legal claims.

---

[1] Some of the Trusts employ a "Master Servicer" while others refer to the lead servicing entity as a Servicer. Unless otherwise noted, references herein to the Servicer include the Master Servicer to the extent applicable. Additionally, some of the Trusts have Special Servicers as parties to the PSAs. References herein to the Servicer also include the Special Servicer to the extent applicable.

9.      Breach of Contract. ~~Defendants~~U.S. Bank's contractual duties are set forth in governing agreements, generally identified as pooling and servicing agreements ("PSAs").[2] ~~Defendants~~U.S. Bank breached the PSAs by failing to: (i) provide notice of representation and warranty violations by the Sponsors and Originators; (ii) provide notice of the Servicers' failure to give notice of those same representation and warranty violations; (iii) cause the responsible parties to repurchase or substitute loans that were subject to a breach of representation or warranty or missing documentation required to be delivered under the PSAs; and (iv) exercise all rights and remedies available to the Trustee under the PSAs upon the occurrence of an Event of Default.

10.      Breach of Fiduciary Duty. Under common law, after an "Event of Default" an indenture trustee has a duty to act as a prudent person would in the exercise of his own affairs to protect the rights of certificateholders. This duty continues until the Event of Default is cured. ~~Defendants~~U.S. Bank failed to meet ~~their~~its fiduciary duties because ~~they were~~it was aware Events of Default had occurred, but failed to take action to force the responsible parties to repurchase loans with representation and warranty violations or missing documentation and failed to address breaches by the Servicers.

11.      Violations of the TIA. The TIA requires the trustee to provide certificateholders with notice of defaults under the operative indentures within 90 days of becoming aware of such defaults and to act prudently to protect the rights of certificateholders during the period in which the default remains uncured. ~~Defendants~~U.S. Bank violated these provisions by failing to provide notice of defaults ~~they were~~it was aware of and

---

[2] Two of the Covered Trusts (GSAA 2006-12 and GSAA 2007-1) were structured using a Master Servicing and Trust Agreement, which is the functional equivalent of a PSA. Unless expressly noted herein, when the term PSA is used, it is

also referring to the aforementioned governing agreements executed in connection with those securitizations.

failing

to act prudently to protect the certificateholders' interests by exercising all rights and remedies available to ~~Defendants~~U.S. Bank under the PSAs.

12.   <u>Violation of the Streit Act</u>. ~~Defendants~~U.S. Bank violated the Streit Act by failing to

"use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs" to protect the rights of certificateholders during the pendency of an "event of default." The Streit Act applies to the extent a PSA is not "qualified" under the TIA. Thus, to the extent the TIA is deemed to not apply to any particular "mortgage investments," the Streit Act provides a similar protection and remedy.

13.   <u>Negligence</u>. ~~Defendants~~U.S. Bank had an extra-contractual duty to perform ministerial

acts with due care and to avoid conflicts of interest. ~~Defendants~~U.S. Bank negligently performed ministerial acts by failing to provide notices of the numerous defaults that ~~they were~~it was aware of under the PSAs. ~~Defendants~~U.S. Bank violated ~~their~~its duty of independence by failing to take action against the Sponsors, Originators, Depositors, and Servicers because, if ~~Defendants~~U.S. Bank acted, ~~they~~it would have exposed systemic origination and servicing misconduct committed by ~~Defendants themselves~~U.S. Bank itself and would have jeopardized future lucrative engagements.

14.   <u>Breach of Covenant of Good Faith and Fair Dealing</u>. ~~Defendants~~U.S. Bank violated the

covenant of good faith and fair dealing by failing to give notice of defaults and failing to take action to cause the responsible parties to repurchase loans that violated representation and warranty provisions or were missing required documentation.

15.   By failing to perform ~~their~~its duties, ~~Defendants have~~U.S. Bank has caused

Commerzbank to suffer hundreds of millions of dollars in losses.

## PARTIES

16.     Plaintiff Commerzbank is an entity organized under the laws of Germany. Commerzbank is the legal successor to all of Dresdner Bank AG's ("Dresdner") interests by way of merger as of May 2009, effected by way of universal succession under the German Transformation Act, with Commerzbank as the entity resulting from such merger. Plaintiff brings this action as a current and/or former holder of the Certificates. Commerzbank's acquisitions and other activities related to the Certificates were conducted at and through Commerzbank AG London Branch ("London Branch").

17.     Commerzbank acquired certain of the Certificates through assignments from the following investors: (i) investor Barrington II CDO Ltd. ("Barrington 2"), which was a Cayman Islands limited company; (ii) investor Eurohypo AG New York Branch (now known as Hypothekenbank Frankfurt AG New York Branch) ("Eurohypo"), which is a wholly-owned subsidiary of Commerzbank and was the New York branch of a corporate entity organized under the laws of Germany; and (iii) investor Palmer Square 3 Limited, which was a private limited liability company organized under the laws of Ireland ("Palmer 3," and together with Barrington 2 and Eurohypo, the "Assignors"). Exhibit B indicates which Certificates were acquired through assignment from Barrington 2 (the "Barrington 2 Certificates"), Eurohypo (the "Eurohypo Certificates"), and Palmer 3 (the "Palmer 3 Certificates"). Commerzbank brings both its own claims while it was a certificateholder and the claims that were assigned to it by the Assignors.

18.     The Barrington 2 Certificates were acquired as part of the collateral for Barrington 2. In May 2012, London Branch and Dynamic Credit Partners, LLC ("DCP"), in its capacity as Collateral Manager for Barrington 2, agreed to unwind Barrington 2 whereby

DCP would sell the collateral assets and Commerzbank would be presented with the opportunity to purchase them. In connection with this process, London Branch acquired the Barrington Certificates between May and July 2012. On December 24, 2013, London Branch entered into an Assignment Agreement with various parties including Barrington 2 and the Bank of New York Mellon Trust Co., N.A. which provided:

> With respect to all assets of the Issuer and the Co-Issuer acquired since their respective formations (including, without limitation, any Collateral now owned or previously owned by the Issuer or Co-Issuer under the Indenture, the 'Assets'), the Issuer and the Co-Issuer, effective as of the date hereof, hereby transfer and assign to Commerzbank, and the Trustee releases its lien against, any and all litigation rights, causes of action and claims arising out of, in connection with, and/or relating to (1) the Assets, whether known or unknown, whether arising before, on or after the date of this Agreement, including, without limitation, all claims related to and/or arising out of the initial purchase of the Assets, any contract claims, tort claims, malpractice claims, fraud claims (whether under common law or statutory, for aiding and abetting, fraud in the inducement, or otherwise), negligent misrepresentation claims and securities law claims and (2) to the extent not included in the foregoing, any contract claims, tort claims, malpractice claims, fraud claims (whether under common law or statutory, for aiding and abetting, fraud in the inducement, or otherwise), negligent misrepresentation claims and securities law claims arising under other contracts to which the Issuer and/or the Co-Issuer is a party (clauses (1) and (2), collectively, the 'Transferred Rights') and all rights and powers necessary to invoke and enforce the Transferred Rights, including, without limitation, the right and authority to commence, prosecute and resolve any legal actions.

19.     On December 11, 2013, Eurohypo and London Branch entered into a Confirmation of Assignment with respect to the Eurohypo Certificates, which Eurohypo previously had transferred to London Branch. The Confirmation of Assignment provided:

> In exchange for good and valuable consideration, at the time that Eurohypo transferred the Securities to Commerzbank, it was Eurohypo's intent to transfer all litigation rights, causes of action and claims arising out of, in connection with, and/or relating to (1) the Securities, whether known or unknown, whether arising before, on or after the date of this Agreement, including, without limitation, all claims related to and/or arising out of the initial purchase of the Securities, any

> contract claims, tort claims, malpractice claims, fraud claims (whether under common law or statutory, for aiding and abetting, fraud in the inducement, or otherwise), negligent misrepresentation claims and securities law claims and (2) to the extent not included in the forgoing any contract claims, tort claims, malpractice claims, fraud claims (whether under common law or statutory, for aiding and abetting, fraud in the inducement, or otherwise), negligent misrepresentation claims and securities law claims arising under contracts to which Eurohypo is a party, and which concern the Securities and all rights and powers necessary to invoke and enforce the Transferred Rights, including, without limitation, the right and authority to commence, prosecute and resolve any legal actions (altogether the 'Transferred Rights').

20.     On August 11, 2008, a Deed of Unwind for Palmer 3 effectuated the transfer of all of Palmer 3's collateral assets, including the Palmer 3 Certificates, to Dresdner, acting through its London branch. The Palmer 3 Certificates were recorded on Dresdner's accounts in September 2008 (interests for which Commerzbank is legal successor). By letter dated December 10, 2013, the liquidator of Palmer 3 provided Commerzbank a letter confirmation stating:

> With regard to the [unwinding of Palmer 3], this letter confirmation further memorializes the fact that is it my understanding that it was the Company's intent to effectuate the transfer of all assets of value, as provided in the Deed of Unwind, to the Sole Noteholder [Dresdner] on the terms set forth in the Deed of Unwind, and that such assets included the [Collateral Assets], and all legal rights and claims whether in tort or otherwise associated with the Collateral Assets.
>
> It is my understanding and belief that such legal rights, and claims include, but are not limited to, the Company's interest and control over any and all legal claims sounding in tort, contract, trust, or otherwise concerning any of the Collateral Assets, whether arising before or after the date of their acquisition or the date of this confirmation.

21.     ~~Defendant~~Non-party Bank of America, NA ("Bank of America") is a national banking association organized and existing under the laws of the United States. Bank of America does business throughout the United States, with its main office located in North Carolina. In or about October 2007, Bank of America acquired LaSalle Bank National Corporation ("LaSalle"),

which was serving as trustee for five of the EMC Trusts, the First Franklin Trust, one of the

Goldman Sachs Trusts, two of the Merrill Lynch Trusts, and the Morgan Stanley and WaMu

Trusts. Bank of America became successor trustee by merger to LaSalle. Subsequently, ~~in~~

~~December 2010~~from October 31, 2008 to August 1, 2011, Defendant U.S. Bank acquired Bank of

America's securitization trust business and succeeded Bank of America as trustee for those

Covered Trusts.

22.     Defendant U.S. Bank is a national banking association organized and existing

under the laws of the United States. U.S. Bank does business throughout the United States, with

its main office located in Ohio. It serves as the trustee for the Covered Trusts. For each of the

Covered Trusts, ~~Defendants~~U.S. Bank (or LaSalle, as predecessor trustee to Bank of America)

signed Certificates incorporating the PSAs. As the ~~trustees~~trustee for the Covered Trusts,

~~Defendants~~U.S. Bank owed certificateholders certain statutory, contractual and fiduciary duties

with respect to the mortgage loans owned by the Covered Trusts, which ~~they~~it violated.

## JURISDICTION AND VENUE

23.     This Court[3] has jurisdiction over the TIA claims asserted in this matter under

15 U.S.C. § 77v. This Court has jurisdiction over the other claims asserted under 28 U.S.C.

§ 1367. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is

complete diversity of citizenship between the parties and the amount in controversy,

exclusive of interest and costs, exceeds $75,000.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. §

---

[3] "Court" refers to the United States District Court for the Southern District of Ohio. On June 14, 2015, Judge
Timothy S. Black entered an order granting U.S. Bank's motion to transfer this action to the United States District Court
for the Southern District of New York.

77v as ~~Defendants reside~~U.S. Bank resides and/or ~~transact~~transacts business in this District

and a substantial part of the events and omissions giving rise to the claims asserted herein

occurred in this District.

25.     This Court has personal jurisdiction over U.S. Bank because it is a resident of

Ohio as it maintains its main office in Cincinnati, Ohio. Additionally, this Court has personal

jurisdiction over ~~Defendants~~U.S. Bank because a substantial part of the administration of the

Covered Trusts, out of which the claims asserted herein arise, is performed in Ohio.

26.     The Covered Trusts are backed in part by loans made to borrowers in Ohio and

mortgages on properties located in Ohio. In connection with ~~their~~its trustee business and the

performance of duties under the PSAs, ~~Defendants~~U.S. Bank, or a servicing agent on ~~their~~its

behalf, took steps in Ohio in an attempt to perfect security interests relating to these mortgages.

Such steps included delivering mortgage assignments for recording in the relevant Ohio public

offices for real property records, ensuring Ohio loan modifications comply with the PSAs,

instituting

foreclosure actions in Ohio, taking title of Ohio real estate owned ("REO") properties (i.e.,

foreclosed properties), and performing Ohio bankruptcy-related duties for the benefit of the

Certificateholders. In the course of this administration of loans in Ohio, ~~Defendants~~U.S. Bank

received information alerting ~~them~~it to the facts that incomplete documentation had been

delivered to the Covered Trusts, that many of the borrowers did not qualify for loans, and that

material breaches of warranties had occurred. By agreeing to act as ~~trustees~~trustee to enforce the

rights of RMBS investors nationwide, ~~Defendants~~U.S. Bank reached into Ohio to represent Ohio

investors, and assumed ongoing contractual obligations to enforce the rights of such investors in

Ohio under the PSAs.

Thus, ~~Defendants have~~U.S. Bank has continual contact with Ohio in the performance of ~~their~~its

trustee duties, both in dealing in Ohio mortgage collateral and with Ohio investors.

27. Additionally, Bank of America has engaged in a persistent course of business in Ohio, including by, among other things, providing tens of thousands of mortgages to Ohio residents, including over 27,000 modifications alone, reaping profits from Ohio small businesses by making over $100 million of loans to them, and, along with its affiliates, having over 30 offices in Ohio.

## FACTUAL ALLEGATIONS

### I.    THE SECURITIZATION PROCESS

27.    28. The process through which RMBS are created and sold is known as mortgage loan securitization. In broad terms, mortgage loans are acquired from mortgage Originators and pooled together in a trust, which issues securities representing interests in the cash flows from principal and interest payments on the pool of loans after certain costs and fees are deducted.

28.    29. The first step in each securitization is generally the acquisition of mortgage loans by a sponsor (or "seller"), such as Washington Mutual, and the sale of a large pool of such loans by the sponsor to a depositor, typically a special-purpose affiliate of the sponsor.

29.    30. The depositor then conveys the pool of loans to a trustee, such as DefendantsU.S. Bank, pursuant to a PSA that establishes various prioritized tranches of interests in payments made by borrowers on the loans. The trust issues certificates representing those tranches; the certificates are sold to an underwriter; and the underwriter re-sells the certificates at a profit to investors. The Sponsor (through its affiliated depositor) earns a profit on the excess of the proceeds of the sale of certificates to the underwriter over the cost of purchasing the mortgage loans. Here, DefendantsU.S. Bank acted as the trusteestrustee in connection with the relevant RMBS transactions.

30.    31.Pursuant to the PSA for each trust, an entity called a Servicer is appointed to manage the collection of payments on the mortgage loans in return for a monthly fee. The Servicer's duties include monitoring delinquent borrowers, foreclosing on defaulted loans, monitoring compliance with representations and warranties regarding loan origination, tracking mortgage documentation, and managing and selling foreclosed properties.

31.    32.The trustee delivers monthly remittance reports to holders of certificates describing the performance of underlying loans and compliance with the PSA. The contents of those reports are specified in the PSA and in Item 1121 of SEC Regulation AB. *See* 17 C.F.R. § 229.1121. The servicer provides data to the trustee to include in these remittance reports.

32.    33.Each tranche in a loan securitization has a different level of risk and reward, and its own rating issued by a nationally recognized credit-rating agency such as Standard & Poor's or Moody's. The most senior tranches generally receive the highest ratings, AAA or AA. Junior tranches receive lower ratings, but offer higher potential returns. Senior tranches are generally entitled to payment in full ahead of junior tranches, and shortfalls in principal and interest payments are generally allocated first to junior tranches. This division of cash flows and losses is referred to as the waterfall.

33.    34.Because the cash flow from payments made by mortgage borrowers on the underlying mortgage loans is the sole source of funds to pay holders of a mortgage-backed security, the credit quality of the security turns on the credit quality of, and the trust assets securing, the underlying loans, which often number in the thousands.

34.    35.DefendantsU.S. Bank earned fees in connection with theirits role as trustee, typically an annual fee based on the percentage of principal outstanding on the loans underlying the RMBS.

15

Defendants U.S. Bank also received significant benefits from the interest-free deposits

maintained in theirits accounts when the servicing payments were remitted. DefendantsU.S.

Bank maintained accounts for thousands of trusts and earned significant sums from the

aggregate balances on these accounts. The RMBS

trustee engagements further deepened DefendantsU.S. Bank's business relationships with the

Sponsors and underwriters of the RMBS, leading to more lucrative future engagements.

## II.     DEFENDANTSU.S. BANK'S DUTIES AND OBLIGATIONS

35.     36.DefendantsU.S. Bank's duties and obligations as trusteeTrustee for the

Covered Trusts are spelled out in the PSAs and under applicable state and federal laws.

These agreements govern the parties' respective rights and responsibilities in connection

with the Covered Trusts. U.S. Bank entered into PSAs with:

> (A) For the Barclays Trust (SABR 2006-WM1): (i) Securitized Asset Backed
> Receivables LLC, as Depositor; (ii) Wells Fargo Bank, N.A., as Servicer; (iii)
> WMC Mortgage Corp., as Responsible Party; (iv) MortgageRamp, Inc., as
> Loan Performance Advisor; and (v) Wells Fargo Bank, N.A., as Securities
> Administrator and Custodian;
>
> (B) For the C-BASS Trust (GSAMP 2006-HE6): (i) GS Mortgage Securities
> Corp., as Depositor; (ii) Litton Loan Servicing LP, as Servicer; and (iii)
> Credit-Based Asset Servicing and Securitization LLC, as Seller;
>
> (C) For one JPMorgan Trust (CHASE 2006-A1): (i) Chase Mortgage Finance
> Corporation, as Depositor; and (ii) JPMorgan Chase Bank, N.A., as Servicer,
> Custodian, and Paying Agent;
>
> (D) For four Citigroup Trusts (CMLTI 2005-10, CMLTI 2005-HE1, CMLTI
> 2006-AR7, CMLTI 2007-AR1): (i) Citigroup Mortgage Loan Trust Inc., as
> Depositor; (ii) CitiMortgage, Inc., as Master Servicer and Trust Administrator;
> and (iii) Citibank, N.A., as Paying Agent, Certificate Registrar and
> Authenticating Agent;
>
> (E) For one Citigroup Trust (CMLTI 2005-HE3): (i) Citigroup Mortgage Loan
> Trust, Inc., as Depositor; (ii) Countrywide Home Loans Servicing LP, as
> Servicer; (iii) JPMorgan Chase Bank, N.A., as Servicer; (iv) HomEq Servicing
> Corporation, as Servicer; and (v) Citibank, N.A., as Trust Administrator;

(F) For one Citigroup Trust (CMLTI 2005-HE4): (i) Citigroup Mortgage Loan Trust Inc., as Depositor; (ii) Ocwen Loan Servicing, LLC, as Servicer; and (iii) Citibank, N.A., as Trust Administrator;

(G) For six Citigroup Trusts (CMLTI 2006-NC2, CMLTI 2006-WFHE2, CMLTI 2006-WFHE3, CMLTI 2006-WFHE4, CMLTI 2007-WFHE1, and CMLTI 2007-WFHE2): (i) Citigroup Mortgage Loan Trust Inc., as Depositor; (ii) Wells Fargo Bank, N.A., as Servicer; and (iii) Citibank, N.A., as Trust Administrator;

(H) For one Citigroup Trust (CMLTI 2007-AMC2): (i) Citigroup Mortgage Loan Trust Inc., as Depositor; (ii) Ocwen Loan Servicing, LLC, as Servicer; (iii) GMAC Mortgage, LLC, as Servicer; (iv) Countrywide Home Loans Servicing LP, as Servicer; and (v) Wells Fargo Bank, N.A., as Master Servicer and Trust Administrator;

(I) For one DLJ Trust (ABSHE 2005-HE8): (i) Asset Backed Securities Corporation, as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Select Portfolio Servicing, Inc., as Servicer; (iv) MortgageRamp Inc, as Loan Performance Advisor; and (v) Wells Fargo Bank, N.A., as Master Servicer;

(J) For one DLJ Trust (ABSHE 2006-HE1): (i) Asset Backed Securities Corporation, as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Select Portfolio Servicing, Inc., as Servicer; (iv) MortgageRamp Inc., as Loan Performance Advisor;

(K) For one DLJ Trust (ABSHE 2006-HE5): (i) Asset Backed Securities Corporation, as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Option One Mortgage Corporation, as Servicer; and (iv) OfficeTiger Global Real Estate Services Inc., as Loan Performance Advisor;

(L) For one DLJ Trust (CSAB 2006-4): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Wells Fargo Bank, N.A., as Servicer, Master Servicer, and Trust Administrator; and (iv) Select Portfolio Servicing, Inc., as Servicer and Modification Oversight Agent;

(M) For two DLJ Trusts (HEAT 2005-2 and HEAT 2005-4): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Wells Fargo Bank, N.A., as Servicer and Master Servicer; (iv) Select Portfolio Servicing, Inc., as Servicer; and (v) The Murrayhill Company, as Credit Risk Manager;

(N) For one DLJ Trust (HEAT 2005-9): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital, Inc., as Seller; (iii) Ocwen Loan Servicing LLC, as Servicer; (iv) Wells Fargo Bank, N.A., as Servicer; (v) Select Portfolio Servicing, Inc., as Servicer and Special

Servicer; and (vi) Clayton Fixed Income Services Inc., as Credit Risk Manager;

(O) For one DLJ Trust (HEAT 2007-2): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital Inc., as Seller; (iii) Select Portfolio Servicing, Inc., as Servicer and Special Collections Servicer; and (iv) Clayton Fixed Income Services Inc., as Credit Risk Manager;

(P) For one DLJ Trust (HEAT 2006-4): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital Inc., as Seller; (iii) Wells Fargo National Bank, N.A., as Servicer; (iv) JPMorgan Chase Bank, National Association, as Servicer; (v) Select Portfolio Servicing Inc., as Servicer; (vi) Clayton Fixed Income Services Inc., as Credit Risk Manager;

(Q) For one DLJ Trust (HEAT 2006-6): (i) Credit Suisse First Boston Mortgage Securities Corp., as Depositor; (ii) DLJ Mortgage Capital Inc., as Seller; (iii) Wells Fargo Bank, N.A., as Servicer; (iv) Select Portfolio Servicing Inc., as Credit Risk Manager;

(R) For one EMC Trust (BSARM 2006-2): (i) Structured Asset Mortgage Investments II, Inc., as Depositor; and (ii) Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator;

(S) For one Goldman Sachs Trust (GSAA 2006-12), a Master Servicing and Trust Agreement between: (i) GS Mortgage Securities Corp., as Depositor; (ii)   Deutsche Bank National Trust Company, as Custodian; (iii) Wells Fargo Bank, N.A., as Custodian; and (iv) JPMorgan Chase Bank, N.A. as Master Servicer and Securities Administrator;

(T) For one Goldman Sachs Trust (GSAA 2007-1), a Master Servicing and Trust Agreement between: (i) GS Mortgage Securities Corp., as Depositor; (ii)   Deutsche Bank National Trust Company, as Custodian; (iii) The Bank of New York Trust Company, N.A., as Custodian; and (iv) Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator;

(U) For two JPMorgan Trusts (JPALT 2006-A6 and JPALT 2007-S1): (i) J.P. Morgan Acceptance Corporation I, as Depositor; and (ii) Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator;

For two JPMorgan Trusts (JPMAC 2005-WMC1 and JPMAC 2006-NC2[34]): (i) J.P. Morgan Acceptance Corporation I, as Depositor; (ii) J.P. Morgan Mortgage Acquisition Corp., as Seller; and (iii) JPMorgan Chase

---

[34] JPMAC 2005-FRE1 and CCMFC 2006-2 areis a non-public offeringsoffering and the relevant PSAsPSA or other governing agreements are not publicly filed documents. While the PSA or other governing agreement for the Chevy Chase

Bank, N.A., as Securities Administrator and Servicer;

(V)  For two JPMorgan Trusts (JPMAC 2006-CH1 and JPMAC 2006-CH2):
(i) J.P. Morgan Acceptance Corporation I, as Depositor; (ii) J.P. Morgan

Mortgage Acquisition Corp., as Seller; (iii) JPMorgan Chase Bank, N.A., as
Servicer; and (iv) The Bank of New York, as Securities Administrator;

(W) For one JPMorgan Trust (JPMAC 2006-CW2): (i) J.P. Morgan
Acceptance Corporation I, as Depositor; (ii) J.P. Morgan Mortgage
Acquisition Corp., as Seller; and (iii) Wells Fargo Bank, N.A., as Master
Servicer and Securities Administrator;

(X) For one Merrill Lynch Trust (SURF 2007-BC1): (i) Merrill Lynch
Mortgage Investors, Inc., as Depositor; and (ii) Wilshire Credit Corporation,
as Servicer;

(Y) For one UBS Trust (MABS 2005-FRE1): (i) Mortgage Asset
Securitization Transactions, Inc., as Depositor; and (ii) HomEq Servicing
Corporation, as Servicer;

(AA) For one UBS Trust (MABS 2006-AM2): (i) Mortgage Asset
Securitization Transactions, Inc., as Depositor; and (ii) Wells Fargo
Bank, N.A., as Servicer, Master Servicer, and Trust Administrator;

(BB)  For one UBS Trust (MABS 2006-AM3): (i) Mortgage Asset
Securitization Transactions, Inc., as Depositor; (ii) Ocwen Loan Servicing,
LLC, as Servicer; and (iii) Wells Fargo Bank, N.A., as Master Servicer and
Trust Administrator;

(CC)  For one UBS Trust (MABS 2006-NC2): (i) Mortgage Asset
Securitization Transactions, Inc., as Depositor; (ii) HomEq Servicing
Corporation, as Servicer; and (iii) Wells Fargo Bank, N.A., as Master Servicer
and Trust Administrator; and

(DD) For one UBS Trust (MARM 2007-HF2): (i) Mortgage Asset
Securitization Transactions, Inc., as Depositor; (ii) UBS Real Estate Securities
Inc., as Transferor; and (iii) Wells Fargo Bank, N.A., as Master Servicer, Trust
Administrator, Custodian, and Credit Risk Manager.

36.  37. Bank of America (or through LaSalle) entered into PSAs with:

(A) For one Goldman Sachs Trust (GSAMP 2006-HE5): (i) GS Mortgage

Trust is not expressly referred to herein, upon information and belief, the Chevy Chase Trust was issued pursuant to a PSA or other governing agreement with substantially similar provisions to those addressed herein and any differences are immaterial to the issues addressed in the Complaint. Securities Corp., as Depositor; (ii)

Litton Loan Servicing LP, Select Portfolio Servicing, Inc., and Avelo Mortgage, L.L.C., as Servicers; (iii) J.P. Morgan Trust Company, N.A., Deutsche Bank National Trust Company and U.S. Bank, N.A., as Custodians; and (iv) Wells Fargo Bank, N.A., as Securities Administrator and Master Servicer;

> (B) For five EMC Trusts (BSABS 2005-EC1, BSABS 2005-HE10, BSABS 2005-HE4, BSABS 2005-HE7, BSABS 2005-HE9, ): (i) Bear Stearns Asset Backed Securities I LLC, as Depositor; and (ii) EMC Mortgage Corporation, as Seller and Master Servicer;

> (C) For the First Franklin Trust (FFMER 2007-2): (i) Merrill Lynch Mortgage Investors, Inc., as Depositor; and (ii) Home Loan Services, Inc., as Servicer;

> (D) For one Merrill Lynch Trust (MLMI 2006-AHL1): (i) Merrill Lynch Mortgage Investors, Inc., as Depositor; and (ii) Wilshire Credit Corporation, as Servicer;

> (E) For the Morgan Stanley Trust (MSM 2006-15XS): (i) Morgan Stanley Capital I Inc., as Depositor; and (ii) Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator; and

> (F) For the WaMu Trusts (WAMU 2007-OA2, WAMU 2007-OA6, WMALT 2007-OA2 and WMALT 2007-OC1): (i) WaMu Asset Acceptance Corp., as Depositor; (ii) Washington Mutual Bank, as Servicer; and (iii) Christiana Bank & Trust Company, as Delaware Trustee.

37.     38.As set forth above, in or about October 2007, Bank of America acquired LaSalle, which was serving as trustee for five of the EMC Trusts, the First Franklin Trust, one of the Goldman Sachs Trusts, two of the Merrill Lynch Trusts, and the Morgan Stanley and WaMu Trusts. Bank of America became successor trustee by merger to LaSalle, succeeding to LaSalle's duties and obligations under the PSAs referenced directly above. Subsequently, in December 2010From October 31, 2008 to August 1, 2011, Defendant U.S. Bank acquired Bank of America's securitization trust business and succeeded Bank of America as trustee for those Covered Trusts. Accordingly, Plaintiff assertsdoes not assert claims herein as against U.S. Bank of America for LaSalle's and/oracts, omissions, or breaches of contractual or other duties by Bank of America's breaches and misconduct prior to December 2010. Plaintiff asserts claims against U.S. Bank for its breaches and misconduct as to the Covered Trusts set forth above for

which it entered into

PSAs as trustee, as well as for its continued breaches and misconduct for the Covered Trusts for which it became successor trustee in December 2010. Plaintiff further asserts claims against U.S. Bank to the extent that U.S. Bank assumed liability for the conduct of LaSalle and Bank of America with respect to the Covered Trusts., its affiliates or their respective predecessors during the period that any such entity acted as trustee of a Covered Trust.

A.  ~~Defendants~~U.S. Bank's **Duties Pertaining to the Delivery of Mortgage Files**

38.  ~~39.~~Each PSA sets forth a process for conveying the mortgage loans to the Covered Trusts. Typically, the Sponsor conveyed the loans to the Depositor for the Covered Trusts. Then the Depositor conveyed the mortgage loans to ~~Defendants~~U.S. Bank in ~~their~~its capacity as ~~trustees~~

trustee for the Covered Trusts to hold for the benefit of the certificateholders, or to a custodian acting on ~~their~~its behalf. This process is set forth in Section 2.04 ("Conveyance of Mortgage Pool Assets") and 2.05 ("Delivery of Mortgage Files") of the WaMu PSA,[45] which provides in relevant part:

> The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets. . . It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the Mortgage Pool Assets. . . .
>
> On the Closing Date, the Company shall deliver to and deposit with, or cause to be delivered to and deposited with, the Trustee or the Initial Custodian the Mortgage Files, which shall at all times be identified in the records of the Trustee or the Initial Custodian, as applicable, as being held by or on behalf of the Trust. The Trustee is authorized, with the Servicer's consent, to appoint on behalf of the

---

[45] Quotations to the WaMu PSA herein are to the PSA executed in connection with the WMALT 2007-OC1 securitization. The other WaMu Trusts in this action were issued pursuant to PSAs with substantially similar language and any differences are immaterial to the issues addressed in this Amended Complaint.

Trust any bank or trust company approved by each of the Company and the Servicer as Custodian of the documents or instruments referred to in this Section 2.05, in Section 2.12 or in Section 2.15, and to enter into a Custodial Agreement for such purpose; *provided, however,* that the Trustee shall be and remain liable for the acts and omissions of any such Custodian to the extent (and only to the extent) that it would have been liable for such acts and omissions hereunder had such acts and omissions been its own acts and omissions. Any documents delivered by the Company or the Servicer to the Custodian, if any, shall be deemed to have been delivered to the Trustee for all purposes hereunder; and any documents held by the Custodian, if any, shall be deemed to be held by the Trustee for all purposes hereunder. There shall be a written Custodial Agreement between the Trustee and each Custodian. Each Custodial Agreement shall contain an acknowledgment by the Custodian that all Mortgage Pool Assets, Mortgage Files, and other documents and property held by it at any time are held by it for the benefit of the Trust.

The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts set forth a substantially similar process. *See* Ex. C § I.

39. 40.In addition, Section 2.07 of the WaMu PSA provides that the Trustee, or a custodian acting on its behalf, is required to take physical possession of the mortgage loans and the accompanying mortgage files for the exclusive use and benefit of all current and future certificateholders. It provides:

The Trustee acknowledges receipt (or with respect to any Mortgage Loan subject to a Custodial Agreement, including the Initial Custodial Agreement, receipt by the Custodian thereunder) on behalf of the Trust of the documents referred to in Section 2.05 above, but without having made the review required to be made within 45 days pursuant to this Section 2.07. The Trustee acknowledges that all Mortgage Pool Assets, Mortgage Files and related documents and property held by it at any time are held by it as Trustee of the Trust for the benefit of the holders of the Certificates.

The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts set forth substantially similar requirements. *See* Ex. C § II.

40.    41. Section 1.01 of the WaMu PSA also specifically sets forth the operative documents that must be contained in the mortgage file for the mortgage loans. It provides that the Mortgage File contains the following documents or instruments with respect to each Mortgage Loan:

> "(i) The ***original Mortgage Note endorsed*** (A) in blank, without recourse, (B) to the Trustee, without recourse, or (C) to the Trust, without recourse, and all intervening endorsements evidencing a complete chain of endorsements from the originator to the endorser last endorsing the Mortgage Note ;
>
> (ii) The Buydown Agreement, if applicable;
>
> (iii)    (1) (x) the ***original recorded Mortgage with evidence of recording thereon*** for the jurisdiction in which the Mortgaged Property is located . . . (y) unless the Mortgage Loan is a MERS Loan, ***an original assignment of the Mortgage duly executed and acknowledged in recordable form*** (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, ***recorded originals of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment*** described in clause (y); or
>
> (2)    (x) ***a copy (which may be in electronic form) of the Mortgage . . . which represents a true and correct reproduction of the original Mortgage and which has either been certified*** (i) on the face thereof by the public recording office in the appropriate jurisdiction in which the Mortgaged Property is located, or (ii) by the originator, the applicable Seller, the Servicer or the escrow or title company which provided closing services in connection with such Mortgage Loan as a true and correct copy the original of which has been sent for recordation, (y) unless the Mortgage Loan is a MERS Loan, ***an original assignment of the Mortgage duly executed and acknowledged in recordable form*** (A) in blank, (B) to the Trustee or (C) to the Trust, and (z) unless the Mortgage Loan is a MOM Loan, ***true and correct copies, certified by the applicable county recorder or by the originator, the applicable Seller, or the Servicer as described above, of all intervening assignments evidencing a complete chain of assignment from the originator to the person executing the assignment*** described in clause (y); . . . and
>
> (iv) For any Mortgage Loan that has been modified or amended, the

>*original instrument or instruments effecting such modification or amendment*."

(Emphasis added.) The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley and UBS Trusts set forth a substantially similar process. *See* Ex. C § III.

41.      ~~42.~~Physical possession of these documents by ~~Defendants~~U.S. Bank was necessary to transfer the ownership rights to the mortgage loans from the Sponsors and Depositors to the Covered Trusts.

42.      ~~43.Defendants~~U.S. Bank had a contractual obligation under the PSAs to review each of the mortgage files for the mortgage loans and certify that the documentation for each of the loans was accurate and complete. ~~Defendants~~U.S. Bank also had a common law duty to perform those ministerial acts with due care.

43.      ~~44.~~After a designated period, ~~Defendants~~U.S. Bank, or a Custodian on ~~their~~its behalf, ~~were~~was required to issue a final certification and document exception report that identified mortgage files that were missing documentation required under the PSA. *See* Ex. C § IV. When a Custodian fulfilled this role, it acted as an agent "on behalf" of the Trustee. For example, the WaMu PSA provides "[a]ny Custodian shall act as agent on behalf of the Trustee" and "the Trustee shall be and remain liable for the acts and omissions of any such Custodian to the extent (and only to the extent) that it would have been liable for such acts and omissions hereunder had such acts and omissions been its own acts and omissions." WaMu PSA §§ 1.01, 2.05.

44.      ~~45.~~The final certification, called "Form of Trustee's Certification," which was attached to the WaMu PSA as Exhibit M, provides:

Ladies and Gentlemen:

In accordance with Section 2.07 of the above-captioned Pooling and Servicing Agreement, the undersigned, ***as [Trustee] [Initial Custodian], hereby certifies that, except as noted on the attachment hereto, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attachment hereto) it has reviewed the documents delivered to it pursuant to Section 2.05 of the Pooling and Servicing Agreement and has determined that (i) all documents required*** (in the case of instruments described in clauses (X)(ii), (X)(iv) and (Y)(ix) of the definition of "Mortgage File," known by it to be required) ***pursuant to the definition of "Mortgage File" and Section 2.05 of the Pooling and Servicing Agreement to have been executed and received as of the date hereof are in its possession*** and (ii) ***all such documents have been executed and relate to the Mortgage Loans identified in the Mortgage Loan Schedule***. The [Trustee] [Custodian] [Initial Custodian] has made no independent examination of such documents beyond the review specifically required in the above referenced Pooling and Servicing Agreement and has relied upon the purported genuineness and due execution of any such documents and upon the purported genuineness of any signature thereon. The [Trustee] [Custodian] [Initial Custodian] makes no representations as to: (i) the validity, legality, enforceability or genuineness of any of the documents contained in each Mortgage File or any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan.

(Emphasis added.) The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain a substantially similar form of final certification. *See* Ex. C § V.

45. ~~46.~~The final certification is the key certification that ~~Defendants~~U.S. Bank (or a Custodian on ~~their~~its behalf) ~~were~~was required to prepare for the Covered Trusts. In this document, ~~Defendants~~U.S. Bank certified that (i) there was full and complete loan documentation in accordance with the requirements of the PSAs for those loans specifically identified on the mortgage loan schedule, and (ii) ~~Defendants~~U.S. Bank had not obtained complete required documentation for those loans identified on the document exception report.

46.   ~~47.~~If there was a defect with any mortgage file, then the Servicer and the ~~Trustees were~~Trustee was obligated to demand that the Sponsor cure the defect leading to the exception (typically within 90 days) or repurchase or substitute the defective loans. This is set forth in Section 2.07 of the WaMu PSA, which provides:

> ***If the Trustee finds any document or documents required to be included in the Mortgage File for a Mortgage Loan pursuant to the definition of 'Mortgage File' not to have been executed and received, the Trustee shall promptly so notify the Servicer. An exception report delivered by the Custodian to the Servicer pursuant to the Custodial Agreement shall be deemed to constitute such notice.*** Upon notice from the Trustee or the Custodian that any document required to be included in the Mortgage File for a Mortgage Loan has not been executed and received, ***the Servicer shall promptly notify the Seller of such defect and take appropriate steps on behalf of the Trust to enforce the Seller's obligation, pursuant to Section 2.4 of the Mortgage Loan Purchase Agreement, to correct or cure such defect or repurchase or substitute for such Mortgage Loan, in accordance with and subject to the time limitations set forth in such Section 2.4***; *provided, however,* that the Servicer shall not require or permit the Seller to repurchase a Mortgage Loan pursuant to such Section 2.4 of the Mortgage Loan Purchase Agreement more than two years after the Closing Date . . . .

(Emphasis added.) Section 2.4 of the WaMu Mortgage Loan Purchase Agreement ("MLPA") provides:

> Upon receipt of notice from the Purchaser that any document, required to be included (pursuant to the definition of 'Mortgage File') in the Mortgage File delivered to the Purchaser or its designee with respect to a Mortgage Loan sold by the Seller hereunder, was not included therein or has not been executed, the *Seller shall correct or cure such defect within 60 days from the date the Seller receives notice thereof or, if such defect cannot be corrected or cured within such 60-day period, the Seller shall, not later than the expiration of such 60-day period, either (a) repurchase such Mortgage Loan from the Purchaser or its transferee at the Repurchase Price or (b) within the three-month period commencing on the related Closing Date (or within the two-year period commencing on such Closing Date if the related Mortgage Loan is a 'defective obligation' within the meaning of Section 860G(a)(4)(B)(ii) of the Code and Treasury Regulation Section*

*1.860G-2(f)), substitute for such Mortgage Loan one or more Substitute Mortgage Loans each of which is a 'qualified replacement mortgage' (as defined in the Code). If such defect would cause the Mortgage Loan to be other than a 'qualified mortgage' (as defined in the Code), then notwithstanding the previous sentence, the repurchase or substitution must occur within the sooner of (i) 90 days from the date the defect was discovered by the Seller, the Purchaser or any other party to the related Pooling and Servicing Agreement or (ii) in the case of substitution, two years from the related Closing Date.*

(~~emphasis~~Emphasis added~~.~~). The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts

contain substantially similar requirements. *See* Ex. C § VI. The PSAs for the DLJ, EMC and JPMorgan Trusts provide that the Servicer, the Trust Administrator and the ~~Trustees~~Trustee were entitled to reimbursement of any expenses incurred in enforcing this repurchase obligation. *See* Ex. C § VIII.

47.    ~~48.~~Under all of the PSAs and applicable tax laws governing REMICs, the responsible party could not cure a document defect by substitution after a specified period, typically two years from closing. For example, Section 2.07 of the WaMu PSA and Section 2.4 of the WaMu MLPA provide that substitution is not an available remedy more than two years from closing. The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts have similar cutoffs. *See* Ex. C § VI. In any event, because any substituted loans must be virtually identical to the initial loan, including maturity date and other terms, substitution was not generally feasible more than a year after closing because loans of the same vintage were no longer widely available for inclusion in the securitizations.

**B.    ~~Defendants~~U.S. Bank Had a Duty to Provide Notice of Defaults and Enforce Repurchase Obligations Triggered by Such Notice**

48.    49.DefendantsU.S. Bank had an obligation pursuant to the PSAs to provide notice to all parties of the Sponsors' or Originators' breaches of representations and warranties under the PSAs or MLPAs. For example, Section 2.09 of the WaMu PSA provides in relevant part:

> Upon discovery by . . . the Trustee (in the case of the Trustee, having actual knowledge thereof) of a breach of any of the representations and warranties in respect of the Mortgage Loan set forth in Section 3.1     of the Mortgage Loan Purchase Agreement . . . that materially and adversely affects the value of the related Mortgage Loans or the interests of the Trust in the related Mortgage Loans, the party discovering such breach shall give prompt written notice to the others.

The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar provisions. *See* Ex. C § VIII.

49.    50.In addition, the PSAs require that DefendantsU.S. Bank provide notice of the Servicers' breaches. For example, Section 7.01 of the WaMu PSA provides that most breaches by the Servicer ripen into an Event of Default if left unremedied for 60 days after "written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee." This provision clearly contemplates that the Trustee "shall" provide notice of Servicer breaches upon becoming aware of such breaches, which makes sense as the Trustee was the party required to police the deal for investors. The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar provisions. *See* Ex. C § IX; *see also* Ex. C § VIII.

50.    51.The C-BASS, Citigroup and UBS PSAs have additional provisions requiring the Trustee to provide notice to all parties of breaches of representations and warranties and

covenants made by the Servicer. *See* C-BASS PSA § 2.05 ("Upon discovery by . . . the Trustee of a breach of any of the foregoing representations, warranties and covenants [of the Servicer] which materially and adversely affects the value of any Mortgage Loan or the interests therein of the certificateholders, the party discovering such breach shall give prompt written notice (but in no event later than two Business Days following such discovery) to the other parties hereto."); Citigroup PSA § 2.05 (same); UBS PSA § 2.05 (same).

51.   ~~52.~~In addition, after the occurrence of an Event of Default, the ~~Trustees assume~~Trustee assumes the same duties as a common law trustee, which include, among other things, providing

beneficiaries notice of all defaults under the operative trust documents, which include the PSAs here.

52.   ~~53.~~Congress also enacted the TIA to ensure, among other things, that investors in certificates, bonds, and similar instruments, have adequate rights against, and receive adequate performance from, the responsible trustees. 15 U.S.C. § 77bbb.

53.   ~~54.~~Under Section 315(b) of the TIA, ~~Defendants were~~U.S. Bank was required to give certificateholders notice of a default under the PSAs within 90 days of learning of such default. 15 U.S.C. § 77ooo(b).

54.   ~~55.~~As set forth in Section III hereof, ~~Defendants~~U.S. Bank failed to give notice of numerous defaults and breaches of representations and warranties or covenants as required under the PSAs, common law, and the TIA.

    **C.**   ~~**Defendants**~~**U.S. Bank's Duty to Act Prudently Upon the Occurrence of an Event of Default**

55.   ~~56.~~Under the PSAs and applicable law, ~~Defendants~~U.S. Bank owed a fiduciary duty to certificateholders upon the occurrence of an Event of Default. ~~Defendants~~U.S. Bank's

post-default fiduciary duties are described in Section 8.01 of the WaMu PSA, which provides in relevant part, "[i]n case an Event of Default has occurred . . . the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent person would exercise under the circumstances in the conduct of such person's own affairs." The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts impose substantially similar obligations on ~~Defendants~~U.S. Bank. *See* Ex. C § VII.

56.   ~~57.~~In addition, Section 315(c) of the TIA provides that upon the occurrence of a "default" the indenture trustee must exercise such of the rights and powers vested in it by the indenture, and must use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs. 15 U.S.C. § 77ooo(c).

57.   ~~58.~~The Streit Act provides that upon the occurrence of an "event of default," an indenture trustee must exercise such of the rights and powers vested in it by the indenture, and must use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

58.   ~~59.~~A prudent trustee would have taken appropriate steps to ensure all mortgage loan documentation was completely and accurately transferred to the trusts. A prudent trustee also would have ensured that the appropriate parties were receiving notification of breaches of representations and warranties from the Servicers and enforced the responsible parties' obligations with respect to breaching mortgage loans. As set forth in Section III hereof, ~~Defendants~~U.S. Bank failed to exercise its duties both prior to and after the occurrence of defaults and Events of Default.

30

**D.    ~~Defendants~~U.S. Bank Had a Duty to Address the Servicers' Failure to Meet Prudent Servicing Standards**

59.    ~~60.~~Each PSA required the Servicers to service the loans underlying the Covered Trusts prudently.

60.    ~~61.~~For example, Section 3.01 of the WaMu PSA provides: "Washington Mutual Bank shall act as Servicer to service and administer the Mortgage Loans on behalf of the Trust in accordance with the terms hereof, consistent with prudent mortgage loan servicing practices and (unless inconsistent with prudent mortgage loan servicing practices) in the same manner in which, and with the same care, skill, prudence and diligence with which, it services and administers similar mortgage loans for other portfolios, and shall have full power and authority

to do or cause to be done any and all things in connection with such servicing and administration which a prudent servicer of mortgage loans would do under similar circumstances, including, without limitation, the power and authority to bring actions and defend the Mortgage Pool Assets on behalf of the Trust in order to enforce the terms of the Mortgage Notes." The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar requirements. *See* Ex. C § XII. For the Covered Trusts that employed a Master Servicer, the Master Servicer was charged with overseeing the Servicers.

61.    ~~62.~~The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, UBS, and WaMu Trusts provide that failure to meet prudent servicing standards is an Event of Default if left uncured for a designated period of time after notice of the default. For example, Section 7.01 of the WaMu PSA provides that an Event of Default is triggered by:

> [f]ailure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the

part of the Servicer contained in the Certificates or in this Agreement which continues unremedied for a period of 60 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee, or to the Servicer and the Trustee by the Holders of Certificates evidencing Percentage Interests aggregating not less than 25%.

*See* Ex. C § IX.

62. 63. Further, the PSAs for the Barclays, C-BASS, Citigroup, and UBS Trusts provide that the failure to follow prudent servicing standards is also an Event of Default 30-45 days after a Servicing Officer becomes aware of such breach, without regard to whether notice is provided. *See* Ex. C § IX.

63. 64. Upon a Servicer default or Event of Default, the Trustees were Trustee was obligated to act. Defendants U.S. Bank had a duty to provide notice when it became aware of breaches of the PSAs by the Servicers. If the defaults were not cured within the grace period, or if the Trustees Trustee failed to give notice, the Trustees were Trustee was required to take action to address the defaults. For example, the WaMu PSA provides that once a Servicer Event of Default occurred, the Trustee had the authority and obligation to "terminate all of the rights . . . and obligations of the Servicer," WaMu PSA § 7.01 (*see also* Ex. C § X), and "shall be the successor in all respects to the Servicer . . . and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto." WaMu PSA § 7.02. The PSAs for the Barclays, C- BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts impose substantially similar obligations on Defendants U.S. Bank. *See* Ex. C § XI. More generally, Defendants U.S. Bank, as Trustees Trustee, had a duty to exercise all rights available under the PSAs to protect certificateholders' interests and do so with due care.

64.   65.As set forth below in Section III(B)-(C), ~~Defendants~~U.S. Bank breached ~~their~~its statutory, fiduciary, and contractual duties by failing to take actions to address Servicer defaults and Events of Default.

**E.**   **~~Defendants Are~~U.S. Bank Is Liable for Negligence in Performing ~~Their~~Its Duties**

65.   66.Section 8.01 of the WaMu PSA provides in relevant part:

> ***No provision of this Agreement shall be construed to relieve the Trustee or the Delaware Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct***; provided, however, that:
>
> (i) Prior to the occurrence of an Event of Default and after the curing of all such Events of Default which may have occurred, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement,
>
> (ii) Neither the Trustee nor the Delaware Trustee shall be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement . . . and
>
> (iii) Neither the Trustee nor the Delaware Trustee shall be personally liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Certificateholders holding Certificates which evidence Percentage Interests aggregating not less than 25% relating to the time, method and place of conducting any proceeding for any remedy available to such trustee, or relating to the exercise of any trust or power conferred upon such trustee under this Agreement.

(Emphasis added.) The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar provisions. *See* Ex. C § VII.

66.   67.Every trustee also has a non-waivable duty to exercise due care in the performance of ministerial acts required to be undertaken in the course of the administration of the trust. ~~Defendants~~U.S. Bank can be held liable for ~~their~~its own negligence in failing to perform ~~their~~its requisite ministerial acts, including, among other things, ~~their~~its

responsibilities to: (i) give notice to all parties to the PSAs of the breach of representations and warranties relating to the mortgage loans once ~~they~~it discovered the Sponsors' widespread practice of including in securitization trusts loans that breached such representations and warranties; and (ii) provide notices of servicing related breaches known to the ~~Trustees~~Trustee.

67.    ~~68.~~Every trustee—including ~~Defendants~~U.S. Bank—has an absolute duty to avoid conflicts of interest and a duty of undivided loyalty to trust investors. This duty is non-waivable and arises independently of the PSAs.

## III.    ~~DEFENDANTS~~U.S. BANK BREACHED ~~THEIR~~ITS CONTRACTUAL, FIDUCIARY, AND STATUTORY DUTIES

### A.    ~~Defendants~~U.S. Bank Failed to Provide Notice of the Sponsors' and Originators' Pervasive Representation and Warranty Breaches

68.    ~~69.~~~~Defendants~~U.S. Bank failed to give notice of defaults that occurred when the Sponsors or Originators breached representation and warranty provisions providing that all loans met applicable loan origination guidelines. In reality, during the 2005 to 2007 time period, the Sponsors and Originators regularly disregarded their underwriting guidelines and the representations and warranties made to securitization trusts.

69.    ~~70.~~For example, for the WaMu Trusts, Washington Mutual Bank represented and warranted in the WaMu MLPA that "[t]he Mortgage Loans have been underwritten substantially in accordance with the applicable Underwriting Standards." WaMu MLPA § 3.1(xx). Washington Mutual Bank further represented and warranted the following in Section 3.1 of the WaMu MLPA:

> (i) The information set forth in the Mortgage Loan Schedule delivered on the Closing Date was true and correct in all material respects at the date or dates respecting which such information is furnished;

(ii) As of the Closing Date, each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is a valid and enforceable . . . first lien on an unencumbered estate in fee simple or . . . leasehold estate in the related Mortgaged Property. . . ;

(iii) Immediately upon the transfer and assignment contemplated herein, the Purchaser shall have good title to, and will be the sole legal owner of, each Mortgage Loan, free and clear of any encumbrance or lien (other than any lien under this Agreement);

(iv) Except as set forth on Schedule III to the Term Sheet, if applicable, as of the day prior to the Cut-Off Date, all payments due on each Mortgage Loan had been made and no Mortgage Loan had been delinquent (i.e., was more than 30 days past due) more than once in the preceding 12 months and any such delinquency lasted for no more than 30 days;

(v) As of the Closing Date, there is no offset, defense or counterclaim to any Mortgage Note. . . ;

(vi) As of the Closing Date, each Mortgaged Property is free of damage and in good repair, ordinary wear and tear excepted;

(vii) Each Mortgage Loan at the time it was made complied with all applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, disclosure and recording laws, and   predatory and abusive lending laws applicable to  the originating lender;

(viii) Each Mortgage Loan was originated by (a) the Seller, (b) a savings association, savings bank, bank, credit union, insurance company or similar institution which is supervised and examined by a federal or state authority or (c) a mortgagee approved by the FHA;

(ix) As of the Closing Date, each Mortgage Loan that is not a Cooperative Loan is covered by an ALTA form or CLTA form of mortgagee title insurance policy, or other form of policy of insurance acceptable to Fannie Mae or Freddie Mac as of the origination date of such Mortgage Loan. . . ;

(x) Except as set forth on Schedule III to the Term Sheet, if applicable, each Mortgage Loan with both (a) an Original Loan-to-Value Ratio and (b) a Current Loan-to-Value Ratio in excess of 80% was covered, as of the Cut-Off Date, by a Primary Insurance Policy or an FHA insurance policy or a VA guaranty, and such policy or guaranty is valid and remains in full force and effect; . . .

(xv)   As of the Closing Date, the Mortgaged Property securing each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is improved with a one- to four-family dwelling unit~~ . ~~ ;

(xvi)   As of the Closing Date, each Mortgage and Mortgage Note is the legal, valid and binding obligation of the maker thereof and is enforceable in accordance with its terms; . . .

(xix)        Prior to origination or refinancing, an appraisal of each Mortgaged Property was made by an appraiser on a form satisfactory to Fannie Mae or Freddie Mac; . . .

(xxvi) Each Mortgage Loan constitutes a "qualified mortgage" . . . ;

(xxvii) No Mortgage Loan is a High Cost/Covered Loan, and no Mortgage Loan originated during the period of October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act; . . .

(xxix)        No Mortgage Loan has a Closing Date Loan-to-Value Ratio greater than 100%.

The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar provisions. *See* Ex. C § XIV.

70.        ~~71.~~As noted above in Section II (B), each party, including the ~~Trustees~~Trustee, had an obligation to provide notice of breaches of these representations and warranties, and such notice triggered the Sponsors' or Originators' obligation to repurchase or substitute the defective loan. *See also* Ex. C § VIII.

71.        ~~72.Defendants~~U.S. Bank knew that the Sponsors and Originators regularly disregarded their underwriting guidelines and representations and warranties made to securitization trusts long before certificateholders learned of such problems.

72.        ~~73.Defendants~~U.S. Bank served as ~~trustees~~trustee for hundreds, if not thousands,

36

of RMBS trusts from 2004 to 2007, including many transactions involving the Sponsors and Originators. In the course of administering these trusts, ~~Defendants~~U.S. Bank learned that the Sponsors and Originators had departed from their underwriting guidelines, engaged in predatory lending, and failed to ensure mortgage loans complied with state and federal laws.

73.   ~~74.~~For example, while serving as ~~trustees~~trustee for various RMBS trusts, ~~Defendants were~~U.S. Bank was presented with a large number of defaulted loans that were originated by the Sponsors and Originators, and foreclosures were commenced often in ~~Defendants~~U.S. Bank's name.

74.   ~~75.~~Indeed, U.S. Bank commenced foreclosure actions from 2005 to 2008 for numerous loans in which the Sponsors or Originators were at issue, including, for example, foreclosure actions in which:

a.   Argent Mortgage Company served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Schreiner*, No. 2012-cv-07565 (C.P. Montgomery Cnty. 2012).

b.   Countrywide Home Loans served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Weber*, No. 2007-cv-01644 (C.P. Montgomery Cnty. 2007); *U.S. Bank Nat'l Ass'n v. Houston*, No. 2007-cv-03070 (C.P. Montgomery Cnty. 2007).

c.   Fremont Investment & Loan served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Brown*, No. 07-cv-1314 (Medina Cnty. 2007).

d.   JPMorgan Chase Bank, N.A. served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Siminou*, No. 08-cv-0810754 (N.Y. Sup. Ct. 2008).

e.   New Century Mortgage Corporation served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Murphy*, No. 2011-cv-04506 (C.P. Montgomery Cnty. 2011).

f.   Wells Fargo Bank served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Willoughby*, No. 2011-cv-00540 (C.P. Montgomery Cnty, 2011); *U.S. Bank Nat'l Ass'n v. Walker*, No. 2012-cv-07346 (C.P. Montgomery Cnty. 2012).

g.   WMC Mortgage Corporation served as Originator. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Jones*, No. 2011-cv-05352 (C.P. Montgomery Cnty. 2011).

~~76.Additionally, Bank of America (or LaSalle) commenced foreclosure actions~~

between 2005 and 2008 for numerous loans in which the Sponsors or Originators were at issue, including, for example, foreclosure actions in which:

α. CIT Group/Consumer Finance served as Originator. *See, e.g., LaSalle Bank Nat'l Ass'n v. Oden*, No. 2007-04-2588 (C.P. Summit Cnty. 2007) (initiating action for loans included in the GSAMP 2006-HE5 Trust).

β. Fremont Investment & Loan served as Originator. *See, e.g., LaSalle Bank Nat'l Ass'n v. Harris*, No. 2007-01-0540 (C.P. Summit Cnty. 2007) (initiating action for loans included in the GSAMP 2006-HE3 Trust).

χ. Morgan Stanley served as Sponsor. *See, e.g., LaSalle Bank Nat'l Ass'n v. Keaton*, No. 2008-cv-0173 (C.P. Montgomery Cnty. 2008); *LaSalle Bank Nat'l Ass'n v. Wilson*, No. 2008-cv-9030 (C.P. Montgomery Cnty. 2008); *LaSalle Bank Nat'l Ass'n v. Kennedy*, No. 2008-cv-8377 (C.P. Montgomery Cnty. 2008).

δ. Ownit Mortgage Solutions, Inc. served as Originator. *See, e.g., LaSalle Bank Nat'l Ass'n v. Fickers*, No. 2008-08-5977 (C.P. Summit Cnty. 2008); *LaSalle Bank Nat'l Ass'n v. Cundiff*, No. 2008-04-3365 (C.P Summit Cnty. 2008).

ε. Washington Mutual Bank served as Sponsor. *See, e.g., Bank of Am. v. Lewers*, No. 2008-12-8789 (C.P. Summit Cnty. 2008); *LaSalle Bank v. Skeens*, No. 2008-11-7913 (C.P. Summit Cnty. 2008); *Bank of Am. v. Savage*, No. 2007-12- 8902 (C.P. Summit Cnty. 2008); *LaSalle Bank v. Miller*, No. 2008-12-8786 (C.P. Summit Cnty 2008).

75. 77. Sometimes the defaults and foreclosures occurred just months after the loan was originated or securitized. In each foreclosure, Defendants were U.S. Bank was the named plaintiffs plaintiff and the parties party in interest as they it held title to the notes and mortgage as trustee for the benefit of the certificateholders. As the real parties party in interest, they it had knowledge of the contents of the foreclosure filings.

76. 78. Through their its review of these filings, Defendants U.S. Bank knew that the borrowers either (i)

(i)    did not qualify for the loans because they did not have the ability to repay the loans; (ii) were victims of predatory lending; or (iii) were given a loan that did not comply with state or federal law.

77.   ~~79.~~Beginning in 2009 or 2010, facts began to emerge publicly demonstrating that the Sponsors and Originators had violated the representations and warranties provided in connection with the Covered Trusts. These facts, some of which are detailed in Exhibit F, demonstrate that the Sponsors and Originators regularly included loans in securitizations that did not comply with applicable underwriting guidelines, made predatory loans, and failed to meet state and federal lending guidelines. While investors such as Commerzbank lacked the ability to determine whether the publicly reported misconduct by the Sponsors and Originators impacted specific loans backing the Covered Trusts, ~~Defendants~~U.S. Bank had knowledge of specific problems with specific loans, as well as access to the mortgage loan files. At a minimum, in ~~their roles~~its role as ~~trustees~~trustee to hundreds of RMBS trusts, ~~Defendants were~~U.S. Bank was privy to information that would have provided the "scent" of a problem with the loans underlying the Covered Trusts. Having caught wind of the problem, ~~Defendants~~U.S. Bank had statutory and common law duties requiring ~~them~~it to "nose to the source."

78.   ~~80.Defendants~~U.S. Bank also commenced repurchase actions against the same Sponsors and Originators at issue here relating to RMBS trusts other than the Covered Trusts and uncovered evidence that the Sponsors and Originators systemically breached representation and warranty provisions. For example, at the direction of certain certificateholders, U.S. Bank, in its role as trustee, commenced actions against, among other entities, GreenPoint Mortgage Funding, Inc. (an Originator of loans included in four of the Covered Trusts),

Citigroup Global Markets Realty Corporation (the Sponsor of thirteen of the Covered Trusts), Countrywide Home Loans, Inc. (an Originator of ten of the Covered Trusts), and DLJ Mortgage Capital Inc. (the Sponsor of ten of the Covered Trusts and Originator of one of the

Covered Trusts) to compel repurchase of loans that breached representations and warranties, alleging:

- The Originators sold a material number of loans to securitization trusts that did not comply with applicable underwriting guidelines in violation of their representations and warranties;

- The Servicers failed to provide notice of each breach of a representation or warranty with respect to a mortgage loan; and

- The Servicers failed to use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of properties securing such of the mortgage loans as come into and continue in default and as to which no satisfactory

ngements can be made for collection of delinquent payments.

arra

*See, e.g.*, *Citigroup Mortg. Loan Trust 2007-AMC3, by U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, No. 13-cv-2843 (GBD) (S.D.N.Y. Nov. 21, 2014); *U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, No. 13-cv-653816 (N.Y. Sup. Ct. Apr. 8, 2014); *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, No. 13-cv-652699 (N.Y. Sup. Ct. Jan. 6, 2014); Compl., *U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, No. 13-cv-651954 (N.Y. Sup. Ct. Nov. 6, 2013); *U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, No. 13-cv-6989 (S.D.N.Y. Oct. 1, 2013); *U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, No. 13-cv-4707 (S.D.N.Y. Jul. 8, 2013); *Asset Backed Secs. Corp. Home Equity Loan Trust, Series AMQ 2006-7 (ABSHE 2006-HE7), by U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, No. 12-cv-654146 (N.Y. Sup. Ct. May 5, 2013); *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, No. 13-cv-650369 (N.Y. Sup. Ct. Feb. 1, 2013); *U.S. Bank Nat'l Ass'n v. Countrywide Home Loans, Inc.*, No. 11-cv-652388 (N.Y. Sup. Ct. Aug. 29, 2011). These lawsuits, which alleged pervasive and systemic breaches of representations and warranties, demonstrate that U.S. Bank was aware of similarly pervasive and systemic breaches of representations and warranties in the Covered Trusts, but failed to exercise due care.

79.   81.While U.S. Bank pursued an action against DLJ relating to one of the Covered Trusts, HEAT 2007-2, *see U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, No. 13-cv- 651174 (N.Y. Sup. Ct. Jul. 31, 2013), that action is subject to significant defenses and fails to address most of the wrongdoing addressed herein.

80.   82.In another repurchase action that U.S. Bank brought against Countrywide Home Loans, Inc. (the Originator of loans included in ten of the Covered Trusts), U.S. Bank stated in its complaint that "[s]oon after being sold to the Trust, Countrywide's loans began to become delinquent and default at a startling rate." *See* Compl., *U.S. Bank Nat'l Ass'n v. Countrywide*

*Home Loans, Inc.*, No. 13-cv-652388 (N.Y. Sup. Ct. Aug. 29, 2011). U.S. Bank stated that a forensic review conducted before filing the complaint revealed that "an extraordinary sixty-six percent" of the sampled loans breached one or more of the mortgage loan representations and warranties. *Id.* ¶ 6. Additionally, U.S. Bank stated that this was consistent with "Countrywide's abject failure to abide by the very representations and warranties it consistently made to induce the purchase of its Loans for securitizations, including the purchase of the Loans by the Trust." *Id.* ¶ 36.

81.    U.S. Bank ~~of America received notice of this lawsuit and the statements contained therein as it was also a named defendant.~~

~~83.Defendants~~ also received written notice of systemic, widespread Sponsor breaches from monoline insurers.

82.    ~~84.~~Monoline insurance is a form of credit enhancement that involves purchasing insurance to cover losses from any defaults. Many RMBS trusts were insured by monoline insurers. The Sponsors of the mortgage loans made representations and warranties concerning the underwriting standards of the loans in the governing agreements for the insured RMBS. The governing agreements for the insured RMBS transactions have a repurchase procedure through which the monoline insurers must provide notice of a breach of representation and warranty to the responsible mortgage loan sponsor and the parties to the agreement, including the trustee.

83.    ~~85.~~Monoline insurers have filed many complaints against Sponsors and Originators of the Covered Trusts for breaches of their representations and warranties in connection with other RMBS trusts. Prior to filing suit against the mortgage loan Sponsors, the monoline insurers were often able to obtain and carry out a forensic loan level review of the loans at issue.

84.    ~~86.~~For example, in *MBIA Insurance Corporation v. Credit Suisse Securities*

*(USA) LLC*, No. 09-cv-603751 (N.Y. Sup. Ct. Feb. 11, 2010), MBIA Insurance Corporation

("MBIA") sued numerous defendants, including DLJ Mortgage Capital, Inc., who served as

Sponsor of ten Covered Trusts and originated loans included in one of the Covered Trusts. MBIA

reported that its review of loan files securitized by the defendants revealed breaches of

representations and warranties, including an extraordinarily high incidence of material deviations

from the underwriting standards that defendants represented would be followed. *Id*. Of the 1,798

loan files that were reviewed by MBIA, approximately 85 percent contained one or more

breaches of the mortgage loan representations. *Id*.

85.    87. Additionally, in *MBIA Insurance Company v. Morgan Stanley*, No.

10-cv-29951 (N.Y. Sup. Ct. Dec. 6, 2010), MBIA sued Morgan Stanley (Sponsor of one of the

Covered Trusts), reporting that its review of loan files securitized by the defendants revealed

breaches of representations and warranties, including an extraordinarily high incidence of material

deviations from the underwriting standards that defendants represented would be followed. Of the

2,957 loan files that were reviewed by MBIA, 2,857 or 96.6 percent contained one or more

breaches of

the mortgage loan representations. *Id*. at 72. The reviewed mortgage loans included 1,051 that

were selected at random from the securitized pool, of which 982 or 93.4 percent contained one or

more breaches of the mortgage loan representations. *Id*. Another 1,906 defaulted loans were

reviewed, of which 1,875 or 98.4 percent contained one or more breaches of the mortgage loan

representations. *Id*. In May 2011, the court denied a motion to dismiss all but one count of the

complaint. *MBIA Ins. Corp. v. Morgan Stanley*, 42 Misc. 3d 1213(A), 984 N.Y.S.2d 633 (N.Y.

Sup. Ct. 2011). The parties settled the case in December 2011.

86.    88. Other monoline insurers sued DLJ Mortgage Capital Inc. in *Assured Guaranty v.*

*DLJ Mortgage Capital Inc.*, No. 11-cv-652837 (N.Y. Sup. Ct. Oct. 17, 2011) and *Financial*

*Guaranty Insurance Company v. Credit Suisse Securities (USA) LLC*, No. 13-cv-651178 (N.Y.

Sup. Ct. Apr. 2, 2013). In both of those cases, the plaintiff reported that defendants securitized

loans that breached representations and warranties. In fact, Assured Guaranty conducted a

forensic re-underwriting of 7,918 loans, which revealed that 93 percent, or 7,338, of the loans it

reviewed breached at least one of the representations and warranties provided in the relevant

governing agreements.

 *87.*  ~~89.~~Further, Ambac Assurance Corporation, MBIA, and Syncora Guarantee each

brought actions against Countrywide Home Loans, Inc. alleging breaches of representations and

warranties. *See* Compl., *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, No. 14-cv-

653979 (N.Y. Sup. Ct. Dec. 30, 2014); Am. Compl., *MBIA Ins. Corp. v. Countrywide Home

Loans, Inc.*, No. 08-cv-602825 (N.Y. Sup. Ct. Aug. 24, 2009); Compl., *Syncora Guarantee Inc.*

v.   *Countrywide Home Loans, Inc.*, No. 09-cv-650042 (N.Y. Sup. Ct. May 6, 2010).

 88.  ~~90.~~Monoline insurers also brought suits against JPMorgan Chase Bank, N.A.

and GreenPoint Mortgage Funding, Inc. alleging both entities breached representations and

warranties. *See, e.g.*, Compl., *Assured Guar. Corp. v. EMC Mortg. LLC*, No. 12-cv-650805

(N.Y. Sup. Ct. Mar. 15, 2012); Compl., *CIFG Assurance N. Am., Inc. v. GreenPoint Mortg.

Funding, Inc.*, No. 12-cv-652449 (N.Y. Sup. Ct. Mar. 4, 2013).

 89.  ~~91.~~U.S. Bank ~~and LaSalle~~ received notice of several of the above-referenced

monoline actions as ~~they were~~it was the ~~trustees~~trustee for several of the trusts, including

Covered Trusts at issue here. *See, e.g.*, *Assured Guar. v. DLJ Mortg. Capital, Inc.*, No.

11-cv-652837 (N.Y. Sup. Ct. Oct. 17, 2011) (CSAB 2006-4 as trustee); *MBIA Ins. Co. v. Morgan

Stanley*, No. 10-cv- 29951 (N.Y. Sup. Ct. Dec. 6, 2010).

 90.  ~~92.~~Apart from the multiple, highly-publicized RMBS lawsuits and the numerous

government investigations on both the state and federal level, there are various other indications

that the Covered Trusts' loan pools included large numbers of mortgage loans that materially breached the responsible parties' representations and warranties. For example, the Originators' and Sponsors' systemic abandonment of their underwriting guidelines has had a devastating effect on the performance of the Covered Trusts. Many of the Certificates acquired by Commerzbank were triple-A or double-A rated at the time of purchase. *See* Ex. D. Now most are "junk" bonds that do not qualify for any investment grade rating. *See id.* These downgrades were prompted by the alarming rate of defaults and delinquencies of the mortgage loans backing the Covered Trusts and the information that has emerged concerning the Sponsors' and Originators' systemic abandonment of underwriting guidelines. *See* Ex. E. A summary of the Covered Trusts' high default and delinquency rates is attached as Exhibit E. ~~Defendants were~~U.S. Bank was aware of the high level of defaults and should have carefully investigated these issues, notified certificateholders, including Commerzbank, of the issues, and taken action to address these issues.

91.    ~~93.~~If ~~Defendants~~U.S. Bank had provided the required notices, ~~they~~it would have forced the Sponsors or Originators to repurchase, or substitute if within the period specified in the PSAs, the relevant loans, and the Sponsors would not have been able to issue additional fraudulent RMBS certificates. ~~Defendants~~U.S. Bank had a continuing duty to provide such notice but failed to do so throughout ~~their~~its tenure as ~~trustees~~trustee. Indeed, ~~Defendants~~U.S. Bank let the statute of limitations to bring repurchase claims lapse by failing to provide notice or take other action within six years of the closing of each Covered Trust.

### 1.    The Originators' and Sponsors' Pervasive Breaches of Representations and Warranties

92.    ~~94.~~Either the Sponsor or Originator, and sometimes both, provided representations and warranties to the Covered Trusts.

93.    95. The failure of the parties to the PSAs to provide notice of breaches of representations and warranties constituted defaults that would have ripened into Events of Default had Defendants U.S. Bank provided notice of the defaults.

94.    96. The chart below identifies each of the entities disclosed to be the Sponsors, Originators, and obligors of the loans included in the Covered Trusts.

| | Trust | Sponsor | Originator | Obligor |
|---|---|---|---|---|
| 1 | ABSHE 2005-HE8 | DLJ Mortgage Capital, Inc. | New Century Mortgage Corporation | New Century Mortgage Corporation |
| 2 | ABSHE 2006-HE1 | DLJ Mortgage Capital, Inc. | Aegis Mortgage Corporation | DLJ Mortgage Capital, Inc. |
| 3 | ABSHE 2006-HE5 | DLJ Mortgage Capital, Inc. | Option One Mortgage Corporation | Option One Mortgage Corporation |
| 4 | BSABS 2005-EC1 | EMC Mortgage Corporation | Encore Credit Corporation; Bravo Credit Corporation | EMC Mortgage Corporation |
| 5 | BSABS 2005-HE10 | EMC Mortgage Corporation | People's Choice Home Loan, Inc.; Residential Mortgage Assistance Enterprise, LLC; ResMAE Mortgage Corporation | EMC Mortgage Corporation |
| 6 | BSABS 2005-HE4 | EMC Mortgage Corporation | Acoustic Home Loans, LLC; Fieldstone Mortgage Company; Sebring Capital Partners, LP | EMC Mortgage Corporation |
| 7 | BSABS 2005-HE7 | EMC Mortgage Corporation | Residential Mortgage Assistance Enterprise, LLC; ResMAE Mortgage Corporation | EMC Mortgage Corporation |

| | | | |
|---|---|---|---|
| 8 | BSABS 2005-HE9 | EMC Mortgage Corporation | MortgageIT, Inc.; Residential Mortgage Assistance Enterprise, LLC; ResMAE Mortgage Corporation | EMC Mortgage Corporation |
| 9 | BSARM 2006-2 | EMC Mortgage Corporation | Countrywide Home Loans, Inc.; Bank of America, N.A. | EMC Mortgage Corporation |
| ~~10~~ | ~~CCMFC 2006-2~~ | ~~Chevy Chase Bank, F.S.B.~~ | ~~Chevy Chase Bank, F.S.B.~~ | ~~Chevy Chase Bank, F.S.B.~~ |
| ~~11~~ 10 | CHASE 2006-A1 | Chase Home Finance LLC; J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | Chase Home Finance LLC; J.P. Morgan Mortgage Acquisition Corporation |
| ~~12~~ 11 | CMLTI 2005-10 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans, Inc.; GreenPoint Mortgage Funding, Inc.; Quicken Loans Inc.; National City Mortgage Company; PHH Mortgage Corporation; Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation |
| ~~13~~ 12 | CMLTI 2005-HE1 | Citigroup Global Markets Realty Corporation | WMC Mortgage Corporation; Argent Mortgage Company, LLC; Olympus Mortgage Company; MortgageIT, Inc.; ResMAE Mortgage Corporation | Citigroup Global Markets Realty Corporation; Argent Mortgage Company, LLC; MortgageIT, Inc.; ResMAE Mortgage Corporation; Olympus Mortgage Company; WMC Mortgage Corporation; Citigroup Mortgage Loan Trust Inc. |

| | | | |
|---|---|---|---|
| ~~14~~ 13 | CMLTI 2005-HE3 | Citigroup Global Markets Realty Corporation | WMC Mortgage Corporation; MortgageIT, Inc.; First Horizon Home Loan Corporation, Inc.; Accredited Home Lenders, Inc.; Impac Funding Corporation | Citigroup Global Markets Realty Corporation; WMC Mortgage Corporation; MortgageIT, Inc.; First Horizon Home Loan Corporation, Inc.; Accredited Home Lenders, Inc.; Impac Funding Corporation; Citigroup Mortgage Loan Trust Inc. |
| ~~15~~ 14 | CMLTI 2005-HE4 | Citigroup Global Markets Realty Corporation | MortgageIT, Inc.; Argent Mortgage Company, LLC | Argent Mortgage Company, LLC; MortgageIT, Inc.; Citigroup Global Markets Realty Corporation |
| 15 ~~16~~ | CMLTI 2006-AR7 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans, Inc.; American Home Mortgage Corporation; Fifth Third Bank; HomeBanc Mortgage Corporation; MortgageIT, Inc.; Quicken Loans, Inc.; Residential Financial Corporation; Secured Bankers Mortgage Company; Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation |
| ~~17~~ 16 | CMLTI 2006-NC2 | Citigroup Global Markets Realty Corporation | New Century Mortgage Corporation | NC Capital Corporation; Citigroup Global Markets Realty Corporation |

| | | | |
|---|---|---|---|
| 17 | CMLTI 2006-WFHE2 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation; Wells Fargo Bank, N.A.; Citigroup Mortgage Loan Trust Inc. |
| 18<br>19 | CMLTI 2006-WFHE2<br><br>CMLTI 2006-WFHE3 | Citigroup Global Markets Realty Corporation<br><br>Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A.<br><br>Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation; Wells Fargo Bank, N.A.; Citigroup Mortgage Loan Trust Inc.<br>Citigroup Global Markets Realty Corp.; Wells Fargo Bank, N.A.; Citigroup Mortgage Loan Trust Inc. |
| 20<br>19 | CMLTI 2006-WFHE4 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation; Wells Fargo Bank, N.A.; Citigroup Mortgage Loan Trust Inc. |
| 21<br>20 | CMLTI 2007-AMC2 | Citigroup Global Markets Realty Corporation | Argent Mortgage Company, LLC; American Home Mortgage Company | Citigroup Global Markets Realty Corporation |

| | | | | |
|---|---|---|---|---|
| ~~22~~ <br> 21 | CMLTI 2007-AR1 | Citigroup Global Markets Realty Corporation | American Home Mortgage Corporation; Ameriquest Mortgage Company; Community Lending Corporation; Countrywide Home Loans, Inc.; Equity Now Inc.; Fifth Third Bank; GreenPoint Mortgage Funding, Inc.; HomeBanc Mortgage Corporation; LoanCity; MortgageIT, Inc.; PHH Mortgage Corporation; Residential Funding Corporation; Secured Bankers Mortgage Company; SilverState Mortgage; SunTrust Mortgage, Inc.; Taylor, Bean & Whitaker Mortgage Corporation; Weichert Financial Services; Wells Fargo Bank, N.A. | Citigroup Global Markets Realty Corporation |
| ~~23~~ <br> 22 | CMLTI 2007-WFHE1 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A.; Citigroup Global Markets Realty Corporation; Citigroup Mortgage Loan Trust Inc. |

| | | | |
|---|---|---|---|
| 24 23 | CMLTI 2007-WFHE2 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A.; Citigroup Global Markets Realty Corporation; Citigroup Mortgage Loan Trust Inc. |
| | | | | Citigroup Mortgage Loan Trust Inc. |
| 25 24 | CSAB 2006-4 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A.; Credit Suisse Financial Corporation; DLJ Mortgage Capital, Inc.; MortgageIT, Inc.; American Home Mortgage Corporation | DLJ Mortgage Capital, Inc. |
| 26 25 | FFMER 2007-2 | First Franklin Financial Corporation | First Franklin Financial Corporation | First Franklin Financial Corporation |
| 27 26 | GSAA 2006-12 | Goldman Sachs Mortgage Company | Countrywide Home Loans, Inc.; PHH Mortgage Corporation; GreenPoint Mortgage Funding, Inc.; National City Mortgage Company | Countrywide Home Loans Servicing LP; PHH Mortgage Corporation; Greenpoint Mortgage Funding Inc.; National City Mortgage Company; Wells Fargo Bank, N.A. |
| 28 27 | GSAA 2007-1 | Goldman Sachs Mortgage Company | Countrywide Home Loans Inc.; Goldman Sachs Mortgage Conduit Program | Countrywide Home Loans Inc. |

| 29 28 | GSAMP 2006-HE5 | Goldman Sachs Mortgage Company | Aames Capital Corporation; The CIT Group/Consu mer Finance; Mortgage Lenders Network USA, Inc.; SouthStar Funding, LLC | Aames Capital Corporation; The CIT Group/Consum er Finance; First Horizon Home Loan Corporation; Goldman Sachs Mortgage Company |
|---|---|---|---|---|
| 30 29 | GSAMP 2006-HE6 | Credit-Based Asset Servicing and Securitization LLC | Ameriquest Mortgage Company; Mortgage Lenders Network USA, Inc.; OwnitOwnIt Mortgage Solutions, Inc.; SouthStar Funding, LLC; AIG Federal Savings Bank; Encore Credit Corporation | Credit-Based Asset Servicing and Securitization LLC; Goldman Sachs Mortgage Company |
| 31 30 | HEAT 2005-2 | DLJ Mortgage Capital, Inc. | This information is not publicly disclosed. | DLJ Mortgage Capital Inc. |
| 32 31 | HEAT 2005-4 | DLJ Mortgage Capital, Inc. | This information is not publicly disclosed. | DLJ Mortgage Capital Inc. |
| 33 32 | HEAT 2005-9 | DLJ Mortgage Capital, Inc. | This information is not publicly disclosed. | DLJ Mortgage Capital Inc. |
| 34 33 | HEAT 2006-4 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A.; Finance America, LLC; Aames Capital Corporation and AEGIS Mortgage Corp. | DLJ Mortgage Capital, Inc. |

| | | | | |
|---|---|---|---|---|
| ~~35~~ <u>34</u> | HEAT 2006-6 | DLJ Mortgage Capital, Inc. | OwnIt Mortgage Solutions, Inc.; Encore Credit Corporation; Decision One Mortgage Company LLC; Lime Financial Services Ltd. | DLJ Mortgage Capital, Inc. |
| ~~36~~ <u>35</u> | HEAT 2007-2 | DLJ Mortgage Capital, Inc. | EquiFirst Corporation; ResMAE Mortgage Corporation | DLJ Mortgage Capital Inc. |
| ~~37~~ <u>36</u> | JPALT 2006-A6 | J.P. Morgan Mortgage Acquisition Corporation | Countrywide Home Loans, Inc.; PHH Mortgage Corporation; JPMorgan Chase Bank | Countrywide Home Loans, Inc.; PHH Mortgage Corporation; JPMorgan Chase Bank; J.P. Morgan Mortgage Acquisition Corporation |
| ~~38~~ <u>37</u> | JPALT 2007-S1 | J.P. Morgan Mortgage Acquisition Corporation | Chase Home Finance, LLC; JPMorgan Chase Bank, N.A.; American Home Mortgage Corporation | Chase Home Finance, LLC; JPMorgan Chase Bank, N.A.; American Home Mortgage Corporation; J.P. Morgan Mortgage Acquisition Corporation |
| ~~39~~ <u>38</u> | JPMAC 2005-FRE1 | J.P. Morgan Mortgage Acquisition Corporation | Fremont Investment & Loan | This information is not publicly disclosed. |
| ~~40~~ <u>39</u> | JPMAC 2005-WMC1 | J.P. Morgan Mortgage Acquisition Corporation | WMC Mortgage Corporation | WMC Mortgage Corporation; J.P. Morgan Mortgage Acquisition Corporation; J.P. Morgan Acceptance Corporation I |
| ~~41~~ <u>40</u> | JPMAC 2006-CH1 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.; J.P. Morgan Mortgage Acquisition Corporation |

| | | | | |
|---|---|---|---|---|
| ~~42~~ 41 | JPMAC 2006-CH2 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.; J.P. Morgan Mortgage Acquisition Corporation |
| 42 ~~43~~ | JPMAC 2006-CW2 | J.P. Morgan Mortgage Acquisition Corporation | Countrywide Home Loans, Inc. | J.P. Morgan Mortgage Acquisition Corporation; Countrywide Home Loans, Inc.; J.P. Morgan Acceptance Corporation I |
| ~~44~~ 43 | JPMAC 2006-NC2 | J.P. Morgan Mortgage Acquisition Corporation | New Century Mortgage Corporation | J.P. Morgan Mortgage Acquisition Corporation; New Century Mortgage Corporation |
| ~~45~~ 44 | MABS 2005-FRE1 | UBS Real Estate Securities Inc. | Fremont Investment & Loan | UBS Real Estate Securities Inc.; Fremont Investment & Loan; Mortgage Asset Securitization Transactions, Inc. |
| ~~46~~ 45 | MABS 2006-AM2 | UBS Real Estate Securities Inc. | Aames Capital Corporation | UBS Real Estate Securities Inc.; Aames Capital Corporation; Mortgage Asset Securitization Transactions, Inc. |
| ~~47~~ 46 | MABS 2006-AM3 | UBS Real Estate Securities Inc | Aames Capital Corporation | UBS Real Estate Securities, Inc.; Aames Capital Corporation; Mortgage Asset Securitization Transactions, Inc. |

| | | | | |
|---|---|---|---|---|
| 48 47 | MABS 2006-NC2 | UBS Real Estate Securities Inc. | New Century Mortgage Corporation | UBS Real Estate Securities Inc.; New Century Mortgage Corporation; Mortgage Asset Securitization Transactions, Inc. |
| 49 48 | MARM 2007- HF2 | UBS Real Estate Securities Inc. | UBS Home Finance | UBS Real Estate Securities Inc. |
| 50 49 | MLMI 2006-AHL1 | Merrill Lynch Mortgage Lending Inc. | Accredited Home Lenders, Inc. | Merrill Lynch Mortgage Lending Inc.; Merrill Lynch Mortgage Investors, Inc. |
| 51 50 | MSM 2006-15XS | Morgan Stanley Mortgage Capital Inc. | Morgan Stanley Mortgage Capital Inc.; American Home Mortgage Corporation; GreenPoint Mortgage Funding, Inc. | Morgan Stanley Mortgage Capital Inc.; American Home Mortgage Corporation; GreenPoint Mortgage Funding, Inc. |
| 52 51 | SABR 2006-WM1 | Barclays Bank PLC | WMC Mortgage Corporation | WMC Mortgage Corporation |
| 53 52 | SURF 2007-BC1 | Merrill Lynch Mortgage Lending Inc. | Specialty Underwriting and Residential Finance | Merrill Lynch Mortgage Lending Inc.; Merrill Lynch Mortgage Investors, Inc. |
| 53 | WAMU 2007-OA2 | Washington Mutual Bank | Washington Mutual Bank | WaMu Asset Acceptance Corporation; Washington Mutual Bank |
| 54 | WAMU 2007-OA26 | Washington Mutual Bank | Washington Mutual Bank | WaMu Asset Acceptance Corporation; Washington Mutual Bank |
| 55 | WAMU 2007-OA6 | Washington Mutual Bank | Washington Mutual Bank | WaMu Asset Acceptance Corporation; Washington Mutual Bank |

| | | | | |
|---|---|---|---|---|
| ~~56~~ 55 | WMALT 2007-OA2 | Washington Mutual Mortgage Securities Corp. | Alliance Bancorp; Countrywide Home Loans; Virtual Bank | Washington Mutual Mortgage Securities Corp. |
| ~~57~~ 56 | WMALT 2007-OC1 | Washington Mutual Mortgage Securities Corporation | Ameriquest Mortgage Company; The Mortgage Store Financial, Inc. | WaMu Asset Acceptance Corporation; Washington Mutual Mortgage Securities Corporation |

95.   ~~97.~~As detailed in Exhibit F, in 2009 and 2010, facts began to emerge that demonstrated that the Sponsors and Originators, and ~~Defendants themselves~~U.S. Bank itself, systematically abandoned applicable underwriting guidelines and therefore breached representations and warranties in all securitizations. That U.S. Bank ~~and Bank of America were~~was involved in origination misconduct demonstrates that ~~they were~~it was aware of widespread, systemic abandonment of underwriting guidelines and related representation and warranty breaches by other market participants.

96.   ~~98.~~The Sponsors and Originators have been the subject of numerous investigations and lawsuits alleging systematic abandonment of underwriting guidelines in the pursuit of profits. These investigations and lawsuits contain ample evidence available to ~~Defendants~~U.S. Bank that mortgage loans originated and sponsored by the relevant Originators and Sponsors breached the associated representations and warranties. Not only do these investigations and lawsuits contain accounts from confidential witnesses and former employees, but many complaints contain detailed information based on forensic reviews of individual loans. Further, these lawsuits and investigations demonstrate that the Originators originated mortgage loans with the goal of increasing volume, rather than evaluating the borrower's ability to repay the loan, and regularly made exceptions to underwriting guidelines in the absence of sufficient

compensating factors.

97. ~~99.~~These lawsuits, in conjunction with the poor performance of the underlying loans (which ~~Defendants were~~U.S. Bank was aware of as ~~they~~it issued regular reports regarding performance) and the public information concerning widespread issues among Originators, were more than sufficient to provide ~~Defendants~~U.S. Bank with notice that large numbers of loans originated and sponsored by the relevant Originators and Sponsors breached the associated representations and warranties.

98. ~~100.Defendants were~~U.S. Bank was aware of these reports, investigations, and lawsuits, and ~~they~~it also had additional information concerning representation and warranty violations that ~~they~~it learned of in the course of administering the Covered Trusts. Additionally, ~~Defendants~~U.S. Bank had access to non-public information regarding the Covered Trusts that would have confirmed the representation and warranty violations if ~~they~~it had conducted even a limited investigation. Thus, ~~Defendants were~~U.S. Bank was aware of the defaults, but failed to provide the required notice and pursue repurchase claims.

**B.    ~~Defendants~~U.S. Bank Failed to Act Prudently Upon the Occurrence of an Event of Default**

99. ~~101.~~When ~~Defendants~~U.S. Bank learned that the Servicers[56] failed to provide notice of numerous breaches of representation and warranty provisions as required under the PSAs, ~~Defendants~~

U.S. Bank should have acted like a prudent person would in the exercise of its own affairs and (i) taken action against the Servicers; (ii) taken steps to require the Sponsors or Originators to repurchase or substitute the loans; and (iii) notified certificateholders of the Servicers'

---

[56] In the PSAs for the BSARM 2006-2, CSAB 2006-4, GSAA 2006-12, GSAA 2007-1, GSAMP 2006-HE5, JPALT 2006-A6, JPALT 2007-S1, JPMAC 2006-CW2, and MSM 2006-15XS Trusts, the Master Servicer was also the Securities Administrator or Trust Administrator and was also required to provide notices of breaches by the Master Servicer and Servicers. References to the Servicer's duties to provide notice also refer to the Securities Administrator

defaults and the breaches of representation and warranty provisions. During the period that an Event of Default was in existence, ~~Defendants~~U.S. Bank had a continuing duty to enforce repurchase rights. As such, ~~they~~it should have, at a minimum, reviewed all defaulted loans as they defaulted and determined whether a responsible party was required to repurchase such loans. ~~Defendants~~U.S. Bank continually failed to do so and let the statute of limitations to bring repurchase claims lapse by failing to take sufficient action within six years of the closing of each Covered Trust.

100. ~~102.~~Although certain Events of Default require formal notice and an opportunity to cure, the ~~Trustees~~Trustee cannot escape ~~their~~its duty of care by failing to provide the required notice. As set forth in Section III(A), ~~Defendants were~~U.S. Bank was aware (or would have been aware if ~~they~~it had carried out ~~their~~its duties) that the Servicers, Depositors, Sponsors, and the ~~Trustees themselves~~Trustee itself, failed to provide notice of the Sponsors' and Originators' representation and warranty violations that occurred in the Covered Trusts. ~~Defendants~~U.S. Bank, however, did not provide notice of such breaches as ~~they were~~it was required to do. Because these would have seasoned into Events of

Default if notice had been provided, ~~Defendants~~U.S. Bank had a duty to act prudently to enforce repurchase provisions once ~~they~~it learned of such defaults.

101. ~~103.~~As described below, additional Events of Default occurred under the terms of the PSAs. ~~Defendants have~~U.S. Bank has engaged in repeated breaches of ~~their~~its duty to exercise due care throughout the life of the Covered Trusts.

**1. Events of Default Under the PSAs Relating to Document Delivery Failures in the Covered Trusts**

102. ~~104.~~As discussed above in Section II(A), ~~Defendants~~U.S. Bank, or a custodian

---

or Trust Administrator's duty.

acting on ~~their~~its behalf, had a duty to identify in final certifications and exception reports

mortgage files that were missing documentation required to be delivered under the PSAs.

Such documents typically include documents sufficient to prove ownership of the note and

mortgage or otherwise protect title. ~~Defendants~~U.S. Bank knew of numerous instances

where ~~they~~it did not receive: (i) the original mortgage note with all intervening endorsements

showing a complete chain of endorsement from the Originator to the Sponsor or Depositor,

or a lost mortgage note affidavit and a duly executed assignment of mortgage for each loan

that was not a MERS loan; (ii) the original recorded mortgage for each loan that was not a

MERS loan; (iii) the original mortgage for those loans that were MERS loans; or (iv) the

original recorded assignment or assignment of the mortgage together with all interim

recorded assignments and the original lender's title policy.

103. ~~105.~~When ~~Defendants~~U.S. Bank prepared the final exception reports, ~~they~~it

provided them to the Sponsors, Depositors, and Servicers indicating many of these missing

documents. When the custodian prepared such reports, it provided them to ~~Defendants~~U.S.

Bank, the Sponsors, Depositors, and Servicers, and the reports similarly showed many

documents that were required to be

delivered under the PSAs were not delivered. ~~Defendants were~~U.S. Bank was aware that

affected loans were not repurchased or substituted.

104. ~~106.~~Rather than take action to ensure the responsible parties cured such defects

or substituted or repurchased the affected loans, ~~Defendants~~U.S. Bank stood by while the

Sponsors and Servicers engaged in so-called "robo-signing" on a widespread basis when the

missing documents were needed to foreclose on properties underlying the Covered Trusts.

~~Defendants~~ U.S. Bank and the Sponsors and Servicers of the Covered Trusts have been

implicated in numerous governmental reports, court orders, and press reports regarding

servicing misconduct and the massive cover-up of the failure to deliver documentation concerning securitized mortgage loans known as the "robo-signing" scandal. This is powerful evidence of the systemic document delivery failures and ~~Defendants~~U.S. Bank's knowledge of such failures. Section III (C) contains a chart of the relevant Sponsors, Servicers, and Master Servicers for the Covered Trusts. ~~Defendants~~U.S. Bank's and the relevant Sponsors', Servicers', and Master

Servicers' involvement in the robo-signing scandal is summarized in Exhibit G.

105.   ~~107.~~Events of Default occurred shortly after the final exception reports were delivered for each of the Covered Trusts under multiple provisions of the PSAs. These Events of Default triggered a continuing duty to review defaulted loans to determine if such loans should be repurchased.

106.   ~~108.~~Each PSA provides that the Servicers' failure to adhere to prudent servicing standards ripens into an Event of Default if left uncured within a specified period after notice of such breach. For example, Section 7.01 of the WaMu PSA provides that an Event of Default occurs if the Servicer fails to prudently service the mortgage loans and such breach is not remedied within 60 days of notice of the breach. The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain similar provisions. *See* Ex. C § IX. Section 7.01(b) of the WaMu PSA further provides that uncured breaches by the Depositor, including the failure to deliver complete mortgage files or cure document exceptions, results in an Event of Default if left uncured for a period of sixty days.

107.   ~~109.~~The PSAs for the Barclays, C-BASS, Citigroup, and UBS Trusts also provide that the Servicer's failure to perform its covenant to prudently service the mortgage loans ripens into a Servicer Event of Default if left uncured for a specified period after a

Servicing Officer learns of such failures.

108. 110. As set forth above and in Exhibit G, when borrowers defaulted and the Servicers were required to commence foreclosures, they fabricated the documents necessary to foreclose rather than cause the Sponsor, Depositor, or Originator to repurchase or substitute the affected loan. The Trustees were Trustee was aware of this fact as they were it was aware of the contents of the document exception reports and that loans with exceptions had defaulted and not been repurchased or substituted. Both the Servicers and Trustees Trustee were aware that these loans were not put back to the Sponsors or Originators and, instead, as described in Exhibit G, the Servicers robo-signed the documentation required to foreclose. These acts of robo-signing were breaches of the applicable prudent servicing standard, as a prudent servicer would have insisted that the loans be repurchased. Having failed to provide notice, the Trustees Trustee had an obligation to act prudently to address all defaults.

109. 111. These Events of Default triggered Defendants U.S. Bank's duty to act prudently to protect the interests of the certificateholders in all respects, and such duty continues to this day because the document defects were not cured within the required period and the affected

loans were not repurchased. Defendants U.S. Bank had a continuing obligation to seek repurchase of loans missing required documentation throughout their tenures its tenure as Trustees Trustee, including as loans on the final exception report defaulted. Defendants U.S. Bank also had a duty to determine whether other defaulted loans should be put back to the responsible parties based on representation and warranty violations because an Event of Default had occurred. Defendants have U.S. Bank has repeatedly breached these duties throughout their tenures its tenure as Trustees Trustee.

**2.        Defendants U.S. Bank Received Written Notice of**

**Representation and Warranty Violations Which Ripened
into Events of Default**

110.   112.In addition to the Events of Default discussed above, on July 21, 2011, the

Association of Mortgage Investors ("AMI") notified all major RMBS trustees, (including

DefendantsDefendant) that "substantial evidence [] has emerged of abuses in the servicing and

monitoring of" RMBS. The letter set forth in detail the publicly available evidence demonstrating

that there was widespread evidence, including some of the evidence referenced in this Amended

Complaint, that loan Originators had systemically breached representations and warranties

provided to securitization trusts, and that the parties servicing loans underlying securitization

trusts had systemically breached their obligations under applicable servicing agreements. The

letter cautioned, "[y]ou cannot be negligent in ascertaining the pertinent facts regarding the

underlying collateral;" "[u]pon discovery of representation or warranty breaches, you have to notify

the appropriate parties;" and "you must comply with your obligations . . . to take action to remedy

the servicer Events of Default in the best interests of the certificateholders."

111.   113.Further, on or about December 15, 2011, a group of institutional investors

purporting to hold over 25 percent of the outstanding notes for four of the JPMorgan Trusts,

for which U.S. Bank serves as trustee, provided notice of numerous defaults by the Servicer,

Sponsor, and Originators, and requested that U.S. Bank open investigations into ineligible

mortgages in the pools securing the trusts. U.S. Bank determined it would enter into a settlement

agreement with the institutional investors on behalf of the JPMorgan Trust.

112.   114.Additionally, on April 7, 2014, a group of institutional investors announced an

agreement reached with Citigroup, Inc., under which Citigroup, Inc. made a binding offer to U.S.

Bank to settle mortgage repurchase claims related to the thirteen Citigroup Trusts at issue in this

action.

113.   ~~115.~~To date, U.S. Bank has not exercised due care to ensure that the certificateholders' interests are protected, and instead, agreed to settlements of repurchase liabilities for the Citigroup and JPMorgan Trusts that are grossly inadequate.

### 3. Events of Default Concerning False Servicer Certifications

114.   ~~116.~~Each PSA obligated the Servicer to certify annually that it met its obligations under the PSA and applicable federal regulations. For example, section 3.13(e) of the WaMu PSA requires the Servicer to certify, among other things, that:

> (i) a review of the Servicer's (or, in the case of a statement from any such other party, such other party's) activities during the preceding calendar year (or the applicable portion thereof in the case of the initial statement) and of its performance under this Agreement (or the servicing agreement applicable to such other party) has been made under such officer's supervision; and

> (ii) to the best of such officer's knowledge, based on such review, the Servicer (or such other party) has fulfilled all of its obligations under this Agreement (or the servicing agreement applicable to such other party) in all material respects throughout the preceding calendar year (or the applicable portion thereof) or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof.

The PSAs for the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS Trusts contain substantially similar requirements. *See* Ex. C § XV.

115.   ~~117.~~The failure to provide a conforming certification is an Event of Default under each of the PSAs. *See* Ex. C §§ IX, XII. Under the Barclays, C-BASS, Citigroup, and UBS PSAs, the Event of Default is triggered by the breach without regard to whether or not notice is provided. Under the remaining PSAs, ~~Defendants were~~U.S. Bank was not entitled to rely on certifications that ~~they~~it knew to be false and, thus, ~~Defendants~~U.S. Bank's failure to provide notice of breaches relating to false servicing certifications triggered ~~their~~its

post-Event of Default duties.

116.   118.DefendantsU.S. Bank received certifications that theyit knew to be false because the Servicers were not meeting their obligations under the PSAs and failed to disclose numerous representation and warranty violations. As discussed in Sections III(B)(1) and III(C), the Servicers breached the PSAs in many ways, including by attempting to foreclose on defective loans rather than tendering loans for repurchase or substitution and by looting trust assets through multiple servicing scams. As discussed in Section III(A), the Trustees wereTrustee was aware of numerous representation and warranty violations that were not disclosed in the required servicing certifications. The Trustees wereTrustee was aware of these breaches, and therefore, knew the required servicing certifications did not conform because they were false. The PSAs only allowed the TrusteesTrustee to rely upon the certifications if theyit had a good faith basis to believe the certifications were true. Events of Default were triggered as a result and DefendantsU.S. Bank had a continuing duty to act prudently to protect the certificateholders' interests.

117.   119.In addition, under the Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS PSAs, the Servicers provided a representation and warranty and/or covenant that all reports provided under the PSA, including servicing compliance certifications, were accurate and complete. For example, Section 2.08 of the DLJ PSA provides: "No written information, certificate of an officer, statement furnished in writing or written report delivered to the Depositor, any affiliate of the Depositor, the Certificate Insurer, the Trustee or the Trust Administrator and prepared by the Master Servicer or such Servicer pursuant to this Agreement will contain any untrue statement of a material fact." The Barclays, C-BASS, Citigroup, DLJ, EMC, First Franklin, Goldman Sachs, JPMorgan, Merrill Lynch, Morgan Stanley, and UBS PSAs contain

substantially similar provisions. *See* Ex. C § XIII. All the parties to the PSAs had a duty to provide notice of breach of this representation and warranty provision. The Servicers' failure to provide such notice resulted in Events of Default triggering ~~Defendants~~U.S. Bank's post- Event of Default duties.

### C.     ~~Defendants~~U.S. Bank Failed to Address the Master Servicers' and Servicers' Looting of Trust Assets

118.     ~~120.~~In addition to the servicing related defaults and Events of Default described above, the Servicers have engaged in a variety of schemes to overcharge borrowers in default. These scams have dramatically increased loss severities on defaulted mortgages and, as a result, dramatically increased Commerzbank's losses.

119.     ~~121.~~The chart below identifies each of the entities disclosed to be the Sponsors, Servicers, and Master Servicers of the loans included in the Covered Trusts.

|   | Trust | Sponsor | Servicer | Master Servicer |
|---|-------|---------|----------|-----------------|
| 1 | ABSHE 2005-HE8 | DLJ Mortgage Capital, Inc. | Select Portfolio Servicing, Inc. | Wells Fargo Bank, N.A. |
| 2 | ABSHE 2006-HE1 | DLJ Mortgage Capital, Inc. | Select Portfolio Servicing, Inc. | N/A |
| 3 | ABSHE 2006-HE5 | DLJ Mortgage Capital, Inc. | Option One Mortgage Corporation | N/A |
| 4 | BSABS 2005-EC1 | EMC Mortgage Corporation | EMC Mortgage Corporation | EMC Mortgage Corporation |
| 5 | BSABS 2005-HE10 | EMC Mortgage Corporation | EMC Mortgage Corporation | EMC Mortgage Corporation |
| 6 | BSABS 2005-HE4 | EMC Mortgage Corporation | EMC Mortgage Corporation | EMC Mortgage Corporation |

| | | | | |
|---|---|---|---|---|
| 7 | BSABS 2005-HE7 | EMC Mortgage Corporation | EMC Mortgage Corporation | EMC Mortgage Corporation |
| 8 | BSABS 2005-HE9 | EMC Mortgage Corporation | EMC Mortgage Corporation | EMC Mortgage Corporation |
| 9 | BSARM 2006-2 | EMC Mortgage Corporation | Countrywide Home Loans Servicing LP; Bank of America, N.A. | Wells Fargo Bank, N.A. |
| ~~10~~ | ~~CCMFC 2006-2~~ | ~~Chevy Chase Bank, F.S.B.~~ | ~~This information is not publicly disclosed.~~ | ~~Chevy Chase Bank, F.S.B.~~ |
| ~~11~~ 10 | CHASE 2006-A1 | Chase Home Finance LLC; J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | N/A |
| ~~12~~ 11 | CMLTI 2005-10 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans Servicing LP; GreenPoint Mortgage Funding, Inc.; National City Mortgage Company; PHH Mortgage Corporation; Wells Fargo Bank, N.A. | CitiMortgage, Inc. |
| ~~13~~ 12 | CMLTI 2005-HE1 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans Servicing LP; HomEq Servicing Corporation | CitiMortgage, Inc. |
| ~~14~~ 13 | CMLTI 2005-HE3 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans Servicing LP; JPMorgan Chase Bank, N.A.; HomEq Servicing Corp. | N/A |
| ~~15~~ 14 | CMLTI 2005-HE4 | Citigroup Global Markets Realty Corporation | Ocwen Loan Servicing, LLC | N/A |

| | | | | |
|---|---|---|---|---|
| ~~16~~ 15 | CMLTI 2006-AR7 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans Servicing LP; Fifth Third Bank; HomeBanc Mortgage Corporation; Wells Fargo Bank, N.A. | CitiMortgage, Inc. |
| ~~17~~ 16 | CMLTI 2006-NC2 | Citigroup Global Markets Realty Corporation | New Century Mortgage Corporation; Wells Fargo Bank; N.A. | N/A |
| ~~18~~ 17 | CMLTI 2006-WFHE2 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | N/A |
| ~~19~~ 18 | CMLTI 2006-WFHE3 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | N/A |
| ~~20~~ 19 | CMLTI 2006-WFHE4 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | N/A |
| ~~21~~ 20 | CMLTI 2007-AMC2 | Citigroup Global Markets Realty Corporation | GMAC Mortgage, LLC; Ocwen Loan Servicing, LLC; Countrywide Home Loans Servicing LP | Wells Fargo Bank, N.A. |
| ~~22~~ 21 | CMLTI 2007-AR1 | Citigroup Global Markets Realty Corporation | Countrywide Home Loans Servicing LP; Fifth Third Bank; GMAC Mortgage Corporation; Greenpoint Mortgage Funding, Inc.; HomeBanc Mortgage Corporation; PHH Mortgage Corporation; SunTrust Mortgage, Inc.; Wells Fargo Bank, N.A. | CitiMortgage, Inc. |
| ~~23~~ 22 | CMLTI 2007-WFHE1 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | N/A |
| ~~24~~ 23 | CMLTI 2007-WFHE2 | Citigroup Global Markets Realty Corporation | Wells Fargo Bank, N.A. | N/A |

| 25 24 | CSAB 2006-4 | DLJ Mortgage Capital, Inc. | Select Portfolio Servicing, Inc.; Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A. |
|---|---|---|---|---|
| 26 25 | FFMER 2007-2 | First Franklin Financial Corporation | Home Loan Services, Inc. | N/A |
| 27 26 | GSAA 2006-12 | Goldman Sachs Mortgage Company | Countrywide Home Loans Servicing LP; PHH Mortgage Corporation; GreenPoint Mortgage Funding, Inc.; National City Mortgage Company | JPMorgan Chase Bank, National Association |
| 28 27 | GSAA 2007-1 | Goldman Sachs Mortgage Company | Avelo Mortgage, L.L.C.; Countrywide Home Loans Servicing LP | Wells Fargo Bank, N.A. |
| 29 28 | GSAMP 2006-HE5 | Goldman Sachs Mortgage Company | Litton Loan Servicing LP; Avelo Mortgage, LLC; Select Portfolio Servicing, Inc. | Wells Fargo Bank, N.A. |
| 30 29 | GSAMP 2006-HE6 | Credit-Based Asset Servicing and Securitization LLC | Litton Loan Servicing LP | N/A |
| 31 30 | HEAT 2005-2 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A.; Select Portfolio Servicing, Inc. | N/A |
| 32 31 | HEAT 2005-4 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A.; Select Portfolio Servicing, Inc. | Wells Fargo Bank, N.A. |
| 33 32 | HEAT 2005-9 | DLJ Mortgage Capital, Inc. | Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A.; Select Portfolio Servicing, Inc. | N/A |

| | | | | |
|---|---|---|---|---|
| 34<br>33 | HEAT 2006-4 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A.; JPMorgan Chase Bank, National Association | N/A |
| 35<br>34 | HEAT 2006-6 | DLJ Mortgage Capital, Inc. | Wells Fargo Bank, N.A. | N/A |
| 36<br>35 | HEAT 2007-2 | DLJ Mortgage Capital, Inc. | Select Portfolio Servicing, Inc. | N/A |
| 37<br>36 | JPALT 2006-A6 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, National Association; Countrywide Home Loans Servicing LP; PHH Mortgage Corporation | Wells Fargo Bank, N.A. |
| 38<br>37 | JPALT 2007-S1 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | Wells Fargo Bank, N.A. |
| 39<br>38 | JPMAC 2005-FRE1 | J.P. Morgan Mortgage Acquisition Corporation | Litton Loan Servicing LP; Fremont Investment & Loan | N/A |
| 40<br>39 | JPMAC 2005-WMC1 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | N/A |
| 41<br>40 | JPMAC 2006-CH1 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | N/A |
| 42<br>41 | JPMAC 2006-CH2 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A. | N/A |
| 43<br>42 | JPMAC 2006-CW2 | J.P. Morgan Mortgage Acquisition Corporation | Countrywide Home Loans Servicing LP | Wells Fargo Bank, N.A. |

| 44 43 | JPMAC 2006-NC2 | J.P. Morgan Mortgage Acquisition Corporation | JPMorgan Chase Bank, N.A.; New Century Mortgage Corporation | N/A |
|---|---|---|---|---|
| 45 44 | MABS 2005-FRE1 | UBS Real Estate Securities Inc. | HomEq Servicing Corp. | N/A |
| 46 45 | MABS 2006-AM2 | UBS Real Estate Securities Inc. | Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A. |
| 47 46 | MABS 2006-AM3 | UBS Real Estate Securities, Inc. | Ocwen Loan Servicing, LLC | Wells Fargo Bank, N.A. |
| 48 47 | MABS 2006-NC2 | UBS Real Estate Securities Inc. | HomEq Servicing Corp. | Wells Fargo Bank, N.A. |
| 49 48 | MARM 2007-HF2 | UBS Real Estate Securities Inc. | Cenlar FSB; GMAC Mortgage, LLC; HomEq Servicing Corporation | Wells Fargo Bank, N.A. |
| 50 49 | MLMI 2006-AHL1 | Merrill Lynch Mortgage Lending Inc. | Wilshire Credit Corporation | N/A |
| 51 50 | MSM 2006-15XS | Morgan Stanley Mortgage Capital Inc. | GMAC Mortgage Corporation, LLC; GreenPoint Mortgage Funding, Inc.; The Hemisphere National Bank; PHH Mortgage Corporation; Fifth Third Mortgage Company | Wells Fargo Bank, N.A. |
| 52 51 | SABR 2006-WM1 | Barclays Bank PLC | Wells Fargo Bank, N.A. | N/A |
| 53 52 | SURF 2007-BC1 | Merrill Lynch Mortgage Lending Inc. | Wilshire Credit Corporation | N/A |

| | | | | |
|---|---|---|---|---|
| ~~54~~ <br> 53 | WAMU 2007-OA2 | Washington Mutual Bank | Washington Mutual Bank; Washington Mutual Mortgage Securities Corporation | N/A |
| ~~55~~ <br> 54 | WAMU 2007-OA6 | Washington Mutual Bank | Washington Mutual Bank; Washington Mutual Mortgage Securities Corp. | N/A |
| ~~56~~ <br> 55 | WMALT 2007-OA2 | Washington Mutual Mortgage Securities Corp. | Washington Mutual Bank Countrywide Home Loans, Inc. | Washington Mutual Mortgage Securities Corp. |
| ~~57~~ <br> 56 | WMALT 2007-OC1 | Washington Mutual Mortgage Securities Corporation | Washington Mutual Bank; Washington Mutual Mortgage Securities Corporation | N/A |

121.   ~~122.~~From 2005 until today, the Servicers have cheated borrowers and the Covered Trusts after default by, *inter alia*, charging improper and excessive fees (including, without limitation, fees for property maintenance prior to foreclosure), failing to properly oversee third-party vendors, failing to adhere to industry benchmarks for foreclosure proceedings, and procuring insurance policies for properties that were already insured.

122.   ~~123.~~When a defaulting borrower's home is foreclosed upon and sold, the Servicer deducts its fees (which defaulting borrowers are in no position to pay themselves) and any servicing advances from sale proceeds before any funds are transferred to the securitization trust that purportedly owned the mortgage loan and thus was entitled to the net sale proceeds.

123.   ~~124.~~These overcharges are unlawful and resulted in breaches under the PSAs because they do not meet the prudent servicing standard and were not disclosed in annual certifications provided by the Servicers. As noted in Sections III(B)(1) and III(B)(3), servicing related defaults known to the ~~Trustees~~Trustee triggered the ~~Trustees~~Trustee's duty

to act prudently. ~~Defendants were~~

U.S. Bank was aware of these servicing scams, which have been the subject of high profile government investigations, lawsuits, and press coverage, including articles in banking industry publications such as the *American Banker*.

124. ~~125.~~Exhibit H summarizes the servicing misconduct involving the relevant Servicers.

**IV.   ~~DEFENDANTS~~U.S. BANK SUFFERED FROM CONFLICTS OF INTEREST**

125. ~~126.Defendants~~U.S. Bank failed and unreasonably refused to take action to protect the Covered Trusts and certificateholders against Originator breaches and Servicer violations because doing so would have revealed that ~~Defendants were~~U.S. Bank was an active ~~participants~~participant in various servicing and origination-related misconduct and imperiled lucrative business relationships with the Originators and Servicers.

126. ~~127.~~If ~~Defendants~~U.S. Bank had met ~~their~~its obligations, it would have revealed that ~~they were~~U.S. Bank was the named ~~plaintiffs~~plaintiff in proceedings in which forged, perjured, or other improper evidence was introduced by ~~their~~its attorneys on ~~their~~its behalf. Thus, ~~Defendants~~U.S. Bank had a powerful incentive to keep secret the Sponsors' and Originators' malfeasance.

127. ~~128.Defendants have~~U.S. Bank has been involved in the same type of foreclosure misconduct in an attempt to cover up the fact that ~~they~~it failed to properly assign mortgages and transfer notes and mortgage loan files to the issuing trusts.

128. ~~129.~~During the fourth quarter of 2010, banking regulators reviewed the adequacy of controls and governance over ~~Defendants~~U.S. Bank's foreclosure processes.

The reviews uncovered significant problems in ~~Defendants~~U.S. Bank's foreclosure processing, including "critical weaknesses" in ~~Defendants~~U.S. Bank's foreclosure practices and oversight of default services vendors. *See* Interagency Review of Foreclosure Policies and Practices (Apr. 2011), *available at* http://www.federalreserve.gov/boarddocs/rptcongress/interagency_review_foreclosures_20110413.pdf.

129.   ~~130.~~On December 20, 2010, New Jersey Administrative Director of the Courts, Judge Grant, took the extraordinary step of issuing an administrative order requiring U.S. Bank to file certifications demonstrating that there were no irregularities in the handling of its foreclosure proceedings. *In re Residential Mortgage Foreclosure Pleading and Document Irregularities*, No. 01-2010 (Super. N.J. Dec. 20, 2011).

130.   ~~131.~~On April 13, 2011, based on the deficiencies in the review and the risk of additional issues as a result of weak controls and processes, the Federal Reserve Board

initiated formal enforcement actions requiring U.S. Bancorp, the corporate parent of U.S. Bank, to address its pattern of misconduct and negligence related to deficient practices in residential mortgage loan servicing and foreclosure processing. According to the Federal Reserve Board press release, "[t]hese deficiencies represent significant and pervasive compliance failures and unsafe and unsound practices at [U.S. Bancorp]." The enforcement action required U.S. Bancorp to improve its residential mortgage loan servicing and foreclosure practices. As part of the enforcement action, U.S. Bank entered into a consent order with the Federal Reserve Board, which found that U.S. Bank had engaged in "unsafe or unsound practices with respect to the manner in which [U.S. Bank] handled various foreclosure and related activities."

131. ~~132.~~Further, the Office of the Comptroller of the Currency entered into consent orders with ~~Defendants~~U.S. Bank and several other servicers (the "OCC Consent Orders"). In the OCC Consent Orders, the government found, among other things, that beginning in 2009, U.S. Bank ~~and Bank of America~~ filed false or otherwise defective affidavits in connection with foreclosure proceedings and failed to exercise adequate oversight, internal controls, policies and procedures, compliance risk management, internal audit, third-party management, and training for its foreclosure-related services. *See* ~~*In re Bank of Am., N.A.,*~~ ~~Consent Order, AA-EC-11-12 (Apr. 13, 2011), *available at* http://www.occ.gov/news-~~ ~~issuances/news-releases/ 2011/nr-occ-2011-47b.pdf;~~ *In re U.S. Bank N.A. and U.S. Bank N.A. ND*, Consent Order, AA-EC-11-18 (Apr. 13, 2011), *available at* http://www.occ.gov/news-issuances/news- ~~issuances/news-~~releases/2011/nr-occ-2011-47j.pdf.

~~133.On December 1, 2011, the Massachusetts Attorney General commenced an action~~ ~~against Bank of America (and others) alleging "rampant violations" of state law in foreclosure~~ ~~proceedings. Compl., *Massachusetts v. Bank of Am., N.A.*, No. 11-cv-4363 (Mass. Super. Ct.~~ ~~Dec. 1, 2011).~~

*132.* ~~134.~~In addition, in July 2012, the city of Los Angeles sued U.S. Bank for illegally foreclosing on 1,500 homes and blighting the city by allowing 150 foreclosed homes to fall into disrepair and demanded that U.S. Bank improve the conditions. *People of the State of California v.     U.S. Bank N.A.*, et al., Cal. Sup. Ct. No. BC488436 (Jul. 16, 2012) (involving Covered Trusts, CMLTI 2007-AMC2, JPALT 2006-A6, JPMAC 2005-FRE1, CMLTI 2006-WFHE4). The ~~Complaint~~

complaint states that U.S. Bank "disregarded virtually every one of its legal duties and responsibilities as owner, resulting in the creation and maintenance of an alarming number of vacant nuisance properties and substandard occupied housing units." Compl., *People of the State*

*of California v. U.S. Bank N.A.*, et al., Cal. Sup. Ct. No. BC488436 (Jul. 16, 2012) ¶ 7.

*133.*   135.Additionally, U.S. Bank paid $200 million following a Department of Justice ("DOJ") investigation of U.S. Bank's origination practices. According to the DOJ, U.S. Bank knowingly originated and underwrote FHA-insured mortgage loans from 2006 through 2011 that did not meet the necessary underwriting requirements. Press Release, Dep't of Just., Justice Department, U.S. Bank to Pay $200 Million to Resolve Alleged FHA Mortgage Lending Violations (June 30, 2014), *available at* http://www.justice.gov/opa/pr/us-bank-pay-200-million-resolve-alleged-fha-mortgage-lending-violations. U.S. Bank also admitted that it failed to identify deficiencies in FHA-insured loans, failed to report deficient loans, and did not take corrective action regarding the loans. *Id.*

134.   136.Because Defendants wereU.S. Bank was engaging in the same illicit and improper acts as the Servicers for the Covered Trusts, DefendantsU.S. Bank failed to enforce the Servicer violations, or even alert the certificateholders to the Servicers' misconduct.

135.   137.DefendantsU.S. Bank, as originatorsoriginator for other RMBS trusts, sold billions of dollars of loans, many of which materially breached representations and warranties. Many of the same banks or their affiliate entities that act as Sponsors to the Covered Trusts, similarly were the parties that sponsored the trusts that included loans originated by DefendantsU.S. Bank. Accordingly, because Defendants themselvesU.S. Bank itself faced enormous repurchase liability for loans sold in breach of representations and warranties, including loans in RMBS trusts sponsored by the same

Sponsors of the Covered Trusts, Defendants wereU.S. Bank was disincentivized to take any action against the Servicers for the Covered Trusts, or even alert the certificateholders to Servicer misconduct.

136.   138.Exhibits F, G, and H contain additional details concerning

Defendants U.S. Bank's misconduct in servicing and originating residential mortgage

loans.

**V.       ~~DEFENDANTS~~U.S. BANK'S CONDUCT INJURED COMMERZBANK**

137.   139.Defendants U.S. Bank's breaches of their its contractual, statutory, and

fiduciary duties have caused Commerzbank hundreds of millions of dollars in losses.

138.   140.If Defendants U.S. Bank had performed their its duties as trustees trustee,

they it would have enforced the obligations of the Sponsors and Originators and caused them to

buy back, or replace with non- defective loans, the vast majority, if not all, of the loans that

ultimately defaulted and caused Commerzbank's losses. And if Defendants U.S. Bank had

enforced these repurchase or substitution obligations, as they were it was required to do, the

Certificates would have retained their market value, as highly-rated bonds with similar coupon

rates are now trading at a very significant premium.

139.   141.Defendants U.S. Bank's' failure to address the Servicers' failures to adhere

to prudent servicing practices also increased the loss severities (i.e., the amount of principal

loss caused by defaults) on defaulted loans dramatically. The extended foreclosure timelines

that resulted from document delivery failures and the robo-signing scandal resulted in

increased servicing fees, increased property taxes and utility expenditures, which were borne

by the Covered Trusts, a decline in value of the underlying properties, and ultimately less sale

proceeds for the Covered Trusts and certificateholders. The overcharging for default-related

services and force-placed insurance further increased loss severities as those overcharges

were collected by the Servicers from foreclosure sale proceeds.

140.   142.If Defendants U.S. Bank had met their its contractual, statutory, and

fiduciary duties to accept delivery of notes and mortgage loan files, inspect them, give

notice as required, and issue accurate certifications, it would have caused the Sponsors or

Originators to substitute or repurchase all loans where the Servicers, Sponsors, Depositors,

and Originators failed to deliver required documentation to the Trustee or breached

representations and warranties regarding the mortgage loans. This would have included

numerous loans that had already defaulted or would ultimately default. Moreover,

~~Defendants~~U.S. Bank's failure to take delivery of complete note and mortgage files or

adequately inspect them has placed a cloud over title and has limited the Covered Trusts'

ability to efficiently foreclose on properties underlying the Covered Trusts, which has

impacted the market value of the Certificates. Additionally, ~~Defendants~~

U.S. Bank's failure to commence damages actions against the Servicers caused further

losses and emboldened these parties to continue their lucrative servicing scams.

141.    143.~~Defendants~~U.S. Bank's breaches with respect to the Sold Certificates

significantly reduced the sale price Commerzbank ultimately received when it divested itself

of the Certificates. When the sales were made it was apparent that ~~Defendants~~U.S. Bank had

breached ~~their~~its duties and would not take steps to remedy ~~their~~its failures. The sales of the

Sold Certificates were made by London Branch and the economic losses from those sales

were experienced in Commerzbank in England where London Branch is located and/or in

Germany where Commerzbank is located. The sale of the Sold Certificates did not include the

assignment of any of Commerzbank's legal claims, and therefore Commerzbank has retained

all of its legal claims against ~~Defendants.~~U.S. Bank.

142.    144.~~Defendants~~U.S. Bank's failure to meet ~~their~~its contractual, fiduciary,

statutory, and common law duties once ~~they~~it became aware of defaults relating to the

numerous representation and

warranty breaches by the Sponsors or Originators further caused harm. If ~~Defendants~~U.S.

Bank had provided notice of representation and warranty violations and defaults and acted with due care as ~~they were~~it was required to do upon the occurrence of a default or Event of Default, ~~they~~it would have caused the Sponsors or Originators to repurchase loans and required the Servicers to replace the assets they have looted from the Covered Trusts.

143.  ~~145.~~Many, if not all, of the repurchase or substitution claims described above have lapsed due to ~~Defendants~~U.S. Bank's inaction as courts have held that the underlying representation and warranty claims that ~~Defendants~~U.S. Bank failed to pursue accrued for statute of limitations purposes on the date of the closing of the relevant securitizations.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION[7]
### (Violations of the TIA)

144.  ~~146.~~Commerzbank repeats and realleges each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

145.  ~~147.~~The PSAs underlying and establishing the Covered Trusts are "indentures," and ~~Defendants are~~U.S. Bank is an "indenture ~~trustees~~trustee" under the TIA. 15 U.S.C. § 77aaa(7), (10).

146.  ~~148.~~As a certificateholder, Commerzbank is a trust beneficiary entitled to the protections afforded under the TIA.

147.  ~~149.~~The TIA applies to the PSAs and the related Certificates. 15 U.S.C. § 77ddd(a)(1).

148.  ~~150.Defendants~~U.S. Bank violated the TIA in at least three ways.

---

[7] Plaintiff acknowledges that the Court in its September 27, 2017 Opinion & Order [ECF No. 135] dismissed Plaintiff's claims for (i) Breach of the Implied Covenant of Good Faith and Fair Dealing, (ii) Streit Act violations,

(ii)   Trust Indenture Act violations; and (iv) breach of contract claims with respect to certain Trusts. Plaintiff includes these claims for the purpose of reserving its right to appeal the dismissed claims and reassert them to the extent there are any further developments in the law.

149.   ~~151.~~First, TIA Section 315(b) provides that the indenture trustee must notify certificateholders of "all defaults known to the trustee, within ninety days after the occurrence thereof." 15 U.S.C. § 77ooo(b) (citing 15 U.S.C. § 77mmm(c)). As set forth above, ~~Defendants~~U.S. Bank failed to carefully investigate serious, known issues with the loans in the Covered Trusts, or to notify certificateholders of numerous defaults, including the failure of the responsible parties to cure, repurchase, or substitute mortgage loans with defective mortgage files and mortgage loans affected by breaches of representations and warranties.

150.   ~~152.~~Second, in the case of defaults (as that term is defined in the indenture), the TIA requires the trustee to exercise its rights and powers under the governing agreement as a "prudent man would exercise or use [them] under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c). Here, as set forth above, ~~Defendants~~U.S. Bank did not act prudently after learning of numerous serious issues related to material breaches of representations and warranties and servicer defaults and Events of Default. A prudent person would have taken action to investigate these issues carefully, pursue repurchase remedies, and cure defective mortgage loans. In addition, a prudent person would have taken action against the responsible parties for the failure to properly execute and deliver mortgage file documents.

151.   ~~153.~~Finally, the TIA states that "[n]otwithstanding any other provision of the indenture to be qualified, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security . . . shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b). ~~Defendants have~~U.S. Bank has impaired the ability of the Covered Trusts, and consequently the certificateholders, to receive payment in connection with defective mortgage loans for which ~~they~~it failed to take action to correct. In addition, ~~Defendants~~

~~have~~U.S. Bank has impaired

the ability of the Covered Trusts, and consequently the certificateholders, to receive payment by

failing to enforce the repurchase remedy.

152.   ~~154.~~These breaches materially and adversely affected the interests of the

certificateholders, including Commerzbank, because they resulted in the Covered Trusts being

burdened with large numbers of defective loans that should have been put back to the responsible

parties.

153.   ~~155.Defendants are~~U.S. Bank is liable to Commerzbank for damages incurred

as a result of ~~Defendants~~U.S. Bank's violations of the TIA in an amount to be determined at

trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

154.   ~~156.~~Commerzbank repeats and realleges each and every allegation set forth in

the preceding paragraphs above as if fully set forth herein.

155.   ~~157.~~The PSAs are valid and binding contracts entered into between

~~Defendants~~Defendant (or the predecessor trustee), each Covered Trust, the Sponsors, the

Servicers, and the Depositors.

156.   ~~158.~~The PSAs provide, among other things, the terms under which ~~Defendants~~

~~act~~Defendant acts as ~~Trustees~~Trustee for the Covered Trusts.

157.   ~~159.~~As current and/or former holders of Certificates or Notes issued by each

Covered Trust, Commerzbank is or was an express, intended third-party beneficiary under

the PSAs entitled to enforce the performance of the ~~Trustees~~Trustee.

158.   ~~160.Defendants~~U.S. Bank breached several obligations that ~~they~~it

undertook on behalf of Commerzbank as certificateholder including, without

limitation, to:

    (a) take steps to cause the Sponsors or Originators to repurchase loans eligible for repurchase;

    (b) investigate and give notice to all parties to the PSAs of the breach of representations and warranties relating to the mortgage loans once ~~they~~it discovered the Sponsors' and Originators' widespread practice of including in securitization trusts loans which breached such representations and warranties;

    (c) make prudent decisions concerning the exercise of appropriate remedies following Events of Default;

    (d) provide notice of and take steps to remedy the Servicers' failure to adhere to prudent servicing standards and otherwise perform their obligations under the PSAs; and

    (e) enforce the repurchase obligations of the Sponsors and/or Originators.

159.    ~~161.~~The specific provisions breached by ~~Defendants~~U.S. Bank are further detailed herein and in the Exhibits hereto.

160.    ~~162.Defendants~~U.S. Bank's breaches of ~~their~~its duties set forth in the PSAs, as described above, caused Commerzbank's losses on its Certificates and diminished their value.

161.    ~~163.~~Commerzbank has performed its obligations under the PSAs.

162.    ~~164.Defendants are~~U.S. Bank is liable to Commerzbank for the losses it suffered as a direct result of ~~Defendants~~U.S. Bank's failures to perform ~~their~~its contractual obligations under the PSAs.

### THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

163.    ~~165.~~Commerzbank repeats and realleges each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

164.    ~~166.~~As set forth in detail above, ~~Defendants~~U.S. Bank owed certificateholders, including Commerzbank, a fiduciary duty to act in good faith, avoid conflicts of interest when

performing the obligations set forth in the PSAs, and to exercise all powers under the PSAs

prudently to protect certificateholders' rights once an Event of Default occurred or payments

to certificateholders became impaired. This included, without limitation, duties to protect

the interests of the beneficiaries of the Covered Trusts, make prudent decisions concerning

the exercise of appropriate remedies following Events of Default, and enforce the repurchase

obligations of the Sponsors and/or Originators.

165.    167. As set forth in detail above, ~~Defendants~~U.S. Bank breached ~~their~~its

fiduciary obligations by failing to perform these obligations and by failing to exercise due

care and avoid conflicts of interest.

166.    168. The violations by ~~Defendants~~U.S. Bank of ~~their~~its fiduciary obligations
impaired

certificateholders' ability to fully collect the principal and interest due on their Certificates

and caused losses in the value of Commerzbank's Certificates.

## FOURTH CAUSE OF ACTION
### (Negligence—Failure to Avoid Conflicts of Interest and
Perform Ministerial Acts with Due Care)

167.    169. Commerzbank repeats and realleges each and every allegation set forth in

the preceding paragraphs above as if fully set forth herein.

168.    170. ~~Defendants~~U.S. Bank owed certificateholders, including Commerzbank,

extra- contractual duties to perform ministerial acts with due care and avoid conflicts of

interests. As described above, ~~Defendants~~U.S. Bank performed or failed to perform ~~their~~its

responsibilities in a grossly inadequate and negligent manner.

169.    171. ~~Defendants~~U.S. Bank's negligence and gross negligence impaired

certificateholders' ability to fully collect the principal and interest due on their Certificates

and caused losses in the value of Commerzbank's Certificates.

**FIFTH CAUSE OF ACTION**
**(Violation of the Streit Act)**

170.   ~~172.~~Commerzbank repeats and realleges each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

171.   ~~173.~~As a certificateholder, Commerzbank is a trust beneficiary entitled to the protections afforded under the Streit Act. The Streit Act was enacted to provide for the proper administration of mortgage trusts and requires that the trustee must exercise due care in performing its obligations. N.Y. Real Prop. Law § 124.

172.   ~~174.~~The Certificates are "mortgage investments" subject to the Streit Act. N.Y. Real Prop. Law § 125(1).

173.   ~~175.~~The PSAs underlying and establishing the Covered Trusts are "indentures," and ~~Defendants are "trustees~~U.S. Bank is a "trustee" under the Streit Act. N.Y. Real Prop. Law § 125(3).

174.   ~~176.~~Section 126(1) of the Streit Act provides that upon an "event of default" the indenture trustee must exercise such of the rights and powers vested in it by the indenture, and must use the same degree of care and skill in its exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

175.   ~~177.~~As set forth above, ~~Defendants~~U.S. Bank failed to exercise ~~their~~its rights under the PSAs after becoming aware of "events of default" by failing to:

    (a) protect the interests of the beneficiaries of the Covered Trusts;

    (b) take steps to cause the Sponsors or Originators to repurchase loans lacking adequate documentation;

    (c) investigate and give notice to all parties to the PSAs of the breach of representations and warranties relating to the mortgage loans once ~~they~~it discovered the Sponsors' and Originators' widespread practice of including in securitization trusts loans which breached such representations and warranties;

    (d) make prudent decisions concerning the exercise of appropriate remedies following Events of Default;

    (e) provide notice of and take steps to remedy the Servicers' failure to adhere to prudent servicing standards and otherwise perform their obligations under the PSAs; and

    (f) enforce the repurchase obligations of the Sponsors and/or Originators.

176. ~~178.Defendants are~~U.S. Bank is liable to Commerzbank for damages incurred as a result of ~~Defendants~~U.S. Bank's violations of the Streit Act.

### SIXTH CAUSE OF ACTION
**(Breach of the Covenant of Good Faith)**

177. ~~179.~~Commerzbank repeats and realleges each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

178. ~~180.~~At all relevant times, ~~Defendants~~U.S. Bank owed Commerzbank, as an express, intended third-party beneficiary under the PSAs, a duty of good faith and fair dealing pursuant to the PSAs that required ~~Defendants~~U.S. Bank to ensure that ~~they~~it did not, by act or omission, injure the rights of Commerzbank to receive the benefits and protections provided for under the PSAs.

179. ~~181.~~By the conduct described above, ~~Defendants~~U.S. Bank breached ~~their~~its duty of good faith and fair dealing under the PSAs.

180. ~~182.Defendants~~U.S. Bank's breaches are material.

181. ~~183.~~As a result of these breaches, Commerzbank has suffered damages and will continue to suffer damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** Commerzbank prays for relief and judgment, as follows:

    A. Awarding compensatory damages and/or equitable relief in favor of Commerzbank against ~~Defendants~~U.S. Bank for breaches of ~~their~~its statutory,

contractual, and fiduciary duties, ~~their~~its gross negligence, ordinary negligence, and

negligent misrepresentations, in an amount to be proven at trial, including interest

thereon;

B.     Awarding Commerzbank its reasonable costs and expenses incurred in this

action, including counsel fees and expert fees; and

C.     Such other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

~~Commerzbank~~Plaintiff hereby demands a trial by jury on all issues triable by jury.


~~Dated: December 28, 2015~~By:  ~~/s/ Jean Geoppinger McCoy~~                            ~~David P. Kamp~~
~~Jean Geoppinger McCoy WHITE, GETGEY & MEYER CO., L.P.A.~~Dated: February [_], 2020
                                     By: /s/
                                     ~~1700 Fourth & vine Tower~~
                                     ~~One West Fourth Street~~
                                     ~~Cincinnati, OH 45202~~
                                     ~~dkamp@wgmlpa.com~~
                                     ~~jmccoy@wgmlpa.com~~
                                     ~~Telephone: (513)~~
                                     ~~241-3685 Fax: (513)~~
                                     ~~241-2399~~
                                     *Attorneys for Plaintiff*


~~*OF COUNSEL:*~~

                                     David H. Wollmuth
                                     Steven S. Fitzgerald
                                     Ryan A. Kane
                                     ~~Robert T~~Philip R.
                                     ~~Franciscovich~~
                                     ~~Melissa A.~~
                                     ~~Finkelstein Wollmuth~~
                                     ~~Maher~~Schatz
                                     Roselind F. Hallinan
                                     WOLLMUTH MAHER & ~~Deutsch~~DEUTSCH
                                     LLP
                                     500 Fifth Avenue New York, New York 10110
                                     Phone: (212) 382-3300 Fax: (212) 382-0050

85

dwollmuth@wmd-law.com
sfitzgerald@wmd-law.com rkane@wmd-law.com
rhallinan@wmd-law.com

Document comparison by Workshare 10.0 on Wednesday, February 19, 2020
1:01:45 PM

| Input: | |
|---|---|
| Document 1 ID | file://O:\4000-4499 Client Series\4376 Commerzbank\004 US Bank\Court Docs\Pleadings\Amended Complaint\Commerzbank v  U S  Bank Complaint (Final).pdf |
| Description | Commerzbank v  U S  Bank Complaint (Final) |
| Document 2 ID | file://O:\4000-4499 Client Series\4376 Commerzbank\004 US Bank\Court Docs\Pleadings\Amended Complaint\Commerzbank v. USB - Amended Complaint (Final).pdf |
| Description | Commerzbank v. USB - Amended Complaint (Final) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 705 |
| Deletions | 664 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |

| | |
|---|---|
| Format changed | 0 |
| Total changes | 1371 |