UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMMERZBANK AG,

                   Plaintiff,

                   -against-

U.S. BANK NATIONAL ASSOCIATION,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

16cv4569

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Commerzbank AG ("Commerzbank") moves for reconsideration, (ECF No. 399), of this Court's comprehensive Opinion and Order granting in part and denying in part Defendant U.S. Bank National Association's ("U.S. Bank") motion for summary judgment, see Commerzbank AG v. U.S. Bank Nat'l Ass'n, 457 F. Supp. 3d 233 (S.D.N.Y. 2020). In deciding the summary judgment motion, this Court observed that the parties submitted "a staggering 1,274 pages of factual assertions supported by 1,049 exhibits." Commerzbank, 457 F. Supp. 3d at 238. Now, adding to the pile, Commerzbank seeks to relitigate the motion. Alternatively, Commerzbank seeks interlocutory appeal or certification of a question to the Ohio Supreme Court. For the following reasons, Commerzbank's motion is denied.

## BACKGROUND

        This Court assumes familiarity with its prior Opinions and Orders and summarizes only the facts necessary to decide this motion. See Commerzbank, 457 F. Supp. 3d at 238–40; Commerzbank AG v. U.S. Bank Nat'l Ass'n, 277 F. Supp. 3d 483, 487–89 (S.D.N.Y. 2017).

1

Apparently dissatisfied with this Court's ruling, Commerzbank moves for reconsideration. (See ECF No. 399.) Ignoring that reconsideration is not an invitation to relitigate a motion that was fully briefed and argued, Commerzbank seeks to relitigate three separate rulings. First, Commerzbank takes issue with this Court's determination that New York law governs the sale of certain certificates sold by Commerzbank. Second, Commerzbank contends that this Court overlooked documentary evidence regarding Commerzbank's ownership of the Duke Repo Certificates. Finally, Commerzbank argues that this Court mistakenly invoked—and misapplied—German law with respect to the statute of limitations and then misapplied it.

## DISCUSSION

I. Motion for Reconsideration

    A. Legal Standard

A motion for reconsideration under Local Rule 6.3(a) "should be granted only when the [the moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted). The Second Circuit instructs that "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," a motion for reconsideration should generally be denied. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Van Buskirk v. United Grp. of Companies, Inc., 935 F.3d 49, 54 (2d Cir. 2019) ("[R]econsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority.").

A motion for reconsideration is not an opportunity to "relitigat[e] old issues, present[] the case under new theories, secur[e] a rehashing on the merits, or otherwise tak[e] a second bite at the apple." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 145 (2d Cir. 1998) (quotation marks omitted). Practically speaking, this means that a movant "cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been considered." Koehler v. Bank of Berm. Ltd., 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (emphasis omitted). The arguments available on a motion for reconsideration are limited because "Rule 6.3 is intended to ensure the finality of decisions and to prevent the practice of a losing party examining a decision then plugging the gaps of a lost motion with additional matters." SEC v. Ashbury Capital Partners, L.P., 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quotation marks omitted). As such, "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dietrich v. Bauer, 198 F.R.D. 397, 399 (S.D.N.Y. 2001).

The decision to grant or deny the motion "is within the sound discretion of the trial court." McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018); accord Hosokawa v. Screen Actors Guild-Am., Fed'n of Television & Radio, Artists, 2017 WL 5508454, at *1 (S.D.N.Y. Mar. 20, 2017).

    B. Sold Certificates

        1. Which Conflict-of-Law Test this Court Should Apply

To begin, Commerzbank argues that this Court erred in determining that New York law governs the sold certificates. However, Commerzbank's motion for reconsideration merely parrots back arguments made in its initial briefing. (Compare Pls.'s Mem. of L. in Supp. of Reconsideration, ECF No. 400 ("Commerzbank Reconsideration MOL"), at 2–4, with Pls.'s

3

Mem. of L. in Opp'n to Summ. J., ECF No. 322 ("Commerzbank SJ Opp'n"), at 5–6.) While this alone is sufficient grounds for this Court to deny the motion, see Sequa Corp., 156 F.3d at 145, Commerzbank also fails on the merits.

Commerzbank avers that this Court erred by applying the tort conflict analysis, rather than the contract conflict analysis. But Commerzbank's own reconsideration briefing notes that the test this Court utilized, "the Second Restatement's 'most significant relationship' test[,] applies to both [tort and contract] claims." (Commerzbank Reconsideration MOL, at 3 (citing Estate of Sample v. Xenos Christian Fellowship, Inc., 139 N.E.3d 978, 984 (Ohio Ct. App. 2019).)

Undeterred, Commerzbank asserts that this Court should have afforded a different weight to these factors. But this Court followed clear precedent from the Ohio Supreme Court on how to apply the "most significant relationship" factors. See Commerzbank, 457 F. Supp. 3d at 242 ("'Generally, Ohio follows the rule that where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed governs.'" (quoting Gries Sports Enter., Inc. v. Modell, 473 N.E.2d 807, 810 (1984) (emphasis added)). Following the Ohio Supreme Court's guidance, this Court ruled the sale of the certificates was performed in New York, at the Depository Trust Company ("DTC"). Commerzbank offers no reason why this Court should deviate from this controlling law.

2. Applying Ohio's Conflict-of-Law Test

Commerzbank next argues that even if this Court utilized the correct test, this Court misapplied it to find that New York law, rather than English law, controlled. In support of this proposition, Commerzbank launches a barrage of stale arguments this Court already addressed in its summary judgment decision. (Compare, e.g., Commerzbank Reconsideration MOL, at 4–8, with Commerzbank SJ Opp'n, at 4–5.)

4

First, Commerzbank challenges this Court's citation to a Delaware Chancery Court opinion because the Chancery Court considered other factors in addition to clearing through DTC. (See Commerzbank Reconsideration MOL, at 6.) But this ignores three critical facts. First, this Court explicitly noted that the Chancery Court looked to additional factors. See Commerzbank, 457 F. Supp. 3d at 243 (S.D.N.Y. 2020) ("finding that New York had the most significant relationship in part because 'the physical location of the Certificates at the Depository Trust Company [was] located in New York'" (quoting Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC, 2015 WL 139731, at *10 (Del. Ch. Jan. 12, 2015) (emphasis added))). Second, the Chancery Court's opinion was well-reasoned even though it was not officially published. Finally, this Court's citation to Bear Stearns Mortgage Funding merely buttressed the other sounds reasons supporting its ruling. See Commerzbank, 457 F. Supp. 3d at 242–43.

Next, Commerzbank cites a litany of cases to argue that settlement through DTC should not guide this Court's analysis. (See Commerzbank Reconsideration MOL, at 5.) But none of these cases apply Ohio law. See Pac. Life Ins. Co. v. Bank of N.Y. Mellon, 2018 WL 1382105, at *16 (S.D.N.Y. Mar. 16, 2018) (applying California's "center of gravity" test); Sealink Funding Ltd. v. UBS AG, 997 N.Y.S.2d 101 (Sup. Ct. N.Y. Cty. 2014) (parties agreeing English law applies); Sealink Funding Ltd. v. Morgan Stanley, 2014 WL 1511156, at *3–*7 (Sup. Ct. N.Y. Cty. Apr. 17, 2014) (parties agreeing English law applies). Nor is Commerzbank's reliance on In re Petrobras Securities Litigation persuasive. 152 F. Supp. 3d 186 (S.D.N.Y. 2016). There, the court was not using Ohio's choice-of-law test to determine what law applies to the transfer of RMBS certificates. Instead, the court addressed whether plaintiffs purchased notes in a domestic transaction, as required to bring a suit in the United

5

States under Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010) and its progeny. In re Petrobras, 152 F. Supp. 3d at 193.

Commerzbank also reiterates that it is not a DTC participant. But this ignores the fact that Commerzbank trades through a wholly-owned subsidiary, which is a DTC participant. (See U.S. Bank's Reply and Resp. to Commerzbank's Counter-Statement of Undisputed Facts Pursuant to Local Rule 56.1, ECF No. 347, ¶¶ 65.3–65.6.)

Additionally, Commerzbank challenges this Court's finding that Commerzbank did not sell certificates out of its London branch. But this argument misses the mark. This Court merely noted that, a bank's branch is not a separate legal entity from the bank. See Commerzbank, 457 F. Supp. 3d at 242–43. The fact that the cited cases deal with tort law do not change that analysis. Moreover, such a finding was not necessary to support this Court's holding. Even if Commerzbank's London branch was a separate legal entity, it would not change the fact that the certificates were sold through the DTC in New York.

Finally, this Court is not persuaded by Commerzbank's histrionics about globalizing New York's standing rule. This rule only applies as a result of the Ohio choice-of-law test in instances where parties cleared their RMBS transactions through the DTC. Every one of these arguments was previously advanced—and rejected—at summary judgment. As such, Commerzbank fails to meet its burden for reconsideration of this Court's ruling on the sold certificates.

C. Duke Repo Certificates

Commerzbank next challenges this Court's ruling that Commerzbank sold a tranche of certificates[1] and lacks standing. It is worth noting that there is significant overlap between the Duke Repo Certificates and certificates which Commerzbank otherwise sold. Indeed, CMLTI 2005-10, 1A34 and CMLTI 2006-AR7, 1A3B are the only Duke Repo Certificates that were not sold. Because this Court already ruled that Commerzbank lacks standing as to certificates Commerzbank otherwise sold, Commerzbank, 457 F. Supp. 3d at 243, this Court focuses on CMLTI 2005-10, 1A34 and CMLTI 2006-AR7, 1A3B for the purpose of this motion.

In its summary judgment briefing, Commerzbank was only able to point to an undated spreadsheet that it claimed demonstrated that the Duke Repo Certificates were transferred back to Commerzbank. (See Decl. of Ryan A. Kane in Opp. of U.S. Bank's Mot. for Summ. J., ECF No. 328 ("Kane Decl."), Ex. 129.) However, because the spreadsheet was undated, "this Court [could not] discern if . . . Commerzbank held the Duke Repo Certificates before or after the execution of the tri-party repo transaction." Commerzbank, 457 F. Supp. 3d 233, 244 (S.D.N.Y. 2020).

Commerzbank now argues that this Court "overlooked other evidence that Commerzbank held the Duke Repo Certificates well after November 2007." (Commerzbank Reconsideration MOL, at 9.) However, Commerzbank's summary judgment opposition brief was bereft of any discussion of this evidence.[2] (See generally Commerzbank SJ Opp'n.) Buried

---

[1] Those certificates are BSARM 2006-2, A3A; CMLTI 2005-10, 1A34; CMLTI 2006-AR7, 1A3B; JPALT 2006-A6, 2A8; MABS 2006-AM2, A4; MABS 2006-AM3, A4; and SABR 2006-WM1, A2C (collectively, the "Duke Repo Certificates").

[2] Indeed, Commerzbank only utilized approximately half a page—of its 45-page opposition—to discuss the Duke Repo Certificates at all. (See Commerzbank SJ Opp'n, at 7.)

7

in Commerzbank's 56.1—but not cited in its briefing—is some evidence that, in Commerzbank's view, demonstrates that Commerzbank held the Duke Repo Certificates after the November 2007 tri-party repo transaction.

Commerzbank begins by pointing to Kane Decl. Ex. 130, which is an email containing an attachment dubbed "Duke asset list 31 Aug 2010 - Derecognition Prices.xls." However, this Court is unable to decipher this document. It contains identifications such as "ISIN code," "system book," "Ticket number (key)," "Security mnemonic," and "Repo reference number." But none of these of these identifiers clearly relate to the two specific Duke Repo Certificates at issue. Nor has Commerzbank made any effort to explain the connection. Instead, Commerzbank merely relies on the title of the document. But that fails to show whether each specific certificate was returned to Commerzbank after the tri-party repo transaction.

Commerzbank next points to trade tickets that it avers demonstrate Commerzbank's later ownership of the Duke Repo Certificates. (See Kane Decl. Ex. 56.) Again, there was no mention of this in its summary judgment opposition brief. These trade tickets are also difficult to decipher because they do not list the names of the certificates that the parties have used in this litigation. In an effort to assist this Court, Commerzbank provides Kane Decl. Ex. 7, a chart its counsel created to assist this Court. That chart compiles trade tickets for any sold certificates in Kane Decl. Ex. 56. However, CMLTI 2005-10, 1A34 and CMLTI 2006-AR7, 1A3B—the only relevant Duke Repo Certificates—are not included on that chart. And this Court was unable to independently locate trade tickets for CMLTI 2005-10, 1A34 and CMLTI 2006-AR7, 1A3B within Kane Decl. Ex. 56.

Finally, Commerzbank offers to provide this Court with more information regarding the undated spreadsheet that it offered initially, (Kane Decl. Ex. 129). According to

8

Commerzbank, the spreadsheet contains a tab with the header "Total PRU Portfolio: Qtr 3 2009." However, even if this spreadsheet was dated at the close of the third quarter in 2009, Kane Decl. Ex. 129 suffers from similar infirmities to Kane Decl. Ex. 130. The spreadsheet contains identifications such as "Finance Unique ID," "PRU Position List No. (v9.1)," "FU Code," "FU Name," "Mistral ID," "ISIN," and "DealID." (Kane Decl. Ex. 129.) As with Kane Decl. Ex. 130, Commerzbank does not identify nor can this Court determine which entries relate to either CMLTI 2005-10, 1A34 or CMLTI 2006-AR7, 1A3B. As such, Commerzbank fails to bring forth evidence that this Court clearly erred.

### D. Statute of Limitations

#### 1. Which Borrowing Statute Test this Court Should Apply

Commerzbank asserts that this Court applied the incorrect borrowing statute test. Specifically, Commerzbank argues that the portion of Taylor v. First Resolution Inv. Corp. that on which this Court relied, discussed New York's, not Ohio's, borrowing statute. 72 N.E.3d 573, 587 (Ohio 2016). From there, Commerzbank argues that this Court should have followed Jarvis v. First Resolution Mgmt. Corp., which applied the "most significant relationship" test rather than the "place of injury" test. 983 N.E.2d 380, 387 (Ohio Ct. App. 2012).

There are two glaring flaws in Commerzbank's argument. First, in Taylor, the Ohio Supreme Court reviewed the Ohio Court of Appeals decision in Jarvis—the case Commerzbank asks this Court follow. Surely Commerzbank understands that the Ohio Supreme Court reviews decisions of intermediate Ohio appellate courts. Second, Commerzbank misreads Taylor. While, Commerzbank correctly notes that the sentence this Court quoted from Taylor originates from a New York case, had it read further, it would have learned that the Ohio Supreme Court went on to "follow [its] own precedent and that of New York's highest court and

9

the cited federal courts and hold that the cause of action against [defendant] for her failure to pay the debt accrued in the jurisdiction where the debt was to be paid, Delaware." Taylor, 72 N.E.3d at 587–88.[3]

### 2. German Statute of Limitations

Commerzbank proceeds to argue that even if this Court properly invoked the German statute of limitations, it misapplied German law in determining that Commerzbank's claims were untimely. Commerzbank's sole argument is a recitation of its assertion that each successive breach should restart the statute of limitations. (Compare Commerzbank Reconsideration MOL, at 15, with Commerzbank SJ Opp'n, at 10–11.) But, as outlined in this Court's Opinion and Order, that is not how the German statute of limitations operates. Rather, the clock runs "(1) when the breach occurred, and (2) when the plaintiff has knowledge of the claims." Commerzbank, 457 F. Supp. 3d at 246 (quoting Commerzbank AG v. Deutsche Bank Nat'l Tr. Co., 234 F. Supp. 3d 462, 472 (S.D.N.Y. 2017).

None of the decisions Commerzbank cites—and cited in its summary judgment opposition—state that additional breaches restart the statute-of-limitations clock under German law. (Compare, Commerzbank Reconsideration MOL, at 15, with Commerzbank SJ Opp'n, at 9.)) Rather, those decisions discuss the fact that the German statute of limitations begins once a plaintiff has sufficient knowledge of its claims. See Commerzbank AG v. Deutsche Bank Nat'l Tr. Co., 234 F. Supp. 3d 462, 473 (S.D.N.Y. 2017); Commerzbank AG v. Bank of N.Y. Mellon, 2017 WL 1157278, at *3 (S.D.N.Y. Mar. 21, 2017); BlackRock Allocation Target Shares: Series

---

[3] In a letter notifying this Court of supplemental authority, (ECF No. 419), Commerzbank points to a recent decision by the Ohio Court of Appeals. See NTL Collegiate Student Loan Tr.-1, A Delaware Statutory Tr. v. Payne, 2020-Ohio-3553, (Ohio Ct. App. June 30, 2020). Like Jarvis, this is a decision from an intermediate Ohio appellate court, not the Ohio Supreme Court and does not supersede Taylor.

S. Portfolio v. Wells Fargo, 247 F. Supp. 3d 377, 419–20 (S.D.N.Y. 2017).  Commerzbank also cites a Second Circuit decision recognizing that successive breaches can restart the statute of limitations.  Guilbert v. Gardner, 480 F.3d 140, 150 (2d Cir. 2007).  But there, the Court of Appeals analyzed New York law, not German law.  Accordingly, Commerzbank fails to demonstrate any clear error.

II.  Interlocutory Appeal

In the alternative, Commerzbank asks this Court to certify an interlocutory appeal to the Second Circuit under 28 U.S.C. § 1292(b).

A.  Legal Standard

"Interlocutory appeals are strongly disfavored in federal practice."  Ret. Bd. of the Policemen's Annuity v. Bank of New York Mellon, 2016 WL 2744831, at *1 (S.D.N.Y. May 9, 2016) (quotation marks omitted).  Certification pursuant to Section 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."  Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996).  An interlocutory appeal "is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation, and is not intended as a vehicle to provide early review of difficult rulings in hard cases."  Mills v. Everest Reins., Co., 771 F. Supp. 2d 270, 272 (S.D.N.Y. 2009) (quotation marks omitted).  A district court must consider the institutional efficiency of the federal judiciary when evaluating an application for interlocutory appeal.  See In re Currency Conversion Fee Antitrust Litig., 2005 WL 1871012, at *3 (S.D.N.Y. Aug. 9, 2005).  The decision to grant an interlocutory appeal lies within the district court's discretion.  Mills, 771 F. Supp. 2d at 272; see also United Teamster Fund v. MagnaCare Admin. Servs., LLC, 2014 WL 5393523, at *1 (S.D.N.Y. Oct. 8, 2014) (same).

Under 28 U.S.C. § 1292(b), district courts may certify an order for interlocutory appeal upon determining: (1) "that such order involves a controlling question of law" (2) "as to which there is a substantial ground for difference of opinion" and (3) "that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." However, "even where the three legislative criteria of section 1292(b) appear to be met, district courts retain unfettered discretion to deny certification if other factors counsel against it." Transp. Workers Union of Am., Local 100 v. NYC Transit Auth., 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005). "In determining whether a controlling question of law exists, the district court should consider whether . . . reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action." Glatt v. Fox Searchlight Pictures Inc., 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (quotation marks omitted). Moreover, "[a] Section 1292(b) appeal requires a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (quotation marks omitted).

B. Application

Commerzbank is unable to point to any "intra-district split [that may] show a substantial ground for difference of opinion." Glatt, 2013 WL 5405696, at *2. Commerzbank avers that an interlocutory appeal would serve judicial economy because it would avoid having to try these issues twice. However, this argument is applicable to the denial—or partial denial— of any summary judgment motion. In short, Commerzbank has failed to show the "exceptional circumstances" required to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks omitted).

III.   Certification of a Question to the Ohio Supreme Court

Finally, in the alternative, Commerzbank requests that this Court certify a question to the Ohio Supreme Court whether Ohio applies the "place of injury" or the "most significant relationship" test to determine the applicable statute of limitations.

A. Legal Standard

In determining whether to certify a question of law to a state court, courts are to look to "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." Zakrzewska v. New Sch., 574 F.3d 24, 28 (2d Cir. 2009) (quotation marks omitted). The Second Circuit has "deemed certification appropriate where state law is not clear and state courts have had little opportunity to interpret it, where an unsettled question of state law raises important issues of public policy, where the question is likely to recur, and where the result may significantly impact a highly regulated industry." Cruz v. TD Bank, N.A., 711 F.3d 261, 267–68 (2d Cir. 2013) (quotation marks omitted).

B. Application

The Ohio Supreme Court squarely addressed this question just five years ago in Taylor. And Commerzbank has not identified any split from this controlling authority. As such, Commerzbank's motion to certify a question to the Ohio Supreme Court is denied. See Tinelli v. Redl, 199 F.3d 603, 606 n.5 (2d Cir. 1999) ("Certification . . . is not proper where the question does not present a complex issue, there is no split of authority and sufficient precedents exist . . . to make [a] determination." (alteration in original) (quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Commerzbank's motion for reconsideration, interlocutory appeal, or to certify a question to the Ohio Supreme Court are denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 399.

Dated: February 16, 2021
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.