**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| COMMERZBANK AG, | : : : | |
| Plaintiff, | : : | Case No. 16-CV-4569-DLC |
| -against- | : : | |
| U.S. BANK NATIONAL ASSOCIATION, | : : | |
| Defendant. | : : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO EXCLUDE THE**
**TESTIMONY OF STEVEN R. GRENADIER**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
Fax: (212) 382-0050

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    Grenadier's opinions about the relative performance of loans with document defects or breaches of R&Ws should be excluded as irrelevant and cumulative .......................3

    II.    Grenadier's incomplete litigation-driven factual narrative about macroeconomic factors is improper and inadmissible hearsay ................................................................5

    III.    Grenadier should be excluded because he is a mouthpiece ..........................................7

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Case**                                                 **Page(s)**

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
   920 F.Supp.2d 475 (S.D.N.Y. 2013) .................................................................................. 3

*Bank of N.Y. Mellon v. WMC Mortg., LLC*,
   2015 U.S. Dist. LEXIS 108320 .................................................................................. 7, 8, 9

*Bayoh v. Afropunk LLC*,
   2020 U.S. Dist. LEXIS 198715 (S.D.N.Y. Oct. 26, 2020) .................................................. 2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................... 2

*F.H. Krear & Co. v. Nineteen Named Trs.*,
   810 F.2d 1250 (2d Cir. 1987) ............................................................................................. 3

*FHFA v. Nomura Holding Am., Inc.*,
   873 F.3d 85 (2d Cir. 2017) ................................................................................................. 3

*Highland Capital Mgmt. L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................... 6

*In re M/V MSC Flaminia*,
   2017 U.S. Dist. LEXIS 119146 (S.D.N.Y. July 28, 2017) ................................................ 6

*In Re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................................... 6

*In re Zyprexa Prod. Liab. Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ............................................................................... 2

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ............................................................................... 7

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) ........................................................................................... 6, 7

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
   2021 U.S. Dist. LEXIS 32417 (S.D.N.Y. Feb. 22, 2021) ...................................... 5, 8, 9

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
   2021 U.S. Dist. LEXIS 219977, at *14-15 (S.D.N.Y. Nov. 15, 2021) ......................... 7, 10

**Rules**

Fed. R. Evid. 403 ................................................................................................................. 2, 5

## PRELIMINARY STATEMENT

Steven R. Grenadier ("Grenadier"), along with Christopher James ("James") and Samuel Warren ("Warren"), is part of the trio of experts that U.S. Bank puts forward to argue that all the defective loans in the trusts did not matter. The fact that he is the third U.S. Bank expert to opine on the same topic is ground enough to exclude his opinions. In addition to being cumulative, Grenadier's materiality opinions are irrelevant because he applies the wrong test. Instead of opining on whether the defects make the loan riskier than represented, Grenadier, like James, looks at how the loans performed to judge materiality. Simply put, Grenadier analyzes the wrong thing, rendering his opinions irrelevant.

Grenadier's other opinions fare no better. Like James, he offers a narrative that "macroeconomic factors" caused poor RMBS performance. However, he admits that he did no research of his own to determine if "macroeconomic factors" caused Plaintiff's once highly-rated certificates to perform so poorly. He just summarizes articles authored by others and ignores the wealth of sources that discredit his theory. He should be precluded from offering those opinions at trial. More broadly, Grenadier is just a mouthpiece for the opinions of Cornerstone Research ("Cornerstone"). Cornerstone did the analyses and put together the report. While an expert certainly can work with others, an expert cannot simply be a mouthpiece for opinions formed by others. Because Grenadier is a mouthpiece, his opinions should be excluded.

## BACKGROUND

Grenadier submitted two reports: Phase 1 rebuttal report, which he most recently supplemented on November 22, 2019 ("Phase 1 Report"), *see* Ex. 21[1], and Phase 2 rebuttal report, which he most recently amended on October 29, 2021 ("Phase 2 Report"), *see* Ex. 22. Grenadier's

---

[1] "Ex" refers to the exhibits attached to the Declaration of Ryan A. Kane in Support of Plaintiff's Motions to Exclude the Testimony of Defendant's Experts, dated December 15, 2021.

Phase 1 Report opines that loans with uncured document exceptions are not associated with higher losses or longer foreclosure timelines. Ex. 21 ¶¶ 13-21. Grenadier includes two main opinions in his Phase 2 Report: (i) loans that Plaintiff's experts determined to have document defects or representation and warranty ("R&W") breaches performed the same compared to loans without document defects or R&W breaches (*see,* e.g., Ex. 22 ¶¶ 22-24, 30, 37, 48) and (ii) various critiques of Dr. Mason's (Plaintiff's expert) damages calculations, such as the supposed impact of "macroeconomic factors," which cover similar ground as U.S. Bank's expert James's damages rebuttal opinions. *See, e.g.*, *id.* ¶¶ 49, 55, 66-67. For the reasons stated below, these opinions should be excluded.

## ARGUMENT

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *See Bayoh v. Afropunk LLC*, 2020 U.S. Dist. LEXIS 198715, at *9 (S.D.N.Y. Oct. 26, 2020) (Cote, J.) (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). Only reliable expert testimony that will assist the trier of fact is admissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The court is tasked with a "gatekeeping" role to ensure that such testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. The Court must also determine whether the proposed expert testimony is relevant and "will help the trier of fact to understand the evidence." *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

2

**I.      Grenadier's opinions about the relative performance of loans with document defects or R&W breaches should be excluded as irrelevant and cumulative.**

Grenadier opines that the loans which Plaintiff's experts identified as having document defects and R&W breaches performed the same as supposedly comparable loans without defects, including loans identified by U.S. Bank's expert, Michael Forester, as not having defects or breaches. *See* Ex. 22 ¶¶ 27-56. As an initial point, Grenadier's comparison analysis is cumulative of James's similar loan performance comparison analysis (*see* Ex. 25 ¶¶ 17, 96-102) and should be excluded as cumulative. *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district court's exclusion of expert testimony as cumulative where other experts testify similarly). Grenadier's opinions also should be excluded because he uses the wrong test for materiality of defects to the extent materiality is a requirement.

The materiality of a document defect or breach of a R&W is based on an "increased risk of loss.". *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 511 (S.D.N.Y. 2013) ("it is the fact that [plaintiff] faced a greater risk than was warranted that is at issue for the question of breach"); *MBIA Ins. Corp. v. Credit Suisse Sec. LLC*, 2020 N.Y. Misc. LEXIS 10319, at *19, (Sup. Ct. N.Y. Cnty. Nov. 30, 2020); *see also HEMT 2006-1 v. DLJ Mortg. Cap., Inc.*, 175 A.D.3d 1175, 1177 (1st Dep't 2019). A materiality analysis "will consider both quantitative and qualitative factors to determine whether a reasonable investor would have considered the misstatement or omission significant in making an investment decision." *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 147-48 (2d Cir. 2017). "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *Id.* at 151 (citation omitted). Materiality does not depend on whether the breach caused a loss or even on whether a loan suffered a loss.

Notwithstanding this well-settled standard for materiality, Grenadier opines that loans identified as having material document defects and R&W breaches perform the same compared to loans he assumes lack defects or breaches such that there is "no economic materiality in the performance of these [breaching] loans." *E.g.*, Ex. 23 at 169:5-170:16. Grenadier's "economic materiality" opinion centers on actual loss over time by comparing performance of loans he assumes lack defects or breaches. *See, e.g.*, Ex. 22 ¶ 27. His economic materiality analysis focuses solely on "difference[s] in dollar performance" and does not factor in qualitative measures or increased risk of loss, although possible. *Id.* at 175:13-18, 189:4-190:12.

Grenadier's evaluation of "materiality" by examining loan performance also is contrary to positions that U.S. Bank has taken in putback actions, including the untimely litigation covering HEAT 2006-6, an at-issue Trust. In its belated complaint (the "HEAT Complaint"), U.S. Bank sought repurchase of loans with R&W breaches similar to the types of breaches at issue here. *See* Ex. 19 ¶ 27.

In the HEAT 2006-6 Complaint, U.S. Bank stated that "R&Ws were, and are, material to the value of the Mortgage Loans and the interests of the Certificateholders in such Mortgage Loans, because they relate to criteria and characteristics that directly impact the quality and value of the Mortgage Loans." *Id.* ¶ 28. And, as U.S. Bank explained, "[t]he breaches of R&Ws materially and adversely affected the value of the Mortgage Loans and the interests of the Certificateholders in the Mortgage Loans, *because the quality and value of those loans was lower than represented*, which materially increased the risk of default and loss." *Id.* ¶ 29 (emphasis added). U.S. Bank added that "[h]ad the Certificateholders known the true quality and value of the Mortgage Loans, the economic terms of the Trust securitizations would have been materially different." *Id.* U.S. Bank stated that the same types of breaches as identified by

4

Plaintiff here materially and adversely affected the interests of Certificateholders in the Mortgage Loans because "Mortgage Loans that fail to comply with DLJ's R&Ws (whether as a result of borrower or originator fraud, negligent, mistake or otherwise) are *inherently riskier* than properly underwritten Mortgage Loans." *Id.* ¶ 54 (emphasis added). At his deposition, Grenadier himself admits that DTI, LTV, and CLTV are important measures of the riskiness of a mortgage loan and that if those measures are inaccurate the loan is generally riskier. Ex. 23 at 165:13-16.

Grenadier even acknowledged that he has "no independent opinion from a legal standpoint" of the applicability of his "economic materiality" opinions, other than that was what U.S. Bank's counsel wanted him to perform. *Id.* 134:12-23, 175:19-176:12. Grenadier admits that a contrary legal interpretation of materiality may render his opinion wholly irrelevant and not useful. *Id.* at 176:13-177:5; 210-25:211-16. And, Grenadier was correct in that respect, his opinions are contrary to legal interpretations of materially and therefore are irrelevant and not at all useful. Even if the Court finds that his loan performance opinions have some marginal relevance to an issue in the case (which they do not), unfair prejudice, jury confusion from testimony on the wrong standard, undue delay of the trial with irrelevant testimony, and the cumulative nature of his opinions outweigh any tangential relevance. *See* Fed. R. Evid. 403.[2]

## II. Grenadier's incomplete litigation-driven factual narrative about macroeconomic factors should be excluded

An expert may not act as a vehicle for factual narrative or advocacy. *See Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 U.S. Dist. LEXIS, at *9 (S.D.N.Y. Apr. 18, 2018) (experts may not "act as a vehicle to present a factual narrative of interesting or useful documents for a case, in

---

[2] Plaintiff recognizes that similar loan performance opinions were not excluded in a report and recommendation in another RMBS case, *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 2021 U.S. Dist. LEXIS 32417, at *50-51 (S.D.N.Y. Feb. 22, 2021), but here the opinions clearly have no relevance and, as set forth above, any marginal relevance is outweighed by other factors favoring exclusion.

effect simply accumulating and putting together one party's 'story'"); *see Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 487 (S.D.N.Y. 2005) (precluding an expert from providing a factual narrative); *see also In Re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (precluding expert's "narrative of the case which a juror is equally capable of constructing"). "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (citations omitted). In other words, experts may not provide a factual narrative designed "to tell a story favorable to their client" or "simply serve as a vehicle for the opinions of others." *In re M/V MSC Flaminia*, 12-cv-8892 (KBF), 2017 U.S. Dist. LEXIS 119146, at *165 (S.D.N.Y. July 28, 2017). Such narratives are improper because they bolster one party's view of the evidence and usurp the "role of the factfinder." *Id.*

The apparent purpose of Section VI.B of Grenadier's Phase 2 Report, "Losses in At-Issue Trusts Were Driven by Macroeconomic Factors and the Collapse of the Housing Market," is to bolster U.S. Bank's story that the at-issue trusts performed poorly due to macroeconomic factors rather than because they were filled with defective loans. Ex. 22 ¶¶ 57-66. Grenadier has no opinion whether the financial crisis would have occurred if in the frenzy to securitize residential mortgage, lenders had not written mortgages on an unprecedented scale to borrowers who were not qualified and did not satisfy underwriting guidelines. Ex. 23 at 252:22-253:10. He also has no opinion on, and has not studied or analyzed, what actually caused the financial crisis because he is not qualified as a macroeconomist. *Id.* at 253:11-20 ("That's sort of a macro opinion. And I'm not a macroeconomist.").

Moreover, Grenadier cannot say whether Commerzbank's damages resulted from

breaches of underwriting guidelines or broader market trends because he did not do the analysis. *Id.* at 269:11-25. Grenadier instead provides a long summary of cherrypicked portions of other peoples' analyses to string together a favorable narrative for U.S. Bank. *See* Ex. 22 ¶¶ 57-66; Ex. 23 at 253:17-256:3. This Court should exclude Section VI.B of Grenadier' Phase 2 Report as an improper, incomplete, and irrelevant factual narrative based on impermissible hearsay. *See In re Flaminia*, 2017 U.S. Dist. LEXIS 119146, at *165; *Marvel Characters, Inc.*, 726 F.3d at 136. It also is cumulative of James' opinions concerning macroeconomic factors, *see* Ex. 25 ¶¶ 41-95, which is an independent reason for exclusion.

**III.      Grenadier should be excluded because he is a mouthpiece.**

An expert may have assistants and "may present the work of others if the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work themselves." *In re Flaminia*, 2017 U.S. Dist. LEXIS 119146, at *166 ("The Court will preclude proffered witnesses who simply aggregate or recite the opinions of others."). However, it is impermissible for an expert to rely upon the work of others "whose methodology the expert did not design, whom he did not directly or indirectly supervise, and over whom he did not impose quality controls." *BNYM/WMC*, 2015 U.S. Dist. LEXIS 108320, at *23-24; *see Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 2021 U.S. Dist. LEXIS 219977, at *14-15 (S.D.N.Y. Nov. 15, 2021) ("*PacLife*") (excluding expert, in part, who could not "even describe the supervision he purportedly provided" to consultants supporting his opinion). An expert witness "cannot simply be a conduit for the opinion of an unproduced expert," but "must in the end be giving his own opinion." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (excluding testimony of expert witness who relied on another over whom he "exercised little if any supervision").

7

Grenadier crosses the line from having a team of people assisting him to being a conduit for opinions of others. Grenadier cannot identify *anything* specifically in his reports that he wrote instead of Cornerstone—he claims "it's a mixture across the documents." Ex. 23 at 75:10-25, 79:7-80:24.  Employees of Cornerstone, unknown to Grenadier, "composed the text in the first instance" and then provided a draft to him that he would review and comment on before finalizing the report. *Id.* at 77:16-78:14. Grenadier "had a discussion with Cornerstone very early on about the analysis he would need to do," but could not recall any directions he actually gave. *Id.* at 65:16-67:2. Grenadier cannot recall any specific direction, instruction or supervision he provided to Cornerstone, and does not know what any of their analysts did in preparing the report. *E.g.*, *id.* at 58:5-23, 75:10-25. He also cannot identify who, or how many people, worked on his report or wrote its words. *Id.* at 77:16-78:14. Grenadier could only recall the names of three people, but none of the additional consultants at Cornerstone that worked on the opinions. *Id.* at 57:20-58:23.

When asked how he calculated damages using Dr. Mason's waterfall (*see* Ex. 22 ¶¶ 73-77), Grenadier stated: "The other big thing is, for purposes of the waterfall analysis that I'm doing here that is done by Cornerstone. So I understand it. But I didn't do that." Ex. 23 at 286:4-8. He continued: "in terms of the waterfall, I did not independently replicate that. So that is a caveat too, I understand the principle, what goes on. But some of the nitty-gritty details, I was not involved into the waterfall." *Id.* at 286:14-19. Grenadier simply did not do the work himself or sufficiently supervise the people who did; he relied on analysts and consultants at Cornerstone to do the work without demonstrating the level of supervision required for an expert to be permitted to adopt another's work. *See BNYM/WMC*, 2015 U.S. Dist. LEXIS 108320, at *23-24; *PacLife/BNYM I*, 2021 U.S. Dist. LEXIS 32417, at *56-57 (excluding expert, in part, who could

8

not recall "any details of directions he gave" or which consultants "performed what tasks"). This is further supported by the fact that only about 5% of the fees Cornerstone charged are for time Grenadier's spent on this matter.[3]

Grenadier's opinions suffer from the same flaws that caused this Court to exclude proffered expert Holt in *BNYM/WMC*, 2015 U.S. Dist. LEXIS 108320, at *21. Like Grenadier, Holt claimed that his report "contain[s] 'my analysis' and '[was] prepared at my direction or adopted by me based on my review and analysis of the quality and integrity of the … analysis performed by others." *Compare id.* at *9-10 *with* Ex. 23 at 59:8-22, 75:10-25, 79:7-80:24. In *BNYM/WMC*, Holt sought "to rely upon data gathered by reunderwriters whose methodology the expert did not design, whom he did not directly or indirectly supervise, and over whom he did not impose quality control." 2015 U.S. Dist. LEXIS 108320, at *23-24. Holt was also unaware of "the identities or experience of the individuals who conducted the analyses or the process they used, [and] the degree of care they took[.]" *Id.* Accordingly, this Court held that Holt could not show that the work on which he based his opinions "was gathered through 'a reliable methodology.'" *Id.* at *24 (citation omitted).

Similarly, in *Paclife/BNYM I*, Magistrate Judge Lehrburger excluded the testimony of BNYM's proffered expert Lys because he did not substantially participate in or supervise the preparation of his report by Analysis Group, a similar outfit as Cornerstone. 2021 U.S. Dist. LEXIS 32417, at *56-57. Judge Failla affirmed Magistrate Judge Lehrburger's decision to exclude that testimony, relying on his findings that Lys could not identify which analysts performed specific tasks or even describe the supervision he purportedly gave to them other than

---

[3] The total fess that Grenadier and Cornerstone incurred during Phase 2 discovery were $2,528,781. Ex. 24. Of that total fee, Grenadier's portion amounted to $100,000 to $130,000, a very small fraction of those fees (4%-5%). Ex. 23 at 38:22-40:13. That means 95% of the fees reflect work done by somebody other than Grenadier.

9

to say "they did what I told them to do" and Lys "rel[ied] on their hours to collect data, to analyze data, and to you know, produce the product." *Paclife*, 2021 U.S. Dist. LEXIS 219977, at *14. Judge Failla affirmed that the exclusion of Lys' report was justified because "while Lys was able to identify the names of four individuals at [the consulting firm] with whom he worked, he was unable to describe what any of them did in connection with the preparation of the report. *Id.* at p. 12. The fact that Lys could not identify "all people who wrote words that appear in the report, did not know how many such people there were," and could not recall "whether he wrote an initial draft of the report or whether the draft had been sent to him by someone else' further supported the court's holding." *Id.* at pp. 12-13. The same result is warranted here with respect to Grenadier's opinions.

## CONCLUSION

For the foregoing reasons, this Court should exclude the testimony by Grenadier.

Dated: New York, New York  
December 15, 2021

**WOLLMUTH MAHER & DEUTSCH LLP**

By: */s/ Ryan A. Kane*

David H. Wollmuth  
Steven S. Fitzgerald  
Ryan A. Kane  
Philip R. Schatz  
Roselind F. Hallinan  
Grant J. Bercari  
500 Fifth Avenue  
New York, New York 10110  
Phone: (212) 382-3300  
Fax: (212) 382-0050  
Email: dwollmuth@wmd-law.com  
      sfitzgerald@wmd-law.com  
      rkane@wmd-law.com  
      pschatz@wmd-law.com  
      rhallinan@wmd-law.com  
      gbercari@wmd-law.com

*Attorneys for Plaintiff Commerzbank AG*