UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                           :
COMMERZBANK A.G.,                            :
                         Plaintiff,          :
                                           :      16cv4569 (DLC)
                 -v-                        :
                                           :
U.S. BANK NATIONAL ASSOCIATION,              :      OPINION AND ORDER
                                           :
                         Defendant.         :
                                           :
--------------------------------------X

APPEARANCES:

For plaintiff:
David H. Wollmuth
R. Scott Thompson
Jay S. Handlin
Roselind F. Hallinan
Grant J. Bercari
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue, 12th Floor
New York, NY 10110

For defendant:
David F. Adler
Michael T. Marcucci
Jones Day
100 High Street, 21st Floor
Boston, MA 02100

Louis A. Chaiten
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114

Samuel L. Walling
Jones Day
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402

Albert J. Rota
Jones Day
2727 North Harwood Street, Suite 500
Dallas, TX 75201

DENISE COTE, District Judge:

This litigation is a residential mortgage-backed security ("RMBS") lawsuit arising out of the purchase by Commerzbank A.G. ("Commerzbank") of RMBS certificates from U.S. Bank National Association ("U.S. Bank").  U.S. Bank moves for summary judgment to enforce a "No Action Clause" in the governing contracts.  For the following reasons, the motion is denied.

## Background

This motion addresses a remnant of litigation filed by Commerzbank in 2015.  Most of the litigation has been settled or dismissed.  See Commerzbank AG v. U.S. Bank, N.A., 100 F.4th 362, 367-68, 371-73 (2d Cir. 2024).  Before addressing the defendant's motion for summary judgment, this Opinion will first describe the administration of an RMBS in general and the specific duties that Commerzbank alleges were associated with the RMBS on which its claims rest.  The Opinion will then summarize the relevant procedural history of this litigation and address the defendant's summary judgment motion.

I.    RMBS Administration

A RMBS is a financial instrument backed by many individual residential mortgages, each obtained by individual borrowers. Creating an RMBS begins with one or more lenders (the "originator(s)") issuing mortgages and selling them to another

financial institution (the "seller" or "sponsor").  The sponsor, in turn, pools the mortgages and transfers them to an affiliated special purpose vehicle (the "depositor").  The depositor then conveys the pooled mortgages to a trust, managed by a trustee. The pooled mortgages are prioritized into tranches reflecting different levels of risk and reward.

The trust issues certificates -- that is, the RMBS -- representing interests in those tranches to underwriters.  The underwriters market and sell the RMBS to investors, such as Commerzbank, who pay more or less depending on the level of risk and reward associated with each tranche of pooled mortgages. Because the RMBS are secured by the mortgages held in trust, their expected rate of return turns on the underlying performance of the mortgages and the borrowers' ability to repay their mortgage loans.

The RMBS trusts created by depositors are governed by a Pooling and Servicing Agreement ("PSA").  Under a PSA, a servicer is appointed to manage the collection of payments on the underlying mortgage loans.  Among other things, the servicer is responsible for monitoring delinquent borrowers, foreclosing on defaulted loans, checking compliance with representations and warranties in the loans, tracking mortgage documentation, and managing and selling foreclosed properties.

3

The PSA also sets forth the trustee's duties, bifurcated into pre-Event of Default ("pre-EOD") and post-Event of Default ("post-EOD") duties.  Commerzbank alleges that, among those pre-EOD duties owed under the PSAs at issue in this case, the trustee, or a custodian acting on its behalf, is responsible for receiving a complete set of files associated with each mortgage in the trust, reviewing the file for each mortgage, and certifying that the loan documentation is accurate and complete. According to Commerzbank, after a designated period, the trustee, or a custodian acting on its behalf, must provide a final certification and document exception report identifying any missing documents required by the PSA.  If the mortgage file has any defects, the trustee and the servicer must demand that the sponsor cure the defect (within a prescribed period), or repurchase or substitute the defective loan.

In addition, Commerzbank alleges, the PSAs at issue require that the trustee, along with other parties -- including the depositor, servicer, and trust administrator -- notify all other parties of a sponsor or originator's breach of any representations and warranties that the loans complied with applicable origination guidelines.  A breach of representations and warranties occurs, for example, when the originator disregards underwriting guidelines and issues loans to borrowers

who cannot repay.  If the trustee discovers a breach, it must provide notice and force the sponsor or originator to repurchase or replace the defective loan.

Finally, Commerzbank asserts, the PSAs at issue in this litigation require the trustee to provide notice of a servicer's breach and to initiate corrective action.  A servicing breach can arise, for example, when the servicer fails to provide notice of a breach of representations and warranties, or improperly forecloses on a defaulted mortgage using false documents.

II.  Procedural History

Between 2005 and 2007, Commerzbank invested in RMBS trust certificates.  On December 28, 2015, Commerzbank sued U.S. Bank, along with another bank, in the Southern District of Ohio to recover losses arising from its purchase of RMBS certificates related to trusts administered by the defendants.  Commerzbank alleged that U.S. Bank breached its duty as RMBS trustee to monitor, notify, and take action against the originators, sponsors, and servicers of the mortgages making up the trusts for breaches of the trusts' governing PSAs.  In 2016, the case was transferred to the Southern District of New York and assigned to the Honorable William H. Pauley III.

As relevant to this motion, seventeen of the trusts for which U.S. Bank is trustee and which were originally involved in the litigation are governed by PSAs containing a "No Action Clause" (the "No Action Trusts").  Those No Action Clauses bar claims arising from the PSA unless the plaintiff: provides written notice of an Event of Default ("EOD") to a specified party; assembles the support of a specified percentage of other certificateholders; demands that a specified deal party initiate the suit; and offers indemnification for that suit.  It is undisputed that Commerzbank failed to provide the required pre-suit demand.

On September 27, 2017, Judge Pauley dismissed all contract claims against U.S. Bank related to the No Action Trusts because Commerzbank failed to make pre-suit demand, as required by the PSAs, on the trust administrator or securities administrator before initiating this litigation against the trustee. Commerzbank AG v. U.S. Bank Nat'l Assoc., 277 F. Supp. 3d 483, 495-96 (S.D.N.Y. 2017) (the "2017 Decision").  The case was reassigned to this Court on July 27, 2021.  After further litigation, Commerzbank filed an appeal to the Second Circuit on April 18, 2022, challenging, among other things, the 2017 Decision.

On April 30, 2024, the Second Circuit affirmed the district court orders in all but one respect, vacating only the 2017 Decision's dismissal of Commerzbank's claims on the No Action Trusts.  Commerzbank, 100 F.4th at 367-68, 375-76.  In light of the Second Circuit's affirmance of other district court decisions on appeal, however, the parties agree that only those contract claims arising out of seven of the seventeen No Action Trusts survive on remand.  Specifically, the surviving claims arise out of four trusts where the No Action Clauses require that notice be given to both U.S. Bank as trustee and Citibank, N.A. ("Citibank") as trust administrator (the "CMLTI Trusts"); and three trusts where the No Action Clauses required that notice be given only to Bank of New York Mellon ("BNYM")[1] as securities administrator (the "JPMAC Trusts").  Id. at 375-76.[2]

The mandate from the Second Circuit's decision issued on May 24.  On August 30, U.S. Bank moved to enforce the No Action Clauses for the seven trusts and for summary judgment.  On October 11, the motion became fully submitted.

---

[1] The Bank of New York Company, Inc. merged with Mellon Financial Corporation on July 1, 2007 to form The Bank of New York Mellon Corporation ("BNYM").  The parties do not dispute that, at the time Commerzbank filed this lawsuit, BNYM served as securities administrator for all three JPMAC Trusts.

[2] The CMLTI Trusts are CMLTI 2006-NC2, CMLTI 2006-WFHE2, CMLTI 2006-WFHE3, and CMLTI 2007-WFHE1.  The JPMAC Trusts are JPMAC 2006-CH1, JPAMC 2006-CH2, and JPMAC 2006-NC2.

## Discussion

Summary judgment may be granted "only if there is no genuine issue of material fact and the prevailing party [is] entitled to judgment as a matter of law." Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted). "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (citation omitted). A court's role is "not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted).

I.   The Second Circuit's Decision

In its decision vacating the dismissal of the claims arising from the Trusts, the Court of Appeals recognized that the No Action Clauses at issue here are different from those underlying the Circuit's earlier decision in Cruden v. Bank of New York, 957 F.2d 961 (2d Cir. 1992). See Commerzbank, 100 F.4th at 374. In Cruden, the Second Circuit held that a No Action Clause may not be construed to bar investor claims against the trustee because it would be "absurd to require the debenture holders to ask the Trustee to sue itself." 957 F.2d at 968. Cruden indisputably excuses Commerzbank's failure to

make a required pre-suit demand on U.S. Bank as trustee.  In the appeal in this action, the Second Circuit considered "whether Cruden should be extended to excuse plaintiffs from making pre-suit demands of additional or substitute notice parties (i.e., RMBS parties, other than the trustee, on whom the PSA authorizes pre-suit demands)" even though the plaintiff has sued only the trustee and "would not be demanding the additional or substitute notice parties to sue themselves."  Commerzbank, 100 F.4th at 374-75.

Answering in the affirmative, the Second Circuit explained that Cruden's underlying "rationale" was that "it would be futile to condition the right to sue on a demand to a party who is directly implicated in the wrongdoing."  Id. at 375.  This "logic," the Second Circuit reasoned, was not limited to the facts of Cruden, i.e., where a No Action Clause requires that pre-suit demand be made on the trustee who is being sued. Rather, it "applies with similar force to other deal parties who present sufficient conflicts of interests such that requiring pre-suit demands of such parties would be as futile an application of the No Action Clauses as demanding that trustees sue themselves."  Id.

The Second Circuit then offered two examples to explain when a deal party would be sufficiently conflicted to establish

9

futility.  First, the Circuit stated, "some deal parties may be
directly implicated in the wrongdoing such that it would be
futile to demand that these parties bring claims involving
their own misconduct."  Id.  Second, the Circuit added,

> [o]ther deal parties may not be directly involved in
> the misconduct but could labor under other conflicts
> of interest, for example, close relationships with the
> breaching entities, such that requiring pre-suit
> demands would be futile and cause unnecessary delay
> since it would be improbable that they would take any
> action.

In these kinds of situations, the Second Circuit summarized, the
deal parties will "have conflicts of interest that raise the
same impracticality concerns that the Cruden Court sought to
avoid."  Id.  And where that is the case, a plaintiff's failure
to make pre-suit demands on such parties can be excused.  See
id.

The Second Circuit emphasized that its holding was "not a
blanket extension of Cruden to allow any suits against trustees
by absolving plaintiffs of the obligations set forth in No
Action Clauses."  Id.  Courts tasked with evaluating a No Action
Clause that requires pre-suit demand on other deal parties must
carefully assess the relevant conflicts.  Specifically, courts

> should consider whether such requirements would entail
> potential conflicts of interest on the demanded party,
> and if so, whether the nature and extent of the
> conflicts would indicate that these parties would be
> sufficiently unlikely to bring claims if asked to do
> so, such that the demand would be futile.

10

Id.  The Court of Appeals remanded for this Court to make that determination in the first instance.  See id. at 375–76.

II.  Citibank and the CMLTI Trusts

U.S. Bank moves for summary judgment on the four CMLTI Trusts for Commerzbank's failure to make a pre-suit demand on Citibank.  In the four CMLTI Trusts, the PSAs required Commerzbank to make pre-suit demand on both the trustee and the trust administrator.  The trust administrator was Citibank, which also served as custodian.  An entity affiliated with Citibank, Citigroup Global Markets Realty Corp. ("Citigroup"), was the CMLTI Trusts' sponsor.  The servicers for the four trusts were entities not affiliated with Citibank.

Applying the Second Circuit's decision to the claims arising out of the CMLTI Trusts, Commerzbank's failure to make pre-suit demand on Citibank is excused.  Pre-suit demand on Citibank would have been futile because, as described in Commerzbank's complaint and the PSAs it incorporates, Citigroup was a breaching trust administrator and custodian, and its affiliate was a breaching sponsor.  Accordingly, they were directly implicated in the wrongdoing alleged in Commerzbank's complaint against U.S. Bank.

First, in its complaint in this action, Commerzbank alleges that Citibank, as trust administrator, failed to provide notice

of breaches of representations and warranties regarding the
loans to other deal parties, including the trustee U.S. Bank.
Section 2.03(a) of the PSAs for each of the CMLTI Trusts
explains that the trust administrator is one of several parties
required to notify the other deal parties "of any materially
defective document in, or that a document is missing from, a
Mortgage File or of the breach by the Responsible Party or the
Sponsor of any representation, warranty or covenant under the
Master Agreement or the Assignment Agreement in respect of any
Mortgage Loan," so that those trusts' repurchase mechanisms can
be initiated.  Commerzbank asserts that, had notice been given,
such notice would have triggered the sponsors' or originators'
obligation to repurchase the defective loans.  Thus, the
allegations in the lawsuit filed against U.S. Bank necessarily
implicate Citibank as trust administrator.

Second, Commerzbank's complaint alleges that Citibank
breached duties it owed as custodian.  Under the relevant PSAs,
the custodian was required, "on behalf of the Trustee," to
identify in final certifications and exception reports mortgage
files that were missing documentation required to be delivered
under those PSAs (such as proving ownership of the note and
mortgage) and to notify certain parties of the deficiencies.
Instead of acting to correct the omissions and defects,

Commerzbank alleges, Citibank "stood by" while the servicer and
the sponsor -- here, the Citibank-affiliated entity, Citigroup -
- "engaged in so-called 'robo-signing' on a widespread basis
when the missing documents were needed to foreclose on
properties underlying the Covered Trusts."  Commerzbank's
complaint further alleges that EODs could have been prevented
had notification been given by the custodian, since that
notification would have triggered a repurchase protocol.  These
allegations directly implicate Citigroup in the alleged
wrongdoing in its role as custodian.

As yet one more impediment to the defendant's motion,
Citibank's affiliate was also alleged by Commerzbank to have
participated in the wrongdoing.  Commerzbank alleges that the
CMLTI Trusts' sponsor, Citigroup, systematically abandoned its
underwriting guidelines and breached the PSAs' representations
and warranties.  It is not disputed that Citibank maintained a
"close relationship[]" with the alleged breaching sponsor, which
raises significant conflicts of interest that Citibank would
face when considering any pre-suit demand.  Commerzbank, 100
F.4th at 375.

In short, Commerzbank's lawsuit against U.S. Bank -- and
accordingly any pre-suit demand it would have served -- includes
allegations that Citibank breached duties it owed as trust

13

administrator and as custodian.  It additionally includes allegations that a Citibank-affiliated entity, Citigroup, was a breaching sponsor.  These allegations create a conflict of interest such that it "would be sufficiently unlikely" that Citibank would bring claims if asked to do so, making the pre-suit demand futile.  Id.

U.S. Bank does not dispute that Commerzbank's complaint includes allegations of wrongdoing by Citibank and its affiliate, Citigroup.  Instead, U.S. Bank asserts that these allegations do not create conflicts of interest sufficient to excuse pre-suit demand because certain claims that could have been brought against Citigroup would have been untimely, and because a global settlement had resolved all potential claims against Citibank or any affiliate.

First, U.S. Bank contends that the statute of limitations for repurchase claims against Citigroup as sponsor in the CMLTI Trusts would have expired by the time Commerzbank sued U.S. Bank.  Specifically, U.S. Bank argues that any claim against Citigroup for its failure to repurchase defective or breaching loans would have expired six years after the CMLTI Trusts closed, which occurred between August 30, 2006 and February 9, 2007, well before Commerzbank initiated this action on December 28, 2015.  This argument fails.

14

Where a No Action Clause exists, a party who is required to make a pre-suit demand must be in a position to assess with confidence whether that demand is excused because of futility. In evaluating whether a pre-suit demand requirement is excused, that party is not required to assess a demand party's potential defenses to liability, which will likely be contested and subject to litigation. Expanding the inquiry in the way suggested by U.S. Bank is also likely to lead to litigation over whether and when a defense was known to the demanding party. As already discussed, the question which a demanding party must resolve is far more straightforward. Pre-suit notice is excused when the demand party or any of its related entities are so "implicated" in the wrongdoing alleged in the demanding party's complaint that it would be futile to make demand. See id. at 375-76. That test is met here. In any event, the statute of limitations on claims based on a deal party's failure to provide notice of a breach of representation and warranties accrues not when the trust closes but with the failure to give notice -- the moment of breach. See also Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402 (1993) (claim for breach of contract does not accrue until "the time of the breach").

Similarly, U.S. Bank argues that futility cannot be shown because any claims asserted against Citibank or an affiliate

would have been barred by a global settlement between U.S. Bank
and Citigroup.  Again, even assuming U.S. Bank is correct that
the settlement became final on December 18, 2015 -- ten days
before this lawsuit against U.S. Bank was filed -- that does not
alter a futility analysis.  U.S. Bank has not shown that the
demanding party is required to evaluate the existence or
strength of defenses that may be asserted by the party to whom
notice is due.  Moreover, the existence of potential defenses to
liability do not eliminate a conflict, those defenses merely add
to the complexity of the conflict.  When considering whether to
sue U.S. Bank, Citibank would weigh not only the extent to which
it was implicated in the alleged wrongdoing but also how its
defenses might fare and how protracted any litigation over its
defenses might be.

       As just explained, there can be little doubt that notice on
Citibank was excused because Citibank and its affiliate were
implicated in the very wrongdoing alleged against U.S. Bank.  To
enforce the No Action Clause, therefore, U.S. Bank principally
relies on a creative reading of the Circuit's decision in
Commerzbank, 100 F.4th at 374-76.  U.S. Bank begins by
explaining that the Commerzbank complaint accused U.S. Bank of
failing to take specific actions against others in connection
with two duties: the duty to repurchase defective loans and the

16

duty to adhere to prudent servicing practices.  It then argues
that notice is excused only where "the demand party would be
filing a suit leading to its own liability", and that in this
case that would mean a suit leading to its liability arising out
of the duties to repurchase and to prudently service.  U.S. Bank
contends that the duty to prudently service belonged only to
the servicer of the pooled loans, an entity unaffiliated with
Citibank, and is thus irrelevant.  Accordingly, U.S. Bank
contends that notice was excused only where Commerzbank can show
that its demand would have led to Citibank filing a suit leading
to its (or Citigroup's) liability for a breach of the duty to
repurchase.  U.S. Bank acknowledges that the duty to repurchase
belonged to Citigroup as sponsor but contends that any claim
against Citigroup for a violation of its duty to repurchase
would not have led "to its own liability" because of the statute
of limitations or the settlement agreement.  The arguments
regarding those two defenses have just been addressed.  It is
necessary to also address, however, the interpretation of
Commerzbank proffered by U.S. Bank.

U.S. Bank reads the Second Circuit's decision too narrowly.
The question posed in Commerzbank was whether the reasoning of
Cruden should be extended beyond the defendant named in the
lawsuit to additional or substitute notice parties when the

plaintiff would <u>not</u> be demanding those additional or substitute notice parties to sue themselves.  <u>Id.</u> at 374-75.  To excuse a notice demand by Commerzbank, therefore, it is not necessary that the demand party, here Citibank, or its affiliate, be named themselves in RMBS litigation, much less for the same wrongdoing as the actual defendant.  That question was already answered in <u>Cruden</u>.  Nor is it necessary that the demand party be filing a suit leading to its own liability.  Rather, the question is whether the suit's allegations against the trustee <u>implicate</u> the demand party or its affiliate in the alleged wrongdoing such that requiring pre-suit demand would be futile.  <u>See id.</u> at 375.

Faced with the conflicts of interest already described, requiring pre-suit demand on Citibank would have only caused "unnecessary delay since it would [have been] improbable that they would take any action."  <u>Commerzbank</u>, 100 F.4th at 375.  Accordingly, Commerzbank's failure to make pre-suit demand on Citibank as trust administrator is excused.

III. BNYM and the JPMAC Trusts

U.S. Bank moves for summary judgment on the three JPMAC Trusts for Commerzbank's failure to make pre-suit demand on BNYM.  In these trusts, the PSAs required Commerzbank to make pre-suit demand on the securities administrator.  BNYM served as securities administrator at the time Commerzbank filed this

18

suit.[3]  The originator, sponsor, and servicer for the JPMAC Trusts were all unaffiliated with BNYM.

Commerzbank alleges that U.S. Bank as trustee failed to enforce repurchases of defective or breaching loans.  Those allegations necessarily implicate BNYM as securities administrator in the very same wrongdoing.  As the securities administrator, BNYM was required to act "on behalf of" the trustee, U.S. Bank, to enforce the PSAs and other contractual obligations.  Section 2.02 of the JPMAC Trusts' PSAs state: "Enforcement of each Mortgage Loan Purchase Agreement or this Agreement against the Originator or the Seller, respectively, shall be effected by the Securities Administrator on behalf of the Trustee."  Section 2.03(a)(i), in turn, provides that for loans suffering from missing or defective mortgage file documents and representation and warranties breaches, "the Securities Administrator on behalf of the Trustee shall enforce the obligations of the Originator under the Mortgage Loan Purchase Agreement and the Assignment and Assumption Agreement." Thus, BNYM is "directly implicated in the wrongdoing" alleged in Commerzbank's complaint.  Commerzbank, 100 F.4th at 375.

_____

[3] JPMorgan Chase Bank, N.A., was the securities administrator for JPMAC 2006-NC2 from the trust's closing until October 1, 2006. At that time, Bank of New York succeeded JPMorgan Chase Bank, N.A. as securities administrator.

Second, as securities administrator, BNYM was required to provide notice to various deal parties

> of any materially defective document in, or that a document is missing from, the Mortgage File or of the breach by the Originator of any representation, warranty or covenant under the Mortgage Loan Purchase Agreement or the Assignment and Assumption Agreement in respect of any Mortgage Loan, . . . [or] of any breach by the Seller of any representation, warranty or covenant made by the Seller in Section 2.06(a) [of the applicable PSA] in respect of any Mortgage Loan.

Thus, BNYM faced the same conflict of interest already described above in discussing the CMLTI Trusts: that is, Commerzbank's complaint implicated BNYM in the alleged wrongdoing because it alleges that BNYM owed a duty to provide notice of the relevant representations and warranties breaches and yet failed to do so.

U.S. Bank does not dispute that BNYM, as securities administrator, was obligated to "enforce the obligations of the Originator" under the PSA and ensure that the originator repurchase defective or breaching loans. Instead, it responds only to BNYM's second conflict of interest. It argues that any liability BNYM would have faced for its failure to notify a party is irrelevant to the futility analysis since Commerzbank did not bring failure-to-notify claims against U.S. Bank. That argument fails. Again, pre-suit demand is excused when the party on which the demand must be made is implicated in the alleged wrongdoing. There is no requirement that the demand

party be a named defendant or be subject to identical claims. In short, Commerzbank's complaint implicated BNYM in the alleged wrongdoing, and it would have been futile for Commerzbank to demand that BNYM bring a lawsuit that would involve its own alleged misconduct as securities administrator. See Commerzbank, 100 F.4th at 375.

<strong><u>Conclusion</u></strong>

U.S. Bank's August 30, 2024 motion for summary judgment is denied.

Dated:     New York, New York
           December 12, 2024

                              _____
                                    DENISE COTE
                           United States District Judge